1

Sandford L. Frey (SBN 117058)
Stuart I. Koenig (SBN 102764)

2

**CREIM MACIAS KOENIG & FREY LLP**
633 West Fifth Street, 48th Floor

3

Los Angeles, CA 90071
Telephone: (213) 614-1944

4

Facsimile: (213) 614-1961
sfrey@cmkllp.com

5

6

Reorganization Attorneys for 315 Arden LLC, Debtor
and Debtor in Possession

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

10

**[LOS ANGELES DIVISION]**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re

315 ARDEN, LLC,

Debtor and Debtor in Possession.

CASE NO.: 2:15-bk-26483-BR

Chapter 11

**MOTION AND MEMORANDUM FILED IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION PROPOSED BY DEBTOR, 315 ARDEN LLC; DECLARATIONS IN SUPPORT THEREOF**

*Confirmation Hearing to be held on*:
DATE:      June 7, 2016
TIME:      10:00 a.m.
CTRM:      1668

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

## TABLE OF CONTENTS

I. OVERVIEW ...............................................................................................................2

II. EFFECTIVE DATE PAYMENTS/PROFESSIONAL FEES ...............................3

III. VOTING RESULTS ...............................................................................................4

IV. PLAN CONFIRMATION .......................................................................................5

    A.      The Plan Should be Confirmed Because it Complies with All
           Requirements of Bankruptcy Code § 1129(a). ......................................5

        1.      Bankruptcy Code § 1129(a) (1) - The Plan Complies with
              Applicable Provisions of the Bankruptcy Code........................5

        2.      Bankruptcy Code § 1129(a) (2): The Debtor has Complied with all
              Applicable Provisions of the Bankruptcy Code......................13

        3.      Bankruptcy Code § 1129(a) (3): The Debtor Has Proposed the Plan
              in Good Faith. ..........................................................................14

        4.      Bankruptcy Code § 1129(a) (4): The Plan Provides for Court
              Approval of All Payments for Services in Connection with this
              Case..........................................................................................15

        5.      Bankruptcy Code § 1129(a) (5): The Plan Discloses Directors and
              Officers. ...................................................................................16

        6.      Bankruptcy Code § 1129(a) (6):  The Plan does not Effect any
              Change in Publicly Regulated Rates.......................................16

        7.      Bankruptcy Code § 1129(a) (7): The Plan is in the "Best Interests"
               of Creditors. ............................................................................16

        8.      Bankruptcy Code § 1129(a)(8):  The Plan must be Accepted by
              Impaired Classes Entitled to Vote..........................................18

        9.      Bankruptcy Code § 1129(a) (9): The Plan Complies with the
              Required Treatment of Administrative Claims and Priority Claims. .....18

        10.     Bankruptcy Code § 1129(a) (10):  At Least One Impaired Class of
              Claims has Voted to Accept the Plan, after Excluding Votes by
              Insiders. ...................................................................................19

        11.     Bankruptcy Code § 1129(a) (11):  The Plan is Feasible.........................19

        12.     Bankruptcy Code § 1129(a) (12): The Plan Provides for Payment
              of all Statutory Fees. ...............................................................26

V. CONCLUSION..........................................................................................................26

DECLARATION OF SAMUEL R. BIGGS .......................................................27

DECLARATION OF TZEPAH FREEDLAND.......................................................29

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alan J. Resnick, et al., 7 Collier on Bankruptcy,* ¶ *[1122.03[1][a] (15th ed. rev. 2008)* ............. 6

4

*Beal Bank, S.S.B. v. Way Apts, D.T. (In re Way Apts. D.T.),* 201 B.R. 444, 451 & N. 6.
(N.D. Tex. 1996) ................................................................................................................... 7

5

*Brite v. Sun Country Development. Inc. (In re Sun Country Development, Inc.),* 764 F.2d
6
406, 408 (5th Cir. 1985) ..................................................................................................... 14

7

*Citizens Bank of Maryland v. Strumpf* 516 U.S. 16, 18 (1995) .................................................. 21

8

*In re American Homepatient, Inc.,* 420 F.3d 559 (6th Cir. 2005) .............................................. 25

9

*In re Bonner Mall Partnership,* 2 F.3d 899,915 (9th Cir. 1993), *cert. dismissed,* 513 U.S.
18 (1994) ............................................................................................................................. 14

10

*In re Camino Real Landscape Maintenance Contractors, Inc.,* 818 F.2d 1503 (9th Cir.
11
1987) .................................................................................................................................... 24

12

*In re Communication Dynamics, Inc.,* 300 B.R. at 225 .............................................. 10, 21, 22

13

*In re Elsinore Shore Assocs.,* 91 B.R. 238, 268 (Bankr. D.N.J. 1988) ...................................... 15

14

*In re Fowler,* supra, 903 F.2d. 694 (9th Cir. 1990) ................................................................... 24

15

*In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) .................................... 15

16

*In re GAC Storage El Monte, LLC,* 489 B.R. 747, 771 (Bankr. N.D. Ill. 2013) ........................ 7

17

*In re Heritage Organization, L.L.C.,* 375 B.R. 230 (Bankr. N.D. Tex. 2007) ............................ 7

18

*In re Loop 76, LLC,* 465 B.R. 525, 536 (9th Cir. BAP 2012) *affirmed,* 2014 WL 2580684
(9th Cir. 2014) ...................................................................................................................... 7

19

*In re Mason,* 456 B.R. 245, 249 (Bankr. N.D. W. Va. 2011) ................................................. 6, 7

20

*In re New Midland Plaza Assoc.,* 247 B.R. 877 (Bankr.S.D.Fla.2000) ...................................... 7

21

*In re Orlando Investors, L.P.,* 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ............................... 20

22

*In re Prior,* 2014 WL 5573442 (Bankr. E.D. Cal. October 31, 2014) ....................................... 22

23

*In re Resort Int'l, Inc.,* 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990) ........................................ 15

24

*In re Sound Radio, Inc.,* 103 B.R. 521, 524 (D.N.J. 1989) ...................................................... 20

25

*In re Texaco Inc.,* 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) ............................................. 14

26

*In re Toy & Sportswear House, Inc.,* 37 B.R. 141, 149-51 (Bankr. SD.N.Y. 1984) .................. 16

27

*In re University Medical Center,* 973 F.2d 1065 (3d Cir. 1992) .............................................. 22

28

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 649 (2d Cir.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1988) ............................................................................................................... 20

*Murchison v. Murchison*, 33 Cal. Rptr. 285, 288 (Ct. App. 1963) ............................ 22

*Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ............ 6

*Till v. SCS Credit Corporation* 541 U.S. 465 (2004) .............................. 24, 25, 26

*Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII )*, 961 F.2d 496,
502 (4th Cir.1992) ....................................................................................... 7

*United States v. Energy Resources Co., Inc.*, 495 U.S. 545,549 (1990) ..................... 12

*Zavecz v. Yield Dynamics, Inc.*, 2004 WL 2009316, at *2 (E.D. Pa. Sept. 9, 2004) ........ 22

**Statutes**
11 U.S.C. § 1122 ........................................................................................... 5, 6, 7

11 U.S.C. § 1126 ............................................................................................... 18

11 U.S.C. § 506(a)(1) .................................................................................. 10, 22

11 U.S.C. § 507 (a) ............................................................................................. 8

11 U.S.C. §1125 ................................................................................................. 4

11 U.S.C. §1129(a) ............................................................................................. 5

28 U.S.C. § 1930 ............................................................................................... 26

Cal. Civ. Proc. Code § 431.70 ........................................................................... 22

**Other Authorities**
*H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977)* ............................................. 5

**Rules**
Federal Rules of Bankruptcy Procedure 3020(b)(2) ................................................. 14

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# I.

## OVERVIEW

The Debtor[1] respectfully submits its Motion and Memorandum of Points and Authorities ("Memorandum") in support of confirmation of its Plan.  This Court has scheduled a hearing to take place on June 7, 2016 at 10:00 a.m. (*Pacific Time*) to consider confirmation of the Plan.

The Debtor will fund its obligations under the Plan from cash on hand, anticipated rental income from the Commercial Property after Confirmation, and, contributions from the Trust.  As described in detail below, the Plan complies with every one of the requirements enumerated in the Bankruptcy Code for confirmation of a chapter 11 plan.  Among other things, the Plan is fair, reasonable, and economically feasible, and all Creditors and Interest Holders will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.  Accordingly, the Debtor respectfully requests that the Court enter an order confirming the Plan.

