Sandford L. Frey (SBN 117058)
Stuart I. Koenig (SBN 102764)
**CREIM MACIAS KOENIG & FREY LLP**
633 West Fifth Street, 48th Floor
Los Angeles, CA 90071
Telephone: (213) 614-1944
Facsimile: (213) 614-1961
sfrey@cmkllp.com

Reorganization Attorneys for 315 Arden LLC, Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### [LOS ANGELES DIVISION]

| | |
|---|---|
| In re<br><br>**315 ARDEN, LLC,**<br><br>    Debtor and Debtor in Possession. | CASE NO.: 2:15-bk-26483-BR<br><br>Chapter 11<br><br>**SUPPLEMENTAL MEMORANDUM FILED IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION PROPOSED BY DEBTOR, 315 ARDEN LLC; DECLARATION OF SAMUEL R. BIGGS IN SUPPORT THEREOF**<br><br>*Confirmation Hearing to be held on:*<br>DATE:    June 7, 2016<br>TIME:    10:00 a.m.<br>CTRM:    1668 |

## TABLE OF CONTENTS

I. OVERVIEW .................................................................................................................... 2

II. VOTING RESULTS ....................................................................................................... 3

III. PLAN CONFIRMATION .............................................................................................. 4

    A.    The Plan Should be Confirmed Because it Complies with All Requirements of Bankruptcy Code § 1129(a). .................................................. 4

        1.    Bankruptcy Code § 1129 (a)(3): The Debtor Has Proposed the Plan in Good Faith. ......................................................................................... 4

        2.    Bankruptcy Code § 1129 (a)(8): The Plan must be Accepted by Impaired Classes Entitled to Vote. .......................................................... 6

        3.    Bankruptcy Code § 1129 (a)(10): At Least One Impaired Class of Claims has Voted to Accept the Plan, after Excluding Votes by Insiders. ............................................................................................................ 6

        a.    The Plan complies with the provisions of Bankruptcy Code §1129 (b)(2)(A) with respect to Class 2/W Linc. ....................................... 9

        b.    The contract rate is an appropriate rate applicable to the payment of the Class 2 claim under the Plan. ........................................ 11

IV. CONCLUSION ............................................................................................................. 13

DECLARATION OF SAMUEL R. BIGGS .................................................................... 15

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

i

# TABLE OF AUTHORITIES

**Cases**

*Arnold & Baker Farms v. Unites States ex rel. Farmers Home Admin. (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1420 (9th Cir. 1996) .......................................................... 9

*Bell Road Investment Co. v. M. Long Arabians (In re M. Long Arabians)* 103 B.R. 211 (B.A.P. 9th Cir. 1989) .......................................................................................... 7

*Brite v. Sun Country Development. Inc. (In re Sun Country Development, Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985) .......................................................................... 5

*In re American Homepatient, Inc.*, 420 F.3d 559 (6th Cir. 2005) .......................... 13

*In re Bonner Mall Partnership*, 2 F.3d 899,915 (9th Cir. 1993), *cert. dismissed*, 513 U.S. 18 (1994) ............................................................................................... 5

*In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503 (9th Cir. 1987) .................................................................................................... 11

*In re Castaneda*, No. 09–50101, 2009 WL 3756569, at *1 & n. 1 (Bankr.S.D.Tex. Nov. 2, 2009) ............................................................................................................ 9

*In re Fowler*, supra, 903 F.2d. 694 (9th Cir. 1990) .............................................. 11

*In re Future Energy Corp,* 83 BR 470,490 (S.D. Ohio 1988) ................................ 9

*In re Trenton Ridge Investors, Inc. LLC*, 461 B.R. 440, 456 (S.D. Ohio 2011) ...... 9

*In re Vita Corp.*, 358 B.R. 749, 749 (Bankr.C.D.Ill.2007)") ................................... 9

*Till v. SCS Credit Corporation* 541 U.S. 465 (2004) .............................. 11, 12, 13

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 377, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740, 752, 17 C.B.C.2d 1368, 1375 (1988) ............. 10

**Statutes**

11 U.S.C. § 1126 (a) .............................................................................................. 4

11 U.S.C. § 1126 (c) .............................................................................................. 6

11 U.S.C. § 1126 (d) .............................................................................................. 6

11 U.S.C. § 1126 (f) ............................................................................................... 6

11 U.S.C. § 1126(g) ............................................................................................... 6

11 U.S.C. § 1129 (b) ....................................................................................... passim

11 U.S.C. § 502 ..................................................................................................... 7

11 U.S.C. §1125 .................................................................................................... 3

11 U.S.C. §1129(a) ............................................................................................ 4, 6

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**Rules**

Federal Rules of Bankruptcy Procedure 3020(b)(2) ................................................................. 4, 5

I.