The Memorandum is supported by, among other things, the following:

- The authorities set forth in the Memorandum;

- The Declarations of Freedland and Biggs;

- The Plan attached as ***Exhibit D*** to *the Submission of Solicitation Package for Plan of Reorganization Proposed by Debtor, 315 Arden LLC,* filed contemporaneously with this Memorandum ("Solicitation Package");

- The Disclosure Statement and Exhibits attached as ***Exhibit C*** to the Solicitation Package;

- The Disclosure Statement Order entered on April 8, 2016 [Docket No. 98];

- The Solicitation Package and Exhibits filed contemporaneously with this Memorandum;

- Ballots [to be submitted following the Ballot deadline of May 23, 2016];

- *Analysis of Ballots for Accepting or Rejecting, Plan of Reorganization Proposed by Debtor, 315 Arden LLC* and supporting *Declaration of Kelli Nielsen* ("Plan Ballot

---

[1] Capitalized terms shall have the meaning ascribed to them in the Disclosure Statement and Plan, unless defined otherwise in this Memorandum.

2

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

Summary"), to be submitted to the Court following the Ballot deadline of May 23, 2016;

- Any other oral or documentary evidence that may be presented in support of the Plan; the arguments and representations of counsel at the hearing regarding confirmation of the Plan; and the record in this case.[2]

## II.

## EFFECTIVE DATE PAYMENTS/PROFESSIONAL FEES

Set forth below is the projected amount of cash on hand as of the Effective Date and projected amounts required to be paid as of August 30, 2016[3].

***Total Estimated Cash on Hand as of the Effective Date:***           **$137,578[4]**

***Total Estimated Additional New Value Contribution on the Effective Date:***    **$85,000**

***Estimated Payments due on the Effective Date (excluding Professional Fees and Expenses):***      ***$10,000***

Class 3      General Unsecured Claims     $10,000

***Estimated Balances of Unpaid Professional Fees and Expenses Projected to be due to Professionals as of the Effective Date:***

The unpaid Professional Fees and Expenses are projected to be an aggregate of $207,045. The projected unpaid Professional Fees and Expenses are set forth below, although they are subject to increase at the time of the final fee applications.

CMKF               $127,045

Biggs & Co.         $35,000

---

[2] In addition, the Debtor respectfully requests that the Court take judicial notice of the record in this case including all documents previously filed with the Court. See Fed. R. Evid. 201.

[3] The August 30, 2016 date is used in the Confirmation Brief as the hypothetical Effective Date, which is based on the assumption that the Plan is confirmed on the currently scheduled date of June 7, 2016, and that the Confirmation Order is entered reasonably soon thereafter and becomes a Final Order. The actual Effective Date is a date set by the Debtor, which date shall be within sixty (60) days after the Confirmation Order becomes a Final Order.

[4] $137,578 is the estimated amount of cash on hand as of March 31, 2016. To the extent cash on hand is less than projected, the New Value Contribution shall be increased to offset any shortfall.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

| McGonigle Firm | $40,000 |
| Lombardo Firm | $2,000 |
| Experts | $3,000 |

## III.

## VOTING RESULTS

On April 8, 2016, the Court entered the Disclosure Statement Order [Docket No. 98].  As set forth in the Disclosure Statement Order, the Court found that the Disclosure Statement contained "adequate information" within the meaning of Bankruptcy Code § 1125 and authorized the Debtor to solicit acceptances with respect to the Plan pursuant to certain specified procedures. Contemporaneously with this Memorandum, the Debtor filed its Solicitation Package which will be used to solicit votes of impaired classes of claims.  The Debtor thereafter caused the Plan and related solicitation materials to be served upon the parties in accordance with the Disclosure Statement Order.

The Ballot Deadline fixed for receipt of Ballots accepting or rejecting the Plan by the Disclosure Statement Order is May 23, 2016 at 5:00 p.m. Pacific Time.  The Court ordered the Debtor to file its Confirmation Brief no later than May 9, 2016, prior to the Ballot Deadline.  The Debtor intends to submit its Ballot tabulation in advance of the Confirmation Hearing and will supplement this Memorandum at that time.  In the meantime, Classes 1A is unimpaired under the Plan and deemed to have accepted.

| Class | Voting Status/Results | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting |
|---|---|---|---|---|---|
| Class 1A (Unimpaired) | 100% Deemed Acceptance | 1 | 0 | $94,750 | $0 |
| Class 2 (Impaired) | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline |
| Class 3 (Impaired) | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline |

4

| Class | Voting Status/Results | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting |
|-------|----------------------|------------------|------------------|------------------|------------------|
| Class 4 (Impaired) | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline |
| Class 5 (Impaired) | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline | To be Supplemented after Ballot Deadline |

## IV.

## PLAN CONFIRMATION

**A.    The Plan Should be Confirmed Because it Complies with All Requirements of Bankruptcy Code § 1129(a).**

Bankruptcy Code § 1129(a) states that the Court shall confirm a chapter 11 plan where each of the statute's sixteen subsections that are applicable to the case are satisfied. *11 U.S.C. § 1129(a)*. As described below, the Plan satisfies every one of the applicable requirements and should therefore be confirmed.  Bankruptcy Code §§ 1129(a)(13), (14), (15) and (16) are not applicable to the Debtor since it has no retiree benefits within the meaning of Section 1129(a)(13), is not an individual (Sections 1129(a)(14) and (15)), and is not a nonprofit corporation (Section 1129(a)(16)).

**1.    Bankruptcy Code § 1129(a) (1) - The Plan Complies with Applicable Provisions of the Bankruptcy Code.**

Bankruptcy Code § 1129(a)(1) requires that a plan "compl[y] with the applicable provisions of this title." *11 U.S.C. § 1129(a)(1)*.  The legislative history of this subsection indicates that it embodies and incorporates the requirements of Bankruptcy Code §§ 1122 and 1123, which govern the classification of claims and interests and the requisite mandatory contents of a plan. See *H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977)*.  As demonstrated below, the Plan complies with both Bankruptcy Code §§ 1122 and 1123, and with all other applicable provisions of the Bankruptcy Code, and thus satisfies the requirements of this subsection.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

a.    **The Plan Satisfies the Requirements of Bankruptcy Code § 1122.**

Bankruptcy Code § 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." *11 U.S.C. § 1122 (a)*. The term, "substantially similar" is not defined in the Bankruptcy Code, but the legislative history suggests that it requires classification based on the nature of the claims or interests classified. *In re Mason,* 456 B.R. 245, 249 (Bankr. N.D. W. Va. 2011).

By its plain language, Bankruptcy Code § 1122 prohibits only the classification of dissimilar claims into the same class. *See Alan J. Resnick, et al., 7 Collier on Bankruptcy, ¶ [1122.03[1][a] (15th ed. rev. 2008).* As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under § 1122 (a)"). Additionally, Bankruptcy Code § 1122 (b) expressly permits the separate classification of certain claims for purposes of administrative convenience. Bankruptcy Code § 1122 (b).

Here, Section V of the Plan places Claims and Interests in five different classes. Each Claim or Interest placed in a particular class is substantially similar to the other Claims or Interests in that Class, and thus the Plan satisfies Bankruptcy Code § 1122. Moreover, although not required by statute, each Claim or Interest that is placed in a particular class is substantially dissimilar from those Claims or Interests that have been placed in other classes.

- Class 1 contains only the Secured Tax Claims;

- Class 2 contains only the Disputed Claim of W Linc;

- Class 3 contains only the claims of General Unsecured Creditors;

- Class 4 consists only of the allowed Priority Claim of the Trust; and

- Class 5 consists only of the holder of the Allowed Equity Interest.

The Secured Tax Claims in Class 1A consist of property tax claims. There are no other known Secured Tax Claims in Class 1, and to the extent any are discovered the Plan provides that they shall each be treated in one or more separate sub-classes of Class 1 (e.g. Class 1A, 1B, 1C etc). Class 2, 3, 4 and 5 are dissimilar to one another and placing such claims into separate classes

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

is appropriate. Therefore, the classification of claims in the Plan satisfies the requirement of Bankruptcy Code § 1122(a). As stated, Bankruptcy Code §1122(a) does not "require that all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims." *In re Mason,* 456 B.R. 245 249 (Bankr. N.D. W. Va. 2011, *quoting, Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII* ), 961 F.2d 496, 502 (4th Cir.1992). By the same token, however, the language of Bankruptcy Code §1122(a) prohibits the classification of dissimilar claims into the same class. *In re Loop 76, LLC,* 465 B.R. 525, 536 (9th Cir. BAP 2012) *affirmed,* 2014 WL 2580684 (9th Cir. 2014). For example, claims may be classified separately if "significant disparities exist between the legal rights of the holders ... which render the two claims not substantially similar." *In re GAC Storage El Monte, LLC,* 489 B.R. 747, 771 (Bankr. N.D. Ill. 2013). "The proponent of the plan must demonstrate a justification for its classification scheme and that the classification is not motivated by the purpose of gerrymandering an affirmative vote of an impaired class." *Id.*

The court in *In re Heritage Organization, L.L.C.,* 375 B.R. 230 (Bankr. N.D. Tex. 2007) found that the proposed Chapter 11 plan was confirmable when the plan proponents placed unsecured claims filed by insider creditors in a separate class, junior to that of other general unsecured creditor because this separate classification was not necessary to create at least one impaired class that accepted the proposed plan, and where a legitimate basis existed for this separate classification. First the *Heritage* court noted that the outcome would have been different if these two classes were in one class. See, *Heritage* at 302. *See also, Beal Bank, S.S.B. v. Way Apts, D.T. (In re Way Apts. D.T.),* 201 B.R. 444, 451 & N. 6. (N.D. Tex. 1996) (finding that separation of claims of large trade creditors and small trade creditors did not constitute gerrymandering because the "votes of the combined class would have resulted in acceptance"); *In re New Midland Plaza Assoc.,* 247 B.R. 877 (Bankr.S.D.Fla.2000) (classification objection held moot where classes, if collapsed, would result in an impaired, accepting class).