## OVERVIEW

The Debtor[1] respectfully submits its Supplemental Memorandum filed in support of confirmation of Plan of Reorganization proposed by Debtor, 315 Arden LLC ("Supplemental Memorandum"). This Court has scheduled a hearing to take place on June 7, 2016 at 10:00 a.m. (*Pacific Time*) to consider confirmation of the Plan.

On April 8, 2016, the Court entered the Disclosure Statement Order [Docket No. 98]. As part of the Disclosure Statement Order, the Court set May 9, 20116 as the date the Debtor was required to file its Confirmation Brief. The Debtor timely filed its Confirmation Brief on May 9, 2016. [Docket No. 109].

The Disclosure Statement Order set May 23, 2016 at 5:00 p.m. Pacific Time as the Ballot Deadline for receipt of Ballots accepting or rejecting the Plan. The Disclosure Statement Order also set May 23, 2016 as the date for interested parties to submit any objections to confirmation. Finally, the Disclosure Statement Order set a date of May 31, 2016 for the Debtor to reply to any objections to confirmation of its Plan and to submit the Ballot Summary.

Concurrent with the filing of this Supplemental Memorandum, the Debtor is also submitting under separate cover its Ballot Summary. As can be seen from the Ballot Summary set forth below, all Classes have accepted the Plan (except Class 2 in which no vote whatsoever has been submitted).

Class 1 is unimpaired and deemed to have accepted. Classes 3, 4, and 5 are impaired, and each such class unanimously voted to accept the Plan. Additionally, 100% of non-sider members of Class 3 have voted to accept the Plan.

No objections to Confirmation of the Plan have been timely filed, or received. The Debtor submits this Supplemental Memorandum addressing those issues that it was not in a position to address at the time of filing of the initial Confirmation Brief.[2]

---

[1] Capitalized terms shall have the meaning ascribed to them in the Disclosure Statement and Plan, unless defined otherwise in this Memorandum.

[2] As stated, the Ballot Deadline and the deadline to file objections to Confirmation both having been set subsequent to the date

2

## II.

## VOTING RESULTS

On April 8, 2016, the Court entered the Disclosure Statement Order [Docket No. 98]. As set forth in the Disclosure Statement Order, the Court found that the Disclosure Statement contained "adequate information" within the meaning of Bankruptcy Code § 1125 and authorized the Debtor to solicit acceptances with respect to the Plan pursuant to certain specified procedures. Contemporaneous with the Confirmation Brief, the Debtor filed its Solicitation Package. The Debtor, thereafter, caused the Plan and related solicitation materials to be served upon the parties in accordance with the Disclosure Statement Order.

Pursuant to the Disclosure Statement Order, the Ballot Deadline fixed for receipt of Ballots accepting or rejecting the Plan was May 23, 2016 at 5:00 p.m. Pacific Time. Class 1 is unimpaired under the Plan and, therefore, deemed to have accepted the Plan. Classes 2, 3, 4, and 5 are impaired. Classes 3, 4, and 5 are entitled to vote. As indicated in the Plan Ballot Summary and summarized in the following table, Classes, 3, 4 and 5 have accepted the Plan.

| *Class* | *Voting Status/Results* | *Number Accepting* | *Number Rejecting* | *Amount Accepting* | *Amount Rejecting* |
|---|---|---|---|---|---|
| *Class 1 (Unimpaired)* | *100% Deemed Acceptance* | *1* | *0* | *$94,750* | *$0* |
| *Class 2 (Impaired)* | *No Vote submitted* | *0* | *0* | *$0* | *$0* |
| *Class 3 (Impaired)* | *100%* | *6* | *0* | *$122,488.83* | *$0* |
| *Class 4 (Impaired)* | *100%* | *1* | *0* | *$137,260.00* | *$0* |
| *Class 5 (Impaired)* | *100%* | *1* | *0* | *N/A* | *N/A* |

Therefore, all Classes, except Class 2, have accepted the Plan or are deemed to have accepted the Plan. Only Class 2, the disputed secured claim of W Linc, did not submit any ballot whatsoever. Despite the fact that Class 2 failed to submit a ballot, as explained below, the Plan can and should still be confirmed.