In addition, according to the *Heritage* court, this separate classification was based not only on insiders' greater knowledge, vis-a-vis the client-creditors holding the bulk of general unsecured claims, of risks associated with debtor's tax avoidance strategies and ability to protect themselves

7

by obtaining indemnification rights, but on non-creditor interests possessed by insiders by virtue of their litigation exposure, which might affect their voting on a plan for reasons that had little to do with their status as contingent, indemnification creditors. *Id at 303-306*.

> **b.      The Plan Satisfies the Mandatory Requirements of Bankruptcy Code § 1123 (a).**

Bankruptcy Code § 1123 (a) sets forth eight mandatory requirements for the contents of a chapter 11 plan. *11 U.S.C. 1123 (a)*. Additionally, Bankruptcy Code § 1123 (b) sets forth various provisions that may, but need not, be included within a chapter 11 plan. *11 U.S.C. § 1123 (b)*.

As shown below, the Plan complies with all of these requirements.[5]

> **(i)      Bankruptcy Code § 1123 (a)(1): The Plan Designates Classes of Claims and Interests.**

Bankruptcy Code § 1123 (a)(1) requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in Bankruptcy Code § 507 (a)(2 (administrative expense claims), Bankruptcy Code § 507(a)(3) (claims arising during the "gap" period in an involuntary bankruptcy case), and in Bankruptcy Code § 507(a)(8) (priority tax claims). 11 U.S.C. § 1123(a)(1). Section V of the Plan complies with this requirement by expressly classifying all Claims and Interests, other than Administrative Claims and Priority Tax Claims.

> **(ii)      Bankruptcy Code § 1123 (a)(2): The Plan Identifies Unimpaired Classes of Claims and Interests.**

Bankruptcy Code § 1123 (a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." *11 U.S.C. § 1123(a)(2)*. Section V of the Plan satisfies this requirement by specifying that Class 1 is unimpaired.

> **(iii)      Bankruptcy Code § 1123 (a)(3): The Plan Specifies the Treatment of Impaired Classes.**

Bankruptcy Code § 1123 (a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan", *11 U.S.C. § 1123(a)(3)*. Section V of the Plan

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

---

[5] Section 1123(a)(8) is not applicable to the Debtor because the Debtor is not an individual.

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

satisfies this requirement by specifying that Classes 2, 3, 4, and 5 are impaired, and by specifying the treatment of the Claims in each of those Classes.

**(iv)    Bankruptcy Code § 1123 (a)(4): The Plan Provides for the Same Treatment of Claims within Each Class.**

Bankruptcy Code § 1123 (a)(4) requires that a plan provide the same treatment for each claim or interest in a particular class, 11 U.S.C. § 1123(a)(4). Section V of the Plan satisfies this requirement by providing the same treatment to each Claim or Interest that is classified in each particular class established under the Plan. No creditor within Class 1, 2, 3, 4 or 5 of the Plan is receiving any more or less favorable treatment than any other creditor within such Classes.

**(v)    Bankruptcy Code § 1123 (a)(5): The Plan Provides for Adequate Means of Implementation.**

Bankruptcy Code § 1123 (a)(5) requires that a plan "provide adequate means for the plan's implementation," and sets forth examples of typical means for implementing a plan, *11 U.S.C. § 1123(a)(5)*. The Plan satisfies this requirement by setting forth specific means for its implementation. The Plan provides for the funding of the Plan through the following means: (i) the New Value Contribution; (ii) the Debtor's rental income once the Commercial Property is leased; (iii) Trust Exit Financing (to the extent required); (iv) LTV Reduction Contribution (if necessary); and, on or before the W Linc Note Extended Maturity Date, (v) Takeout Financing, further contributions of the Trust or the Sale Option.

The Plan provides for, among other things, deferred payments to Classes 2, 3 and 4. The source of funds to implement the Plan will come from the New Value Contribution and income derived from the Commercial Property. As set forth in the attached declaration, and to be demonstrated by other admissible evidence that will be introduced in connection with Confirmation, the Trust has approximately $18 million available, demonstrating that there is more than sufficient value to fund the New Value Contribution, Trust Exit Financing (to the extent required); and the LTV Reduction Contribution (if necessary) are all feasible.

Furthermore, the Debtor does not believe that W Linc will have an Allowed Secured Claim. The Debtor has commenced the Fraudulent Transfer Action seeking to avoid the Disputed Claim

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

of W Linc. The Debtor intends to file and have heard a motion for summary adjudication prior to, or contemporaneously with, Confirmation.

In addition, the Debtor disputes the W Linc Disputed Secured Claim on the basis of the Debtor's setoff/recoupment rights, which are preserved under the Plan. The doctrine of recoupment is an equitable remedy that permits the offset of mutual debts when the respective obligations originate from the same transaction or occurrence. *In re Communication Dynamics, Inc.*, 300 B.R. at 225. Accordingly, the W Linc Disputed Secured Claim should be disallowed in its entirety because, among other reasons, the Debtor asserts recoupment claims against W Linc that far exceed the amount of the W Linc Disputed Secured Claim.

For the foregoing reasons, among others, the Debtor asserts that there is no W Linc Allowed Secured Claim. Regardless of the dispute over the extent, nature, validity, and amount of W Linc Disputed Secured Claim and W Linc Trust Deed, feasibility of the Plan is not dependent upon the Debtor prevailing in its assertions. The Plan provides for the treatment of the W Linc Disputed Secured Claim and W Linc Trust Deed pending Allowance and after Allowance should W Linc prevail in establishing a W Linc Allowed Secured Claim.

Assuming *arguendo* that W Linc prevails in establishing a W Linc Allowed Secured Claim, based on the valuation contained in the Herron Appraisal (and subject to final determination by the Bankruptcy Court in connection with Confirmation), the lien securing any W Linc Allowed Secured Claims appears to be over-secured within the meaning of Bankruptcy Code § 506(a)(1).

Pursuant to its treatment in Class 2, the Plan proposes to satisfy the W Linc Allowed Secured Claim by distributing to W Linc under the Plan on account of such claim (i) Distribution of the W Linc Disputed Claim Reserve, within ten (10) days following the W Linc Secured Claim Allowance Date; (ii) W Linc Deferred Payments over a period of approximately forty-eight months from the Effective Date; (iii) a W Linc LTV Reduction Payment, if necessary, no later than twenty-five (25) months following the Effective Date, so as to ensure that the LTV Ratio is at least 75%; and (iv) an W Linc Final Payment upon the W Linc Extended Maturity Date (approximately 48 months), which the Reorganized Debtor contemplates will be from Takeout Financing secured by the Commercial Property or a payment by the Trust.

1    Assuming *arguendo* that W Linc prevails in establishing a W Linc Allowed Secured Claim,

2    the estimated W Linc Deferred Payment, based on a hypothetical $1,500,000 W Linc Allowed

3    Secured Claim, is approximately $6,868 each month, or approximately $329,684 over the

4    anticipated life of the Plan.  As stated, the Trust has the financial wherewithal to satisfy those

5    payments, and the projections prepared by Biggs demonstrates that all or substantially all of the

6    $329,684 required over the anticipated life of the Plan can be satisfied though the projected lease

7    payments.

8    In order to provide the present value of the deferred payment stream, the Plan utilizes the

9    contract rate of 5% relevant to the payment stream applicable to W Linc.  However, the appropriate

10   rate will be determined by the Bankruptcy Court at Confirmation taking a number of factors into

11   consideration.

12   Similarly, the Plan provides for payment of General Unsecured Creditors in full over the

13   life of the Plan.  In order to provide the present value of the deferred payment stream, the Plan

14   utilizes the Federal interest rate on civil judgments as set by the Federal Reserve on the

15   Confirmation Hearing Date, commencing from and after the Effective Date on the Allowed

16   General Unsecured Claims in Class 3, unless the Court finds a different rate to be more appropriate.

17   The payment of General Unsecured Creditors will be greatly expedited should the Debtor be

18   successful in eliminating the W Linc Disputed Secured Claim.