---

that the Debtor was required to file its initial Confirmation Brief.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 48TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

As discussed in greater detail below, there is no Allowed Claim in Class 2 that qualifies for voting pursuant to Bankruptcy Code § 1126 (a). Therefore, at this time, Class 2 is not entitled to vote on the Plan, and should be deemed only a precautionary Class for voting purposes.

Alternatively, Section IX.F of the Plan requests Confirmation under Bankruptcy Code § 1129 (b) in the event that all of the applicable requirements of Bankruptcy Code § 1129 (a) are met other than paragraph (8). The Debtor submits that the Plan is confirmable under Bankruptcy Code § 1129 (b)(1) with respect to Class 2 as (i) the Plan does not discriminate unfairly as to each class of claims that are impaired, and, (ii) the treatment of Class 2 under the Plan is fair and equitable and complies with the express requirements of Bankruptcy Code § 1129 (b)(2)(A).

Therefore, the Debtor requests that this Court confirm the Plan.

## III.

## PLAN CONFIRMATION

**A.     The Plan Should be Confirmed Because it Complies with All Requirements of Bankruptcy Code § 1129(a).**

As explained above, on May 9, 2016, the Debtor filed its Confirmation Brief in accordance with the Disclosure Statement Order *[Docket No. 109]*. However, because the deadline for submitting ballots and for filing objections to Confirmation was set for after the date by which the Debtor was required to submit its Confirmation Brief, May 23, 2016, the Debtor was not in a position to address all of the elements of Bankruptcy Code §1129. This Supplemental Memorandum addresses those elements of Section 1129 that the Debtor was unable to address in its Confirmation Brief.

    **1.     Bankruptcy Code § 1129 (a)(3): The Debtor Has Proposed the Plan in Good Faith.**

Bankruptcy Code § 1129 (a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law". FRBP 3020(b)(2) specifies that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." FRBP 3020(b)(2). Based on

the schedule set by this Court, objections to the Plan were due by no later than May 23, 2016. No objections to Confirmation were timely filed. In accordance with FRBP 3020(b)(2), based on the fact that no objection has been filed to the Plan on the grounds of a lack of good faith, the Court should find that Bankruptcy Code § 1129(a) (3) is satisfied without further inquiry.

Even absent FRBP 3020(b)(2)'s presumption of good faith, the Debtor's good faith is more than evident from the record. The primary purpose of this chapter 11 is to reorganize the Debtor and to maximize the value of its estate. See, In re Bonner Mall Partnership, 2 F.3d 899,915 (9th Cir. 1993), cert. dismissed, 513 U.S. 18 (1994). A plan satisfies Bankruptcy Code § 1129 (a)(3) when it "is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success." Brite v. Sun Country Development. Inc. (In re Sun Country Development, Inc.), 764 F.2d 406, 408 (5th Cir. 1985).

As explained in the Confirmation Brief, the Debtor filed this Chapter 11 case in order to preserve its interests in its most valuable asset, the Commercial Property, reorganize its financial affairs and restructure the disputed secured note. Following the filing of the Petition, the Debtor commenced the Fraudulent Transfer Action against Red Mountain and W Linc to set aside the transfer as a fraudulent transfer. [Docket No. 1 of the Adversary Proceeding]. Through the Fraudulent Transfer Action, the Debtor is seeking a determination of the Allowance of the Claim of W Linc, which, once determined, will have an impact on the timing of payments to the General Unsecured Creditors.

The Debtor believes that the record in this case and the resulting Plan copiously demonstrate that the Plan is proposed in good faith, and is designed to achieve a legitimate reorganization purpose by maximizing value for all constituencies, bringing about a fair and expeditious resolution of this reorganization case. The Plan accomplishes this goal by seeking a determination of the W Linc Claim and by paying any Allowed portion of such claim over time and in a manner consistent with the Bankruptcy Code. As abundantly demonstrated by the record before the Court, the Plan permits the General Unsecured Creditors to realize greater benefit as would otherwise be received absent reorganization or through liquidation.