19   Under the Plan, certain types of claims are not placed into voting Classes; and instead they

20   are referred to as "unclassified".  Unclassified Claims include Administrative Claims and Priority

21   Claims, which will be paid from cash on hand,  and if necessary, through the New Value

22   Contribution.  Aside from Unclassified Claims, the other claims in the Case are treated in one of

23   five classes under the Plan.

24   The Plan also provides for, among other things, the assumption or rejection of executory

25   contracts and unexpired leases (at Section VI.F); the manner of making cash distributions under

26   the Plan (at Sections V, VI.A); the preservation and revesting of rights of action (at Section VII);

27   the establishment of procedures for handling any unresolved objections to Claims (at Sections

28   VI.D and IX.N); and the revesting of assets (at Section VIII. C).

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

(vi)    **Bankruptcy Code § 1123 (a)(6):  The Plan Provides**
**Appropriate Charters for the Debtor.**

Bankruptcy Code § 1123 (a)(6) requires that, with respect to a corporate debtor, a chapter 11 plan provide for the inclusion in the Debtor's charter a prohibition against the issuance of non-voting equity securities and related protections for holders of preferred shares, 11 U.S.C. § 1123(a)(6).  This provision is not generally applicable to this Debtor as it is a closely held corporation, with only 2 shareholders.  Nevertheless, the Operating Agreement of the Debtor shall be deemed amended to expressly provide: "[t]o the extent required by section 1123(a)(6) of the United States Bankruptcy Code (*11 U.S.C. § 1123(a)(6)*) after the Effective Date, no nonvoting equity securities of the Debtor shall be issued."

(vii)    **Bankruptcy Code § 1123 (a)(7):  The Plan Appropriately**
**Provides for Officers and Directors.**

Finally, Bankruptcy Code § 1123 (a)(7) provides that a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee", *11 U.S.C. § 1123(a)(7)*.  This requirement is satisfied by identifying Freedland as the managing member of the Reorganized Debtor and to oversee the day to day operations of the Reorganized Debtor, at the discretion of the Daniel Arnall Trust ("Equity Interest Holder"), and subject to the provisions of the Operating Agreement.

c.    **The Plan Includes Appropriate Permissive Provisions under**
**Bankruptcy Code § 1123 (b).**

Bankruptcy Code §1123 (b) provides that a chapter 11 plan may include, among other things, "any other appropriate provision not inconsistent with the applicable provisions of this title." *11 U.S.C. § 1123(b)(6)*.  This is a broad grant of authority.  As stated by the United States Supreme Court:  "The Code ... grants the bankruptcy courts residual authority to approve reorganization plans including any appropriate provision not inconsistent with the applicable provisions of this title." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545,549 (1990) (internal quotations omitted).

12

The Plan contains a number of permissive provisions, all of which are intended to facilitate a prompt resolution of this case and are appropriate under the circumstances.

The Plan leaves unimpaired the Claims in Class 1A, and it impairs the Claims in Classes 2, 3, 4 and 5 consistent with Bankruptcy Code § 1123 (b)(1).

The Plan provides for the assumption or rejection of the Debtor's executory contracts and unexpired leases under Bankruptcy Code § 1123 (b)(2) (allowing the assumption, rejection, or assignment of unexpired leases and executory contracts). Any unexpired leases and executory contracts that the Debtor intends to assume will be set forth on the Assumed Contract Schedule, to be filed prior to the Confirmation Hearing.

The Plan provides for the retention and prosecution of, among other things, objections to Claims, the State Court Action and the Fraudulent Transfer Action consistent with Bankruptcy Code § 1123 (b)(3)(B).

The Plan also modifies the rights of the W Linc Allowed Secured Claim consistent with Bankruptcy Code § 1123 (b)(5) by distributing to W Linc under the Plan on account of such Allowed Claim (i) Distribution of the W Linc Disputed Claim Reserve, within ten (10) days following the W Linc Secured Claim Allowance Date; (ii) W Linc Deferred Payments over a period of approximately forty-eight months from the Effective Date; (iii) an W Linc LTV Reduction Payment, if necessary, no later than twenty-five (25) months following the Effective Date, so as to ensure that the LTV Ration is at least 75%; and (iv) an W Linc Final Payment upon the W Linc Extended Maturity Date (approximately 48 months), which the Reorganized Debtor contemplates will be from Takeout Financing secured by the Commercial Property or a payment by the Trust.

**2.      Bankruptcy Code § 1129(a) (2): The Debtor has Complied with all Applicable Provisions of the Bankruptcy Code.**

Bankruptcy Code § 1129(a) (2) requires that the proponent of a chapter 11 plan "compl[y] with the applicable provisions of this title." *11 U.S.C. § 1129(a)(2)*. The principal purpose of this subsection is to ensure that a proponent complies with the Bankruptcy Code's requirements regarding the solicitation of acceptances of a plan. See *In re Texaco Inc.*, 84 B.R. 893, 906-07

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

1  (Bankr. S.D.N.Y. 1988). By the Disclosure Statement Order, the Court found that the Disclosure

2  Statement contained adequate information within the meaning of Bankruptcy Code § 1125 (b),

3  and the Court thus authorized the Debtor to disseminate the Plan, the Disclosure Statement, and

4  other solicitation materials to parties in interest and to solicit votes pursuant to certain specified

5  procedures. As set forth in the previously filed Declarations and Certificates of Service, the Debtor

6  has complied with the procedures set forth in the Disclosure Statement Order and with all

7  applicable provisions of the Bankruptcy Code and the FRBP.

8      The Plan thus complies with the requirements of Bankruptcy Code § 1129(a)(2).

9    **3.**    **Bankruptcy Code § 1129(a) (3): The Debtor Has Proposed the Plan in Good**

10      **Faith.**

11      Bankruptcy Code § 1129(a) (3) requires that a chapter 11 plan be "proposed in good faith

12  and not by any means forbidden by law", *11 U.S.C. § 1129(a)(3)*. FRBP 3020(b)(2) specifies that

13  "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good

14  faith and not by any means forbidden by law without receiving evidence on such issues." FRBP

15  3020(b)(2). Based on the schedule set by this Court, objections to the Plan are due by no later than

16  May 31, 2016, and therefore as of the filing of this Memorandum, objections are not yet due.

17  Should any objections be filed to confirmation, the Debtor will file an appropriate response. In

18  accordance with FRBP 3020(b)(2), barring any objection to the Plan on the grounds of a lack of

19  good faith, the Court should find that Bankruptcy Code § 1129(a) (3) is satisfied without further

20  inquiry.

21      Even absent FRBP 3020(b)(2)'s presumption of good faith, the Debtor's good faith is more

22  than evident. The primary purpose of chapter 11 is to reorganize the Debtor and to maximize the

23  value of its estate. See, *In re Bonner Mall Partnership*, 2 F.3d 899,915 (9th Cir. 1993), *cert.*

24  *dismissed*, 513 U.S. 18 (1994). Accordingly, a plan satisfies Bankruptcy Code § 1129(a) (3) when

25  it "is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of

26  success." *Brite v. Sun Country Development. Inc. (In re Sun Country Development, Inc.)*, 764 F.2d

27  406, 408 (5th Cir. 1985).

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

14

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

The Debtor filed this Chapter 11 case in order to prevent a foreclosure of its interests in its most valuable asset, the Commercial Property.  Following the filing of the Petition, the Debtor commenced an adversary proceeding against Red Mountain and W Linc to set aside the transfer as a fraudulent transfer.  [Docket No. 1 of the Adversary Proceeding].  Through the Adversary Proceeding, the Debtor is seeking a determination of the allowance of the Claim of W Linc, which, once determined, will allow the Debtor to successfully reorganize.

The Debtor believes that its Plan demonstrates its goal to bring about an expeditious resolution of this case and maximize value for all constituencies.  The Plan accomplishes this goal by seeking a determination of the W Linc Claim and by paying any Allowed portion of such claim over time.  The Debtor believes that the Plan allows the General Unsecured Creditors to realize greater benefit than they would otherwise receive through liquidation.

In addition to fulfilling the rehabilitative function of the Bankruptcy Code, the Plan also allows creditors and the interest holder to realize the highest possible recoveries in the shortest time practicable under the circumstances.  Hence, there is no doubt that the Plan satisfies the good faith requirement of Bankruptcy Code § 1129(a) (3).