2.  **Bankruptcy Code § 1129 (a)(8): The Plan must be Accepted by Impaired Classes Entitled to Vote.**

Bankruptcy Code § 1129 (a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class vote to accept the plan, counting only those claims whose holders actually vote. Bankruptcy Code § 1126 (c); see also, Bankruptcy Code § 1126 (d) (governing classes of interests). A class of claims or interests that is not impaired is deemed to have accepted the plan. See, Bankruptcy Code §§ 1126 (f) and 1129 (a)(8). A class of claims or interests that does not receive or retain any property under the plan is deemed to reject. See, Bankruptcy Code § 1126(g).

Class 1 is unimpaired, and deemed to have accepted.

Classes 2, 3, 4 and 5 are impaired. Classes 3, 4 and 5 are entitled to vote. As attested to in the Ballot Summary submitted concurrent with the filing of this Supplemental Memorandum, Classes 3, 4 and 5 have voted to accept the Plan by the requisite majority by number and amount. Class 3, the General Unsecured Creditor class, voted unanimously to accept the Plan.

3.  **Bankruptcy Code § 1129 (a)(10): At Least One Impaired Class of Claims has Voted to Accept the Plan, after Excluding Votes by Insiders.**

Bankruptcy Code § 1129 (a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider. After excluding the votes of insiders, Class 3 has voted <u>unanimously</u> in favor of the Plan. The Plan, therefore, satisfies this element of confirmation under Section 1129 (a)(10).

4.  **Class 2 is not entitled to vote on the Plan.**

The only member of Class 2 is the disputed secured claim of W Linc. As of the Ballot Deadline, there is filed and pending against it, the Fraudulent Transfer Action, accompanying objection claim, the State Court Action, and the recent *Motion for Summary Adjudication, filed by Plaintiff, 315 Arden, LLC, against Defendants Red Mountain Group, Inc., a California Corporation; Red Mountain Retail Group, Inc., a California Corporation; and W*

6

*Linc BP, LLC, a California Limited Liability Company*, filed on May 20, 2106 *[Adv. Docket No. 33]* ("MSJ").[3] The MSJ is set for hearing before this Court on July 19, 2016.

The record in this case unequivocally establishes that the Claim and asserted security interest held by W Linc are subject to a *bona fide* dispute, which dispute was not resolved as of the Ballot Deadline.

W Linc did not submit a ballot, timely or otherwise. Despite the fact that Class 2 failed to submit a ballot, as explained below, the Plan can and should nevertheless be confirmed as there is no Allowed Claim in Class 2 that qualifies for voting pursuant to Bankruptcy Code § 1126 (a). Section 1126 (a) states in pertinent part as follows:

(a) The holder of a claim or interest **allowed under section 502** of this title may accept or reject a plan. . . *[Emphasis added]*

Bankruptcy Code § 502 (a) provides as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, **unless a party in interest**, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, **objects**. *[Emphasis added]*

The Ninth Circuit Bankruptcy Appellate Panel held in *Bell Road Investment Co. v. M. Long Arabians (In re M. Long Arabians)* 103 B.R. 211 (B.A.P. 9th Cir. 1989), that where a creditor's claim has been objected to, and the objection will not be resolved prior to the chapter 11 plan voting deadline, the creditor must seek temporary allowance of its claim under FRBP 3018(a) or it will not be entitled to vote on the plan. See, *Id at 215*. In *M. Long Arabians*, a creditor, whose claims had been objected to, voted to reject a chapter 11 plan. *Id at 213*. The creditor's claim in that case was large enough for the rejection vote to prevent the debtor from satisfying the Code §1129(a)(8) confirmation requirement that at least two-thirds in dollar amount of voted claims in an impaired class must vote to accept a plan. *Id at 213*. The creditor in *M. Long Arabians* had not filed a Rule 3018(a) motion to temporarily allow its claims for voting purposes prior to casting its

---

[3] In connection with the Confirmation Hearing, the Court is requested to take Judicial Notice of the foregoing actions.