**4.    Bankruptcy Code § 1129(a) (4): The Plan Provides for Court Approval of All Payments for Services in Connection with this Case.**

Bankruptcy Code § 1129(a)(4) requires that payments "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," be approved by the Court as reasonable.  *11 U.S.C. § 1129(a)(4)*.  In other words, Bankruptcy Code § 1129(a)(4) requires that any and all payments made for non-ordinary course expenses of administration be subject to court review and approval.  See, *In re Resort Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Elsinore Shore Assocs.,* 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (section 1129(a)(4) satisfied where plan provides for payment of "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses are governed by various Bankruptcy Code provisions - e.g., §§ 328, 329, 330, 331 and 503(b) - and need not be explicitly provided for in a chapter 11 plan.").  Section V of the Plan provides that the Debtor will not pay Administrative Claims, Professional

15

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

Fee claims unless and until the Court Allows such Claims. The Plan, therefore, complies with Bankruptcy Code § 1129(a)(4).

**5.     Bankruptcy Code § 1129(a) (5): The Plan Discloses Directors and Officers.**

Bankruptcy Code § 1129(a)(5) requires: (i) that the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the nature of any insider that will be employed by the Debtor and the nature of the compensation to be provided to such insider, *11 U.S.C. §§ 1129(a)(5)(A) and (B).*

The Plan describes the person expected to act as the Debtor's managing member by identifying Freedland to continue on in that capacity and to oversee the day to day operations of the Reorganized Debtor, subject to the discretion of the Equity Interest Holder pursuant to the Operating Agreement.    See, *In re Toy & Sportswear House, Inc.*, 37 B.R. 141, 149-51 (Bankr. SD.N.Y. 1984) (finding that the continuity of experienced management satisfied Bankruptcy Code § 1129(a)(5) and enhanced the feasibility of the plan).

**6.     Bankruptcy Code § 1129(a) (6):  The Plan does not Effect any Change in Publicly Regulated Rates.**

Bankruptcy Code § 1129(a) (6) requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan. *11 U.S.C. § 1129(a)(6).*  The Debtor is not subject to any such regulation and the Plan does not propose any rate changes.  Bankruptcy Code § 1129(a)(6) therefore is not applicable, and consent from a regulatory agency is not required.

**7.     Bankruptcy Code § 1129(a) (7): The Plan is in the "Best Interests" of Creditors.**

Bankruptcy Code § 1129(a)(7) establishes what is commonly referred to as the "best interests" test. Specifically, Bankruptcy Code § 1129(a)(7) requires that, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the effective date

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

16

of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7).

As discussed at length in the Disclosure Statement, the Plan satisfies the best interests test as to all impaired creditors, whether or not those holders voted to accept the Plan. The distribution to creditors is more than creditors would receive in a chapter 7 liquidation, and the estate will not be burdened with the additional costs of a chapter 7 trustee and the fees and expenses of the trustee's new advisors. See *Disclosure Statement, Section V. B.*

The Debtor's Liquidation Analysis is attached to the Disclosure Statement as ***Exhibit G.3***. Under the Plan each Holder of an Allowed General Unsecured Claim in Class 3 should expect to receive a distribution of 100% of the amount of his, her or its Allowed General Unsecured Claim qualifying for treatment in Class 3.

Based on the Liquidation Analysis, the distribution to each Holder of an Allowed General Unsecured Claim in Class 3 in a chapter 7 liquidation would likely be substantially less. Although reasonable efforts have been made to project the amount of the anticipated distribution based on the best information available as of the date of the Disclosure Statement, it is not possible at this time to project with exactitude the percentage that each Holder of an Allowed Claim will receive because of there are a number of uncertainties impacting the liquidation. However, the Debtor maintains that the best interest requirement is met in this case. The financial projections attached to the Disclosure Statement projects a distribution of 100% to the amount of the Allowed General Unsecured Claims qualifying for treatment in Class 3. By comparison, the Liquidation Analysis projects an anticipated distribution of approximately 74% of the amount of the Allowed General Unsecured Claims, assuming the assets are liquidated in Chapter 7. There are a number of reasons for the projected disparity.

For example, in a hypothetical Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate based on disbursements. The trustee's compensation is in an amount not to exceed 25% of the first $5,000 of all moneys disbursed, 10% on any amount over $5,000, but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million. In a hypothetical Chapter 7 case, a trustee would be

17

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1   entitled to fees on projected distributions in Chapter 7.  In addition to the added Administrative

2   Expense for the trustee, the Chapter 7 trustee will most certainly employ professional persons,

3   such as legal counsel, accountants and appraisers.  Thus, the projected Administrative Expense

4   claims will significantly increase.

5       As set forth in the Liquidation Analysis, the General Unsecured Creditors can expect to see

6   little, if anything, in Chapter 7.  The Debtor's Commercial Property and personal property would

7   be sold or foreclosed on by W Linc.  The New Value Contribution and Trust Exit Financing under

8   the Plan would not be made available by the Trust should the Case convert to chapter 7.  Similarly,

9   the Trust would not likely agree to subordinate its Priority Claim for the balance of the Dip Loan.

10      **8.      Bankruptcy Code § 1129(a)(8):  The Plan must be Accepted by Impaired**

11      **Classes Entitled to Vote.**

12      Bankruptcy Code § 1129(a) (8) requires that each class of claims and interests established

13  under a plan either accept the plan or not be impaired under the plan.  *11 U.S.C. § 1129(a)(8)*.  A

14  class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-

15  half in number of claims in that class vote to accept the plan, counting only those claims whose

16  holders actually vote.  11 U.S.C. § 1126(c); see also, 11 U.S.C. § 1126(d) (governing classes of

17  interests).  A class of claims or interests that is not impaired is deemed to have accepted the plan.

18  *11 U.S.C. §§ 1126(f)* and *1129(a)(8)*.  A class of claims or interests that does not receive or retain

19  any property under the plan is deemed to reject.  *11 U.S.C. § 1126(g)*.

20      Class 1A is unimpaired and deemed to have accepted.

21      Classes 2, 3 and 4 are impaired.  As explained above, the deadline for voting is May 23,

22  2016, which is after the deadline set by this Court for the submission of this Memorandum.  The

23  Debtor intends to supplement this Memorandum after the votes have been received and tabulated.

24      **9.      Bankruptcy Code § 1129(a) (9): The Plan Complies with the Required**

25      **Treatment of Administrative Claims and Priority Claims.**

26      Bankruptcy Code § 1129(a)(9) requires that, unless the holder of a claim agrees to a

27  different treatment of its claim:

28

(A)    the holder of a claim entitled to priority under section 507(a) (2) or (3) must receive cash equal to the allowed amount of its claim on the effective date of the plan;

(B)    the holder of a claim entitled to priority under section 507(a)(1), (4), (5), (6), or (7) must receive either cash in the allowed amount of such claim on the effective date of the plan or deferred cash payments of a value, as of the effective date, equal to the allowed amounts of such claim; and

(C)    the holder of a tax claim entitled to priority under section 507(a)(8) must receive on account of such claim deferred cash payments, over a period not exceeding five years after the date of the order for relief, of a value, as of the effective date of a plan, equal to the allowed amount of such claim.

*11 U.S.C. § 1129(a)(9).*

The Plan satisfies the requirements of Bankruptcy Code § 1129(a)(9). First, as required by Bankruptcy Code §§ 1129(a)(9)(A) and (B), Section V of the Plan provides that unless agreed otherwise, Allowed Administrative Claims will be paid by the Debtor on the later of the Effective Date, or the date on which the Court determines such Claim is an Allowed Claim.

In accordance with Bankruptcy Code § 1129(a)(9)(C), Section V of the Plan provides that, unless agreed otherwise, Allowed Priority Tax Claims will be paid in full or over a period of 5 years.

Accordingly, the Plan complies with Bankruptcy Code § 1129(a)(9)(C).

**10.    Bankruptcy Code § 1129(a) (10): At Least One Impaired Class of Claims has Voted to Accept the Plan, after Excluding Votes by Insiders.**

Bankruptcy Code § 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider, *11 U.S.C. § 1129(a)(10).* Because the voting deadline is after the date by which the Debtor has been ordered by this Court to submit this Memorandum, the Debtor will supplement this Memorandum after the voting deadline.

**11.    Bankruptcy Code § 1129(a) (11): The Plan is Feasible.**

Bankruptcy Code § 1129(a)(11) requires that the Court find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

19

is proposed in the plan." *11 U.S.C. § 1129(a)(11)*. Bankruptcy Code § 1129(a)(11) does not require an absolute assurance of financial success by the debtor. Rather, the feasibility standard requires only "a 'reasonable' prospect for financial stability and success." *In re Sound Radio, Inc.*, 103 B.R. 521, 524 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990); accord *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("The purpose behind the statutory requirement of feasibility is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.") (Quotations omitted).

Subject to the risks described in the Disclosure Statement (*see Disclosure Statement at Section IV.E*), the Debtor has established compelling evidence of feasibility. The projections attached to the Disclosure Statement demonstrate that there is reasonable assurance that the Debtor will be able to make the distributions required under the Plan and pay operating expenses, and will not require further reorganization.