7

ballots on the plan. *Id at 214.* The BAP affirmed the bankruptcy court's findings that, because the creditor held no allowed claims due to its failure to seek temporary allowance, its votes on the plan should not have been counted. *Id at 215.*

Accordingly, no Allowed Claim is entitled to vote in Class 2; and, at this time, the Class should be deemed only a precautionary class for voting purposes.

5. **Bankruptcy Code §1129(b): The Plan is Fair and Equitable and Does Not Discriminate Unfairly**

Assuming *arguendo* that the Court finds that an affirmative vote is required in Class 2, the Plan can and should, nevertheless, be confirmed. Section IX.F of the Plan expressly requests Confirmation under Bankruptcy Code § 1129 (b) in the event that all of the applicable requirements of Bankruptcy Code § 1129 (a) are met other than paragraph (8). The Debtor submits that the Plan is confirmable under Bankruptcy Code § 1129 (b)(1) with respect to Class 2 as (i) the Plan does not discriminate unfairly as to each class of claims that are impaired, and, (ii) the treatment of Class 2 under the Plan is fair and equitable and complies with the express requirements of Bankruptcy Code § 1129 (b)(2)(A). Bankruptcy Code §1129 (b)(1) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of [1129(a)] other than [1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Even if the Court finds that Bankruptcy Code §1129 (a)(8) is not satisfied with regard to Class 2 (W Linc), the Debtor's Plan is, nevertheless, confirmable under Bankruptcy Code §1129 (b) with respect to Class 2 as the Plan does not unfairly discriminate against the disputed claim of W Linc, and is fair and equitable. Therefore, it should be confirmed.

///

///

///

8

a. <u>The Plan complies with the provisions of Bankruptcy Code §1129 (b)(2)(A) with respect to Class 2/W Linc.</u>

Class 2 has one potential member, W Linc, the holder of a disputed secured claim. As explained above and in the Ballot Summary, W Linc did not submit a ballot, and voluntarily elected not to vote. Assuming arguendo that Class 2 is entitled to vote at all (which it is not for the reasons articulated earlier), Class 2 is not deemed to have accepted the Plan. See, *In re Trenton Ridge Investors, Inc. LLC*, 461 B.R. 440, 456 (S.D. Ohio 2011) ("But the general rule is that a class cannot be deemed to have accepted a plan if no creditor in the class has voted. *See In re Castaneda*, No. 09–50101, 2009 WL 3756569, at *1 & n. 1 (Bankr.S.D.Tex. Nov. 2, 2009); *In re Vita Corp.*, 358 B.R. 749, 749 (Bankr.C.D.Ill.2007)").

Because the Plan complies with the provisions of Bankruptcy Code §1129 (b)(2)(A), it should be confirmed regardless of the non-vote of Class 2. See, *In re Future Energy Corp*, 83 BR 470,490 (S.D. Ohio 1988): "Section 1129 (b) provides that, if a plan meets all of the applicable requirements of § 1129 (a), except paragraph (8), the Court, upon request by the proponent of the plan, shall confirm the plan if it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted the plan."

Section 1129 (b)(2)(A) lists three possible treatments of a secured claim, any one of which will independently satisfy the fair and equitable requirement. *Arnold & Baker Farms v. Unites States ex rel. Farmers Home Admin. (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1420 (9th Cir. 1996). The plan proponent may seek to satisfy the claim in full by giving the creditor a note in the amount of the secured claim secured by the same collateral. The plan proponent may also seek to sell the collateral free of the lien, and transfer the lien to the proceeds of sale. Finally, a proponent may seek to give the creditor the "indubitable equivalent" of its claim.

In the case at hand, the Plan should be deemed *fair and equitable* as it provides for treatment consistent with Bankruptcy Code §1129 (b)(2)(A)(i)(I) and (II). Pending resolution of its Disputed Claim and Lien, the Plan in this case provides, among other things, that (a) W Linc shall retain its disputed lien against the Commercial Property, subject to the Debtor's claims; and, that (b) the Debtor shall make quarterly interest payments into a claims reserve pending Allowance

9

of the claim. Thereafter, upon Allowance of its claim, the Plan in this case provides that W Linc shall (x) retain its lien unaltered by the Plan; and (y) receive (i) the proceeds of the claims reserve account, (ii) monthly mortgage payments, calculated based upon a thirty-five year amortization, (iii) a principal reduction payment, if necessary, no later than twenty-five months following the Effective Date, if necessary, to ensure that there is at least a 25% equity cushion, and (iv) payment of the principal balance in full, no later than forty-eight months following the Effective Date of the Plan. The applicable rate to be applied to the payment stream is the <u>contract rate</u> of 5%.