The Debtor's most valuable asset is the Commercial Property. The Debtor has retained a broker to assist in its efforts to find a suitable tenant(s). The Debtor believes that once a tenant has been secured for the Commercial Property, the income generated will be sufficient to meet its obligations. The Plan also provides for a New Value Contribution by the Trust in the event additional funds are necessary to meet obligations. ***Exhibit B*** to the Disclosure Statement contains the Debtor's cash flow projections for the period of the Plan [*See*, *Biggs Declaration*].

The financial information contained in *Exhibit B* is based on the Debtor's good faith estimate as to the operating income it believes can be achieved from future rental income from the Commercial Property. The projections demonstrate that the Debtor can meet its financial obligations under the Plan. The projections show that the Reorganized Debtor will be able to meet its obligations to Creditors under the Plan; and that the Plan is not likely to be followed by the need for further financial reorganization of the Liquidation Debtor. Pursuant to the cash flow projections, the Debtor projects that it will generate sufficient cash to satisfy the obligation under

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

the Plan. However, it is reasonable to expect that there may be some degree of variation from month to month. The Debtor has attempted to project its income and expenses conservatively. In that event, the Plan provides for Trust Exit Financing, to the extent necessary.

The Plan provides for the funding of the Plan through the following means: (i) the New Value Contribution; (ii) the Debtor's rental income once the Commercial Property is leased; (iii) Trust Exit Financing (to the extent required); (iv) LTV Reduction Contribution (if necessary); and, on or before the W Linc Note Extended Maturity Date, (v) Takeout Financing, further contributions of the Trust or the Sale Option.

The Plan provides for, among other things, deferred payments to Classes 2, 3 and 4. The source of funds to implement the Plan will come from the New Value Contribution and income derived from the Commercial Property. As set forth in the attached declaration, and to be demonstrated by other admissible evidence that will be introduced in connection with Confirmation, the Trust has approximately $18 million available, demonstrating that there more than sufficient value to fund the New Value Contribution, Trust Exit Financing (to the extent required); and the LTV Reduction Contribution (if necessary) are all feasible.

Furthermore, the Debtor does not believe that W Linc will have an Allowed Secured Claim. The Debtor has commenced the Fraudulent Transfer Action seeking to avoid the Disputed Claim of W Linc. The Debtor intends to file and have heard a motion for summary adjudication prior to, or contemporaneously with, Confirmation.

In addition, the Debtor disputes the W Linc Disputed Secured Claim on the basis of the Debtor's setoff/recoupment rights, which are preserved under the Plan. The right to setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." See generally, *Citizens Bank of Maryland v. Strumpf* 516 U.S. 16, 18 (1995). In this case, the Debtor's setoff claim arises under California law, the governing law designated under the W Linc Note. See, *In re Communication Dynamics, Inc.*, 300 B.R. 220, 223 n.2 (Bankr. D. Del. 2003 (law governing parties' agreement determined the applicable setoff law). Under California law, the right of setoff is codified under California Code of Civil Procedure § 431.70, which permits setoff in an action

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

between persons where "cross-demands for money have existed" between persons "at any point in time when neither demand is barred by the statute of limitations." *In re Prior*, 2014 WL 5573442 (Bankr. E.D. Cal. October 31, 2014), quoting Cal. Civ. Proc. Code § 431.70. This principle of setoff is not limited to judicial proceedings. The setoff applies between the parties to extinguish the debt even though no action is pending. *Murchison v. Murchison*, 33 Cal. Rptr. 285, 288 (Ct. App. 1963).

The doctrine of recoupment is an equitable remedy that permits the offset of mutual debts when the respective obligations originate from the same transaction or occurrence. *In re Communication Dynamics, Inc.*, 300 B.R. at 225. Recoupment is the setting up of a demand arising from the same transaction, strictly for the purpose of abatement or reduction of such claim. *In re University Medical Center*, 973 F.2d 1065 (3d Cir. 1992). Similarly, "under California law, recoupment is a defensive claim which must arise out of the same transation . . ." *Zavecz v. Yield Dynamics, Inc.*, 2004 WL 2009316, at *2 (E.D. Pa. Sept. 9, 2004). Accordingly, the W Linc Disputed Secured Claim should be disallowed in its entirety because, among other reasons, the Debtor asserts recoupment claims against W Linc that far exceed the amount of the W Linc Disputed Secured Claim.

For the foregoing reasons, among others, the Debtor asserts that there is no W Linc Allowed Secured Claim. Regardless of the dispute over the extent, nature, validity, and amount of W Linc Disputed Secured Claim and W Linc Trust Deed, feasibility of the Plan is not dependent upon the Debtor prevailing in its assertions. The Plan provides for the treatment of the W Linc Disputed Secured Claim and W Linc Trust Deed pending Allowance and after Allowance should W Linc prevail in establishing a W Linc Allowed Secured Claim.

Assuming *arguendo* that W Linc prevails in establishing a W Linc Allowed Secured Claim, based on the valuation contained in the Herron Appraisal (and subject to final determination by of the Bankruptcy Court in connection with Confirmation), the lien securing any W Linc Allowed Secured Claims appears to be over-secured within the meaning of Bankruptcy Code § 506(a)(1).

Pursuant to its treatment in Classes 2, the Plan proposes to satisfy the W Linc Allowed Secured Claim by distributing to W Linc under the Plan on account of such claim (i) Distribution

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

of the W Linc Disputed Claim Reserve, within ten (10) days following the W Linc Secured Claim Allowance Date; (ii) W Linc Deferred Payments over a period of approximately forty-eight months from the Effective Date; (iii) an W Linc LTV Reduction Payment, if necessary, no later than twenty-five (25) months following the Effective Date, so as to ensure that the LTV Ration is at least 75%; and (iv) an W Linc Final Payment upon the W Linc Extended Maturity Date (approximately 48 months), which the Reorganized Debtor contemplates will be from Takeout Financing secured by the Commercial Property or a payment by the Trust.

Assuming *arguendo* that W Linc prevails in establishing a W Linc Allowed Secured Claim, the estimated W Linc Deferred Payment, based on a hypothetical $1,500,000 W Linc Allowed Secured Claim, is approximately $6,868 each month, or approximately $329,684 over the anticipated life of the Plan. As stated, the Trust has the financial wherewithal to satisfy those payments, and the projections prepared by Biggs demonstrates that all or substantially all of the $329,684 required over the anticipated life of the Plan can be satisfied though the projected lease payments.

The W Linc Allowed Secured Claim will not have been satisfied in full as of the W Linc Extended Maturity Date. However, the LTV Ratio at the time of the W Linc Extended Maturity Date will be such that upon maturity the feasibility of obtaining available Takeout Financing is probable. If required, the Debtor is prepared to introduce expert testimony at Confirmation to support the likelihood, based on current market conditions and trends, of available Takeout Financing for this Commercial Property upon the W Linc Extended Maturity Date at the 75% LTV Ratio. Assuming *arguendo* that Takeout Financing is not obtainable upon maturity, the Debtor contends that the Plan is nevertheless feasible because it can be sold and the proceeds used to satisfy the obligations under the Plan.

In order to provide the present value of the deferred payment stream, the Plan utilizes the contract rate of 5% relevant to the payment stream applicable to W Linc. However, the appropriate rate will be determined by the Bankruptcy Court at Confirmation taking a number of factors into consideration.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

Similarly, the Plan provides for payment of General Unsecured Creditors in full over the life of the Plan. The payment of General Unsecured Creditors will be greatly expedited should the Debtor be successful in eliminating the W Linc Disputed Secured Claim. In order to provide the present value of the deferred payment stream, the Plan utilizes the Federal interest rate on civil judgments as set by the Federal Reserve on the Confirmation Hearing Date, commencing from and after the Effective Date on the Allowed General Unsecured Claims in Class 3, unless the Court finds a different rate to be more appropriate.

The current contract rate of interest under the W Linc Note is 5%. Generally, the Ninth Circuit looks to a market rate for similar loans. If a market is available for the type of loan at issue, the market rate will be applied. The Debtor contends that there is an applicable market rate and applying the contract rate in this Case, taking into consideration the factors for determining the appropriate rate under applicable law (such market rate and risk factors, among others) is a fair rate in this Case.

In the absence of a market rate, the Ninth Circuit adopts a formula approach by adding an appropriate risk factor to a base rate for a "riskless" loan, such as U.S. government Treasury bond rates or the prime rate. See, *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503 (9th Cir. 1987); and *In re Fowler*, supra, 903 F.2d. 694 (9th Cir. 1990) (both cases decided prior to *Till*, see analysis below). The Ninth Circuit Court of Appeals adopted a case by case approach. As stated by the court in *Fowler*:

> Having heard testimony regarding both the market interest rates in the region and the risks associated with this debtor, the bankruptcy court used the formula approach, taking the prime rate on the date of plan confirmation, 8.75% and adding a .75% risk factor. [Citation omitted.] It did err in using this approach to determine the cramdown interest rate.