Bankruptcy Code §1129 (b)(2)(A) provides:

(A) With respect to a class of secured claims, the plan provides –

(i)(I) that the holder of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

Accordingly, the Plan in this case proposes that W Linc retain its liens to the extent of the Allowed amount of its claims consistent with Section §1129(b)(2)(A)(i)(I), and that it will receive on account of such claim, deferred cash payments totaling at least the Allowed amount of such claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property in accordance with Section §1129(b)(2)(A)(i)(II).

Section 1129 (b)(2)(A)(i)(II) requires a present value analysis of the stream of payments proposed by the plan proponent. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 377, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740, 752, 17 C.B.C.2d 1368, 1375 (1988) (noting that "value, as of the effective date of the plan" language in section 1129 (b)(2)(A)(i)(II) require present value analysis). As indicated in the legislative history, if the interest rate is "market rate" then the principal of the note need only equal the allowed amount of the claim. H.R. Rep. No.

595, 95th Cong., 1st Sess 414 (1977), *reprinted in* App. Pt. 4(d)(i) *infra*. The legislative history also suggests that balloon payments may be appropriate, or that a plan may adopt nonstandard repayment schedules adapted to the reorganized debtor's business needs. H.R. Rep. No. 595, 95th Cong., 1st Sess. 415 (1977), *reprinted in* App. Pt. 4d (d)(i) *infra*.

    b.    <u>The contract rate is an appropriate rate applicable to the payment of the Class 2 claim under the Plan.</u>

The Debtor hoped for a consensual plan and in that spirt agreed to amend the Plan to provide for the rate of interest on payment of the Class 2 claim to equal the contract rate in the event it is determined that W Linc has an Allowed Claim. Assuming its claim and lien are Allowed, the deferred cash payments over the life of the Plan will, therefore, have a value equal to the value of W Linc's interest as of the Effective Date in the Estate's interest in the Commercial Property.

Generally, the Ninth Circuit looks to a market rate for similar loans. If a market is available for the type of loan at issue, the market rate will be applied. The rate under current market conditions is not greater than the contract rate. The Commercial Property is valued at significantly more than the Disputed Claim of W Linc.

In the absence of a market rate, the Ninth Circuit adopts a formula approach by adding an appropriate risk factor to a base rate for a "riskless" loan, such as U.S. government Treasury bond rates or the prime rate. See, *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503 (9th Cir. 1987); and *In re Fowler*, supra, 903 F.2d. 694 (9th Cir. 1990) (both cases decided prior to *Till*, see analysis below). The Ninth Circuit Court of Appeals adopted a case by case approach.

> Having heard testimony regarding both the market interest rates in the region and the risks associated with this debtor, the bankruptcy court used the formula approach, taking the prime rate on the date of plan confirmation, 8.75% and adding a .75% risk factor. It did not err in using this approach to determine the cramdown interest rate.

[*Fowler* at 697]

11

In utilizing the formula approach, the interest rate is adjusted for the term of the plan's repayment period by utilizing as the base rate the yield quoted for treasury bills or bonds on equivalent terms. The risk inherent in the type of collateral involved can be accounted for by utilizing an adjustment factor derived from the market for loans secured by similar collateral.

In 2004, the Supreme Court addressed the crucial question of how to select an appropriate interest rate for cramdown in *Till v. SCS Credit Corporation* 541 U.S. 465 (2004). Although *Till* was a chapter 13 case, many Courts have applied it to chapter 11 cases as well. *Till* holds that a formula approach based upon the prime rate of interest best carries out the intention of Congress in order to determine a whether a stream of deferred payments constitutes present value of the allowed claim. *Till* reversed a decision of the court of Appeals for the Seventh Circuit that held that the pre-bankruptcy contract rate should be the presumptive rate based on the theory that cramdown involved imposing a coerced loan on the secured creditor. In rejecting that the contract rate was the appropriate rate, the Supreme Court preferred the formula approach, which starts with the prime rate, and then adjusts the applicable rate upward.