[Fowler at 697].

In utilizing the formula approach, the interest rate is adjusted for the term of the plan's repayment period by utilizing as the base rate the yield quoted for treasury bills or bonds on equivalent terms. The risk inherent in the type of collateral involved can be accounted for by utilizing an adjustment factor derived from the market for loans secured by similar collateral.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

24

1   In 2004, the Supreme Court addressed the crucial question of how to select an appropriate

2   interest rate for cramdown in *Till v. SCS Credit Corporation* 541 U.S. 465 (2004). Although *Till*

3   was a chapter 13 case, many Courts have applied it to chapter 11 cases as well. *Till* holds that a

4   formula approach based upon the prime rate of interest best carries out the intention of Congress

5   in order to determine a whether a stream of deferred payments constitutes present value of the

6   allowed claim. *Till* reversed a decision of the court of Appeals for the Seventh Circuit that held

7   that the pre-bankruptcy contract rate should be the presumptive rate based on the theory that

8   cramdown involved imposing a coerced loan on the secured creditor. In rejecting that the contract

9   rate was the appropriate rate, the Supreme Court preferred the formula approach, which starts with

10  the prime rate, and then adjusts the applicable rate upward.

11

12      [T]he resulting "prime-plus" rate of interest depends only on the state of financial markets,
        the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the
13      creditor's circumstances or its prior interactions with the debtor. For these reasons, the
        prime-plus or formula rate best comports with the purposes of the Bankruptcy Code.
14

15      [Till, 541 U.S. at 477].

16  The Supreme Court in *Till* did not directly decide the proper scale for the risk adjustment

    factor, leaving it to a more flexible approach. However, the Supreme Court in *Till* did offer some
17
    guidance. The Supreme Court noted that adjustments of 1 to 3 percent seemed appropriate and
18
    suggested that large adjustments would not be appropriate because a plan cannot be confirmed
19
    unless the Bankruptcy Court finds the plan feasible. The Supreme Court stated:
20

21      If the court determines that the likelihood of default is so high as to necessitate an 'eye-
        popping' interest rate, . . . the plan probably should not be confirmed.
22

23      [Till, 541 U.S. at 478].

24  Many courts have applied *Till* to Chapter 11 cases holding that a formula rate applies unless

25  an efficient lending market exists for the proposed exit financing.    See, *In re American*

26  *Homepatient, Inc.*, 420 F.3d 559 (6th Cir. 2005).

27  The current one year LIBOR rate as of May 2016 is 1.22%. Similarly, the current Wall

28  Street Journal Prime rate as of May 2016 is 3.50%. The contract rate of 5% was within the range

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

25

of typical commercial real estate loans applicable last year; whereas, it would be considered high in the current market. For example, commercial real estate loans in the market today are available at a rate in the range of 3.75%. Thus, adjusting for risk, 5% appears a fair rate to apply in this Case. As stated, if necessary, the Debtor intends to introduce evidence at the Confirmation Hearing, including a <u>Till</u> analysis. As further stated, if required, the Bankruptcy Court will make the final determination with regard to the appropriate rate to be applied to the future payment stream in connection with the Plan.

The Plan is not a "visionary scheme," but rather represents a good faith and reasonable resolution to this Case that will repay all Administrative Claims against the Estate, and provide a full recovery for General Unsecured Creditors. Accordingly, the evidence supports a finding that the Plan is feasible and is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor. The Plan is, therefore, feasible. As a result, the Plan satisfies the feasibility requirement set forth in Bankruptcy Code § 1129.

### 12. Bankruptcy Code § 1129(a) (12): The Plan Provides for Payment of all Statutory Fees.

Bankruptcy Code § 1129 (a) (12) requires that a chapter 11 plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of quarterly fees owing to the United States Trustee) be paid on or before the effective date of the plan. Section V of the Plan provides that the Debtor will pay all fees due and owing under 28 U.S.C. § 1930 to the U.S. Trustee in cash on the Effective Date. The Plan thus satisfies this requirement.

### V.

### <u>CONCLUSION</u>

For all of the foregoing reasons, the Debtor respectfully requests that the Court enter its order confirming the Plan.

Dated: May 9, 2016                     CREIM MACIAS KOENIG & FREY LLP


By: <u>/s/ Sandford L. Frey</u>
       SANDFORD L. FREY
Reorganization Attorneys for315 Arden LLC, Debtor
and Debtor in Possession

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

26

# DECLARATION OF SAMUEL R. BIGGS

I, Samuel Biggs, do hereby declare as follows:

1.      I am over eighteen years of age.  Except as otherwise indicated, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

2.      I am member of the accounting firm of SL Biggs, a division of SingerLewak, accountants and financial advisors to the Debtor.

3.      I make this declaration in support of the Memorandum.[6]

4.      On April 8, 2016, the Court entered the Disclosure Statement Order [Docket No. 98].

5.      The Debtor thereafter caused the Plan and related solicitation materials to be served upon the parties in accordance with the Disclosure Statement Order.  The deadline fixed for receipt of Ballots accepting or rejecting the Plan by the Disclosure Statement Order is May 23, 2016 at 5:00 p.m. Pacific Time.

6.      The Plan will fund its obligations from projected rental income from the Commercial Property and, if necessary, Trust Exit Financing.

7.      Since filing for chapter 11, I have assisted the Debtor in complying with its financial reporting obligations under the Bankruptcy Code.

8.      The amount of cash on hand as of May 2016 is approximately $137,578.

7.      I estimate that the total amount required to be paid under the Plan on the Effective Date will be approximately $$217,045, inclusive of professional fees and expenses.

8.      Based on information provided by the Debtor, and with its assistance, and assistance of the Debtor's bankruptcy counsel and my staff, I prepared the liquidation analysis attached to the Disclosure Statement as Exhibit G 3, and discussed in Section V of the Disclosure Statement ("Liquidation Analysis").

---

[6] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum, or the Plan, as applicable.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

9. The Liquidation Analysis projects that holders of General Unsecured Claims (i.e. Class 3) would receive an approximately 74% distribution in the event that the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

10. In contrast, under the Debtor's Plan, it is projected that holders of General Unsecured Claims in Class 3 will receive a distribution of 100% or more.

11. Based upon the my independent review and analysis of the Debtor and its books and records as reflected in the Liquidation Analysis, I have concluded that holders of General Unsecured Claims in Class 3 will receive distribution under the Plan that is not less than such holders would receive if the Debtor liquidated its assets under chapter 7 of the Bankruptcy Code.

12. The Plan provides that Freedland will remain as the managing member and to oversee the day to day operations of the Reorganized Debtor. In addition, the Reorganized Debtor.

13. Based on information provided by the Debtor, and with its assistance, and assistance of the Debtor's bankruptcy counsel and my staff, I prepared Exhibit C to the Disclosure Statement, the Cash Flow Projections.

14. The current one year LIBOR rate as of May 2016 is 1.22%. Similarly, the current Wall Street Journal Prime rate as of May 2016 is 3.50%. The contract rate of 5% was within the range of typical commercial real estate loans applicable last year; whereas, it would be considered high in the current market. For example, commercial real estate loans in the market today are available at a rate in the range of 3.75%. Thus, adjusting for risk, 5% appears a fair rate to apply in this Case.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on May__, 2016 in Los Angeles, California.

[signature to follow]
SAMUEL R. BIGGS

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

# DECLARATION OF TZEPAH FREEDLAND

I, Tzepah Freedland, declare as follows:

1.     I am the managing member of the Debtor.[7]  I submit this declaration in support of the Memorandum.  If called to testify, I could and would testify competently concerning the contents of this Declaration.  My knowledge of the facts set forth herein is based on my personal knowledge, my review of the company's books and records and my discussions with employees of the Debtor.

2.     On October 27, 2015, the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code.  The Debtor owns real property located at 7101 W. Lincoln Avenue, Buena Park, California 92680, California ("Real Property").  The land is approximately 56,628 square feet with a one-story commercial building consisting of approximately 22,680 square feet ("Commercial Building").  The building is currently unoccupied.

3.     The Debtor was organized in 1999 to hold a single asset commercial office building located at 315 Arden Avenue, Glendale, California (the "Glendale Building").  In 2013, Mr. Arnall became the sole member of the LLC.  The Glendale Building required maintenance and upgrades.  Because of Mr. Arnall's declining health from cancer, along with the declining health of his wheel-chair bound wife, he wanted a fresh start.  So, he sold the Glendale Building in August of 2014 for $6.925 million.  The funds of the sale were deposited into a 1031 exchange account ("1031 Exchange").  This allowed him six months to purchase an equivalent property in order to obtain the tax benefit offered by a 1031 Exchange.  The deadline for the exchange was February 24, 2015.