> [T]he resulting prime-plus rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor. For these reasons, the prime-plus or formula rate best comports with the purposes of the Bankruptcy Code.

[*Till*, 541 U.S. at 477].

The Supreme Court in *Till* did not directly decide the proper scale for the risk adjustment factor, leaving it to a more flexible approach. However, the Supreme Court in *Till* did offer some guidance. The Supreme Court noted that adjustments of 1 to 3 percent seemed appropriate and suggested that large adjustments would not be appropriate because a plan cannot be confirmed unless the Bankruptcy Court finds the plan feasible. The Supreme Court stated:

> If the court determines that the likelihood of default is so high as to necessitate an 'eye-popping' interest rate, . . . the plan probably should not be confirmed.

[*Till*, 541 U.S. at 478].

Many courts have applied *Till* to Chapter 11 cases holding that a formula rate applies unless an efficient lending market exists for the proposed exit financing. See, *In re American Homepatient, Inc.*, 420 F.3d 559 (6th Cir. 2005).

The current Wall Street Journal Prime rate is 3.5% [Biggs Decl.]. The current U.S. government Treasury bond rate for a five year term is 1.32% [Biggs Decl.]. Unlike the case law cited above, the prime rate is the appropriate rate in this case for the payment of Class 2 as payment of the Class 2 claim is virtually risk free given the loan to value ratio.

Unlike the plans at issue in many chapter 11 cases (as well as those at issue in the cited case law), the Plan presented by the Debtor does not concern payment of a secured claim having a 100% loan to value ratio ("LTV Ratio"). To the contrary, the evidence before the Court establishes that the value of the Commercial Property is approximately $3.3 million. [Chesney Decl. and Herron Appraisal]. W Linc has introduced no evidence to refute such value, admissible or otherwise. Based on the evidence before the Court, the holder of the Class 2 claim enjoys a more than 100% equity cushion. As further protect to W Linc, the Plan provides that if the LTV falls below 75% of the value of the Commercial Property as determined by the Updated Appraisal, a payment will be made from the LTV Reduction Contribution, on a date which is no later than twenty-five (25) months following the Effective Date, in such as amount as is necessary to create a 75% LTV Ratio. The contract rate of interest under the pre-petition disputed W Linc Note is 5%. Given the protections provided for in the Plan, the contract rate of interest of 5% is more than reasonable in the case at hand. The Plan proposes to retain the contract rate.

## IV.

## CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the Court enter its order confirming the Plan.

/ / /

/ / /

/ / /

/ / /

13

| | | |
|---|---|---|
| 1 | Dated: May 31, 2016 | CREIM MACIAS KOENIG & FREY LLP |
| 2 | | |
| 3 | | By: /s/ Sandford L. Frey<br>SANDFORD L. FREY |
| 4 | | Reorganization Attorneys for 315 Arden LLC, Debtor and Debtor in Possession |

14

# DECLARATION OF SAMUEL R. BIGGS

I, Samuel Biggs, do hereby declare as follows:

1. I am over eighteen years of age. Except as otherwise indicated, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

2. I am member of the accounting firm of SL Biggs, a division of SingerLewak, accountants and financial advisors to the Debtor.

3. I make this declaration in support of the Supplemental Memorandum.[4]

4. Based on my independent investigation, I am informed and believe that as of the date of this declaration, the Wall Street Journal Prime rate is 3.5% and the current U.S. government Treasury bond rate for a five year term is 1.32%.

5. Given the current prime rate and bond rates, the fair market value and amount of equity in the Commercial Property, along with the current LTV, it is my opinion that the contract rate of 5% is fair and reasonable for the W Linc. Note.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on May__, 2016 in Los Angeles, California.

                                                  [signature to follow]
                                                  SAMUEL R. BIGGS

---

[4] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum, or the Plan, as applicable.