4.     Unfortunately, Mr. Arnall passed away on December 8, 2014, leaving behind his wife, Judith Arnall, and their minor son.  Mrs. Arnall suffers from Multiple Sclerosis ("MS") and has been in a wheel chair since her early twenties.  She has also been diagnosed with lupus, retinoid, and bursitis, and her health has been declining in recent months.  She is now left to care for their 14-year-old son, who is their only child.

5.     Immediately following the death of Mr. Arnall, I was appointed as the Trustee for

---

[7]  Capitalized terms shall have the meaning ascribed to them in the Plan or Memorandum, unless defined otherwise herein.

I:\slf\20252 (315 Arden)\Confirmation Brief (Final Ver).docx

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

the Daniel & Judith Arnall Family Trust (the "Trust"), and was named the Managing Member of 315 Arden, LLC.

6.    As the Managing Member of the Debtor, I was required, among other things, to ensure that the 1031 Exchange was completed before the six-month deadline, so that the family could obtain the tax benefit from the sale. As a result, on or about February 24, 2015, the Debtor purchased the Commercial Property for approximately $6.5 million from Red Mountain. The income generated from the Property was intended to not only provide income for the family, but to pay for Mrs. Arnall's desperately needed medical care.

7.    Shortly after the close of escrow, the Debtor discovered that the Sellers and their agents (which it was later discovered included the Debtor's own real estate agents), had perpetrated a fraud on the Debtor. It was only then that the Debtor learned that the Property was extremely unsuited for its investment objectives, and had been falsely advertised in numerous respects. In fact, the only business actually existing at the Property was an illegal business being operated, not by any "doctor," but by a completely uncreditworthy operator -- never previously disclosed to the Debtor – and, that the highly successful "trading" business run by the "high net worth" doctor, which was supposed to generate enough income to satisfy the Tenant's rent obligations, simply did not exist.

8.    Within a few weeks of the close of escrow, the Tenant promptly breached the Lease and abandoned the premises, leaving the Debtor without any rental income whatsoever.

9,    Based upon the alleged fraudulent acts and omissions by the Seller (and others), in connection with the purchase of the Property, the Debtor stopped making payments on the Note, and attempted to sell the Property, but to no avail, because commercial property requiring improvements and without a viable tenant is extremely difficult to sell.

10.    As a result, on or about August 18, 2015, the Seller served a Notice of Default threatening to commence foreclosure proceedings if the Debtor failed to pay the balance due on the Note in the amount of $1,568,569.27.

11.    In order to protect the Debtor's assets which are directly related to the health and well-being of Mrs. Arnall and her son, a complaint was filed against the Seller, its agents, and all

30

other parties known to the Debtor involved in the transaction

12.     Based upon the foregoing, the Debtor believed that it was in the best interest of creditors and the Estate to file for Chapter 11 protection.

13.     Throughout the course of this Bankruptcy proceeding, the Debtor's goal has been to bring about an expeditious resolution of this case that will maximize value for all constituencies. The Debtor will fund its obligations under the Plan from rents generated from the Commercial Property, and if necessary, from Trust Exit Financing.

14.     The Trust has approximately $18 million available, demonstrating that there more than sufficient value to fund the New Value Contribution, Trust Exit Financing (to the extent required); and the LTV Reduction Contribution (if necessary) are all feasible. I assisted in the preparation of Exhibit B and G 3. Exhibit B is a true and correct copy of the Cash Flow Projections. Exhibit G 3 is the Liquidation Analysis for the Debtor.

15.     The financial information contained in Exhibits B and G. 3 is based on my good faith estimate as to the rental income I believe can be achieved once a suitable tenant has been found for the Commercial Property. The projections demonstrate that the Debtor can meet its financial obligations under the Plan. The projections show that the Reorganized Debtor will be able to meet its obligations to Creditors under the Plan; and that the Plan is not likely to be followed by the need for further financial reorganization of the Liquidation Debtor. Pursuant to the cash flow projections, the Debtor projects that it will generate sufficient cash to satisfy the obligation under the Plan. I have attempted to project the Debtor's income and expenses conservatively.

I declare under penalty of perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct and that this declaration was executed on May__, 2016 inLos Angeles, California.

[signature to follow]

TZEPAH FREEDLAND

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

633 W. Fifth Street, 48th Floor, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled (*specify*): ***MOTION AND MEMORANDUM FILED IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION PROPOSED BY DEBTOR, 315 ARDEN LLC; DECLARATIONS IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 9, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Sandford L. Frey            sfrey@cmkllp.com; knielsen@cmkllp.com
Daniel J. Kessler           aburkhalter@bkcglaw.com; ehardeman@bkcglaw.com; rlockwood@bkcglaw.com;
                            lsandoval@bkcglaw.com
Stuart I. Koenig            skoenig@cmkllp.com; knielsen@cmkllp.com
Ron Maroko                  ron.maroko@usdoj.gov
Byron Z. Moldo              bmoldo@ecjlaw.com; lpekrul@ecjlaw.com
Tomas A. Ortiz              tortiz@garrett-tully.com
U.S. Trustee (LA)           ustpregion16.la.ecf@usdoj.gov
Michael D. Vanlochem        janguiano@vandc.net
Marta C. Wade               mwade@cmkllp.com; knielsen@cmkllp.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) May 9, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA  90012

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 9, 2016 | Kelli Nielsen | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

## 2.    SERVICE LIST

315 Arden, LLC
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Securities Exchange Commission
444 S Flower St, Ste 900
Los Angeles, CA  90071-2934

County of Orange
PO box 4515
Santa Ana, CA  92702-4515
Attn:  Bankruptcy Unit

Equity Real Estate Services
1702 S Robertson Blvd
Los Angeles, CA 90035-4316

Investment Property Exchange
4041 MacArthur Blvd No 400
Newport Beach, CA 92660-2554

Larry Langberg & Associates
PO Box 630485
Simi Valley, CA 93063-0009

Luviland LLC
9761 Calendula Ave
Westminster, CA 92683-6915

Red Mountain Group Inc
c/o Byron Z. Moldo, Esq.
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd, 9th Fl
Beverly Hills, CA  90212

Seth I Weissman Esq
Jeffer Mangels Butler Mitchell LLP
1900 Ave of the Stars 7th Fl
Los Angeles, CA 90067-4308

Michael A Chesney
2929 Edinger Ave
Tustin, CA  92780

Attn:  Warren Berzack
Lee & Associates
15250 Ventura Blvd., Suite 100
Sherman Oaks, CA 91403

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA  94280-0001

L.A. County Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles, CA  90054-0110

Capital One Card Serv
PO Box 30285
Salt Lake City, UT 84130-0285

Daniel & Judith Arnall Family Trust
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211-3561

Eugene G Cowan Esq
Bocarsly Emden LLP
633 W Fifth St 64th Fl
Los Angeles, CA 90071-2011

Internal Revenue Service
300 N. Los Angeles St, Stop 5022
Los Angeles, CA 90012-3478

Law Offices of Timothy D. McGonigle
1880 Century Park East, Suite 516
Los Angeles, CA  90067

Orange County Treasurer
11 Civic Center Plz
Santa Ana, CA 92701-4063

Red Mountain Retail Group Inc
c/o Byron Z. Moldo, Esq.
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd, 9th Fl
Beverly Hills, CA  90212

Tzepah Freedland
8950 W Olympic Blvd # 650
Beverly Hills, CA  90211-3561

Lombardo Safford LLP
12424 Wilshire Blvd
Los Angeles, CA  90025

ADP LLC / Manager Client Services
P.O. Box 12513
1851 N. Resler Drive
El Paso, TX 79912

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA  95812-2952

Los Angeles City Clerk
PO Box 53200
Los Angeles, CA  90053-0200

Christopher Morris CPA
Sobul Prime & Schenkel
12100 Wilshire Blvd Ste 1150
Los Angeles, CA 90025-7117

David and Tzepah Freedland
8950 W Olympic Blvd #650
Beverly Hills, CA 90211-3561

Infiniti of Beverly Hills
8825 Wilshire Blvd
Beverly Hills, CA 90211-2605

Judith Arnall
8950 W Olympic Blvd # 650
Beverly Hills, CA  90211-3561

~~Luviland Corporation~~
~~319 Collard Way~~
~~Placentia, CA 92870-8217~~
*[Returned Mail – No Forwarding Address]*

Plumbquest
347 N Sycamore Ave
Los Angeles, CA 90036

Reynolds Cafferata, Esq.
Rodriguez Hori Choi & Cafferata LLP
777 S Figueroa St Ste 2150
Los Angeles, CA 90017-5875

W Linc BP LLC
Attn: Michael H. Mugel, Manager
1234 E 17th Street
Santa Ana, CA 92701-2612

SLBiggs
10960 Wilshire Blvd 7th Fl
Los Angeles, CA  90024

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**