15

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

633 W. Fifth Street, 48th Floor, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL MEMORANDUM FILED IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION PROPOSED BY DEBTOR, 315 ARDEN LLC; DECLARATION OF SAMUEL R. BIGGS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 31, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Sandford L. Frey | sfrey@cmkllp.com; knielsen@cmkllp.com |
| Daniel J. Kessler | aburkhalter@bkcglaw.com; ehardeman@bkcglaw.com; rlockwood@bkcglaw.com; lsandoval@bkcglaw.com |
| Stuart I. Koenig | skoenig@cmkllp.com; knielsen@cmkllp.com |
| Ron Maroko | ron.maroko@usdoj.gov |
| Byron Z. Moldo | bmoldo@ecjlaw.com; lpekrul@ecjlaw.com |
| Tomas A. Ortiz | tortiz@garrett-tully.com |
| U.S. Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Michael D. Vanlochem | janguiano@vandc.net |
| Marta C. Wade | mwade@cmkllp.com; knielsen@cmkllp.com |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) May 31, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 31, 2016 | Kelli Nielsen | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                         **F 9013-3.1.PROOF.SERVICE**

## 2. SERVICE LIST

315 Arden, LLC
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Securities Exchange Commission
444 S Flower St, Ste 900
Los Angeles, CA 90071-2934

County of Orange
PO box 4515
Santa Ana, CA 92702-4515
Attn: Bankruptcy Unit

Equity Real Estate Services
1702 S Robertson Blvd
Los Angeles, CA 90035-4316

Investment Property Exchange
4041 MacArthur Blvd No 400
Newport Beach, CA 92660-2554

Larry Langberg & Associates
PO Box 630485
Simi Valley, CA 93063-0009

Luviland LLC
9761 Calendula Ave
Westminster, CA 92683-6915

Red Mountain Group Inc
c/o Byron Z. Moldo, Esq.
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd, 9th Fl
Beverly Hills, CA 90212

Seth I Weissman Esq
Jeffer Mangels Butler Mitchell LLP
1900 Ave of the Stars 7th Fl
Los Angeles, CA 90067-4308

Michael A Chesney
2929 Edinger Ave
Tustin, CA 92780

Attn: Warren Berzack
Lee & Associates
15250 Ventura Blvd., Suite 100
Sherman Oaks, CA 91403

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

L.A. County Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles, CA 90054-0110

Capital One Card Serv
PO Box 30285
Salt Lake City, UT 84130-0285

Daniel & Judith Arnall Family Trust
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211-3561

Eugene G Cowan Esq
Bocarsly Emden LLP
633 W Fifth St 64th Fl
Los Angeles, CA 90071-2011

Internal Revenue Service
300 N. Los Angeles St, Stop 5022
Los Angeles, CA 90012-3478

Law Offices of Timothy D. McGonigle
1880 Century Park East, Suite 516
Los Angeles, CA 90067

Orange County Treasurer
11 Civic Center Plz
Santa Ana, CA 92701-4063

Red Mountain Retail Group Inc
c/o Byron Z. Moldo, Esq.
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd, 9th Fl
Beverly Hills, CA 90212

Tzepah Freedland
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211-3561

Lombardo Safford LLP
12424 Wilshire Blvd
Los Angeles, CA 90025

ADP LLC / Manager Client Services
P.O. Box 12513
1851 N. Resler Drive
El Paso, TX 79912

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Los Angeles City Clerk
PO Box 53200
Los Angeles, CA 90053-0200

Christopher Morris CPA
Sobul Prime & Schenkel
12100 Wilshire Blvd Ste 1150
Los Angeles, CA 90025-7117

David and Tzepah Freedland
8950 W Olympic Blvd #650
Beverly Hills, CA 90211-3561

Infiniti of Beverly Hills
8825 Wilshire Blvd
Beverly Hills, CA 90211-2605

Judith Arnall
8950 W Olympic Blvd # 650
Beverly Hills, CA 90211-3561

~~Luviland Corporation~~
~~319 Collard Way~~
~~Placentia, CA 92870-8217~~
*[Returned Mail – No Forwarding Address]*

Plumbquest
347 N Sycamore Ave
Los Angeles, CA 90036

Reynolds Cafferata, Esq.
Rodriguez Hori Choi & Cafferata LLP
777 S Figueroa St Ste 2150
Los Angeles, CA 90017-5875

W Linc BP LLC
Attn: Michael H. Mugel, Manager
1234 E 17th Street
Santa Ana, CA 92701-2612

SLBiggs
10960 Wilshire Blvd 7th Fl
Los Angeles, CA 90024

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**