Sandford L. Frey (SBN 117058)
Stuart I. Koenig (SBN 102764)
**CREIM MACIAS KOENIG & FREY LLP**
633 West Fifth Street, 48th Floor
Los Angeles, CA 90071
Telephone: (213) 614-1944
Facsimile:  (213) 614-1961
sfrey@cmkllp.com
skoenig@cmkllp.com

Reorganization Attorneys for 315 Arden LLC, Debtor and Debtor-in-Possession

**FILED & ENTERED**

**JUN 27 2016**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** fortier       **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# [LOS ANGELES DIVISION]

| | |
|---|---|
| In re | CASE NO.: 2:15-bk-26483-BR |
| **315 ARDEN, LLC,** | Chapter 11 |
| Debtor and Debtor-in-Possession. | **ORDER ON CONFIRMATION OF PLAN OF REORGANIZATION PROPOSED BY DEBTOR, 315 ARDEN, LLC** |
| | *Confirmation Hearing held on:*<br>Date:       June 7, 2016<br>Time:      10:00 a.m.<br>Ctrm:      1668 |

C:\Users\fortier\Local Settings\Temp\Order#309797#d7c44621-fc62-4bac-92cf-cbca54c45a0f.docx

1

On June 7, 2016, the Court held a hearing ("Confirmation Hearing") regarding confirmation of the *Plan of Reorganization Proposed by Debtor, 315 Arden, LLC*, a true and correct copy of which is filed as a part of the Findings of Fact and Conclusions of Law lodged contemporaneously with this Confirmation Order as **_Exhibit A_** ("Plan")[1].

Sandford L. Frey of Creim Macias Koenig & Frey LLP appeared on behalf of the Debtor, 315 Arden, LLC ("Debtor"). All other appearances were duly noted on the record.

The Court, having reviewed and considered:

- The *Disclosure Statement Describing Plan of Reorganization Proposed by Debtor, 315 Arden, LLC* and Exhibits ("Disclosure Statement"), attached as Exhibit C to *the Submission of Solicitation Package for Plan of Reorganization Proposed by Debtor, 315 Arden, LLC,* filed May 9, 2016, as Docket No. 108 ("Solicitation Package");

- The *Plan of Reorganization Proposed by Debtor, 315 Arden, LLC* ("Plan"), filed December 28, 2015, attached as Exhibit D to the Solicitation Package;

- The Exhibits accompanying the Disclosure Statement;

- The *Order Authorizing and Approving: (1) Adequacy of the Disclosure Statement Describing Plan of Reorganization Proposed by Debtor, 315 Arden, LLC; (2) The Form, Scope, and Nature of Solicitation, Balloting, Tabulation, and Notice with respect thereto; and (3) Related Confirmation Procedures, Deadlines and Notices* ("Disclosure Statement Order") entered on April 8, 2016 [Docket No. 98];

- Solicitation Package and Exhibits [Docket No. 108];

- Ballots attached to the *Analysis of Ballots for Accepting or Rejecting Plan of Reorganization Proposed by Debtor, 315 Arden, LLC* and *Declaration of Kelli Nielsen in Support thereof*, filed on May 31, 2016 [Docket No. 120] ("Plan Ballot Summary");

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan. Capitalized terms defined herein shall have the meaning set forth herein. Unless otherwise noted, statutory references are to 11 U.S.C. §§ 101 et seq., the Bankruptcy Code.

- Plan Ballot Summary filed on May 31, 2016 [Docket No. 120];
- The *Memorandum Filed in Support of Confirmation of Plan of Reorganization Proposed by Debtor, 315 Arden, LLC* filed on May 10, 2016 [Docket No. 109] ("Confirmation Memorandum");
- The *Supplemental Memorandum Filed in Support of Confirmation of Plan of Reorganization Proposed by 315 Arden, LLC* filed May 31, 2016 [Docket No. 121];
- Declaration of Samuel Biggs in support of confirmation of the Plan, filed with the Confirmation Memorandum on May 10, 2016 [as part of Docket No. 109];
- Declaration of Tzepah Freedland in support of confirmation of the Plan, filed on May 12, 2016 [Docket No. 112];
- The various declarations of service that relate to the Debtor's service of the Plan, the Disclosure Statement, and other Court-approved solicitation materials that the Debtor filed with the Court;
- All other pleadings and evidence that were submitted before or at the Confirmation Hearing;
- The record in this Case; and,
- The arguments and representations of counsel at the Confirmation Hearing;

The Court having made its Findings of Fact and Conclusions of Law ("Findings") and good cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

1. The Plan is **APPROVED** and **CONFIRMED** under Bankruptcy Code §1129.

2. Except as provided above, as of the Effective Date, pursuant to Section VI.F of the Plan, any and all other leases and executory contracts which were not assumed prior to the Effective Date are rejected. The deadlines, procedures and sanctions set forth in Section VI.F of the Plan regarding the assertion of Claims for damages arising from such rejection are approved and established. This Confirmation Order does not constitute a waiver of any defenses, claims,

or counterclaims that the Debtor may have against any party to an assumed or rejected lease or contract.

3.  The terms and provisions of the Plan shall supersede and control any different or inconsistent term or provision in the Disclosure Statement. The Plan shall control over any conflicting provision, or in the event of any ambiguity, between the terms of the Disclosure Statement, on the one hand, and the Plan, on the other hand.  The Plan shall control over any conflicting provision, or in the event of any ambiguity, between the terms of any documents entered into or approved in connection with the Plan (as defined in the Plan), on the one hand, and the Plan, on the other hand.

4.  The provisions of the Plan and this Confirmation Order will bind (a) the Debtor, (b) the Reorganized Debtor, (c) all Holders of Administrative Claims, Priority Claims, Priority Tax Claims, Classified Priority Claims, Secured Claims, General Unsecured Creditors, and all other Creditors (as that term is defined in the Plan), (d) all Holders of Interests, and (e) all other interested parties, whether or not the Claims or interests of these entities are impaired under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether or not these entities have filed Proofs of Claim or Proofs of Interest or are deemed to have filed Proofs of Claim or Proofs of Interest in the Debtor's case.

5.  On the Effective Date, Freedland shall continue in her role as the managing member of the Reorganized Debtor. On the Effective Date, as set forth in Section VI.B of the Plan, all of the property of the Estate and/or Debtor, including, without limitation, the Assets, and Rights of Action, are vested in the Reorganized Debtor free and clear of all Claims, liens, interests and encumbrances.  As of the Effective Date, Freedland shall manage the affairs of the Reorganized Debtor and the administration of the Plan, and in such capacity, may exercise rights, power and authority consistent with the Plan and applicable laws.

6.  On and after the Effective Date, Freedland shall be authorized and empowered to execute, do and perform, in the name and on behalf of the Reorganized Debtor, such acts and to prepare, execute, acknowledge, verify, file, deliver and cause to be published such certificates,

agreements, notices, reports, applications, declarations, instruments and documents, under the corporate seal of the Reorganized Debtor or otherwise, as Freedland may deem necessary, appropriate or desirable in her discretion, to carry into effect the decisions she makes in her capacity as the managing member of the Reorganized Debtor, the terms and provisions of the Plan, and/or in connection with any of the matters set forth above or in the Plan. The Freedland's performance of any such actions and execution and delivery of any such documents shall constitute conclusive evidence of such authority and determination.

7.    On and after the Effective Date, Freedland is authorized and empowered to execute, do and perform, in the name and on behalf of the Reorganized Debtor, such acts and to prepare, execute, acknowledge, verify, file, deliver and cause to be published any and all certificates, agreements, notices, notice of default, reports, applications, declarations, instruments, notes, transfer documents, and any and all other documents of any kind or nature on behalf of, and in the name of, the Reorganized Debtor, including, without limitation, those reasonable, necessary, required, requested or appropriate in order to (i) sell, convey, transfer, hypothecate, assign, alienate, dispose of, take possession of, and/or abandon any of the Assets, (ii) collect or enforce the Reorganized Debtor's rights respecting, or in connection with, any accounts receivable, (iii) file, prosecute, enforce or collect any Claims and/or Rights of Action, (iv) carry-out the terms and intent of the Plan, and (v) administer the Plan and the Case. Freedland's performance of any such actions and execution and delivery of any such documents shall constitute conclusive evidence of such authority and determination.

8.    On and after the Effective Date, Freedland shall have the right and power to file and prosecute objections to, and take actions to pursue any and all disputes respecting, any and all Claims, including, without limitation, Administrative Claims, Priority Claims, Priority Tax Claims, Classified Priority Claims, Secured Claims, General Unsecured Creditors, Subordinated Claims, which are asserted against the Debtor with respect to which the liability is disputed in whole or in part. All disputes may be litigated to Final Order; provided, however, that Freedland may compromise and settle any disputes respecting Claims. At such time as a Disputed Claim is

resolved by Final Order and/or is Allowed or is settled by Freedland, the Holder thereof will receive, as soon as practicable thereafter, the distributions to which such Holder is then entitled under the Plan.

9. Notwithstanding anything to the contrary in the Plan or any order, Freedland may setoff, recoup, or withhold against the Distributions to be made on account of any Allowed Claim, any Claims that the Debtor may have against the entity holding a Claim. Freedland will not waive or release any Claim against those entities by failing to effect such setoff or recoupment; by Allowing any Claim against the Debtor; or by making a Distribution on account of an Allowed Claim.

10. Notwithstanding any other Plan provision or other order, no Distributions will be made on account of any Claim until such Claim is an Allowed Claim. Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim.

11. Freedland may pay all Administrative Expenses, Plan Expenses, Operating Expenses arising under, in connection with, related to, or necessary for implementation, execution, performance, and consummation of the Plan and this Confirmation Order, the transfer, disposition, distribution or administration of any Assets, and all matters referred to in the Plan and this Confirmation Order.

12. After the Effective Date, professionals retained by the Reorganized Debtor may bill, invoice and be paid their fees and expenses for services rendered after the Effective Date in the ordinary course of business and without the necessity of Bankruptcy Court approval.

13. Freedland may move to close the Case at any time after the Effective Date, even if any Assets remain to be liquidated, funds remain to be distributed or Plan Reserve(s) remain on deposit.

14. On the Effective Date, Freedland shall retain, and may exclusively enforce, any and all such claims, rights or Rights of Action (as defined in the Plan), whether arising before or after the Effective Date, in any court or other tribunal. Freedland shall have the exclusive right,

authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights and Rights of Action.

15. Unless a claim or Right of Action against a person or entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Reorganized Debtor expressly reserves such claim or cause of action for later adjudication (including, without limitation, claims and Rights of Action which the Reorganized Debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown at this time, or facts or circumstances which may change or be different from those now believed to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Rights of Action upon, or after, the consent to or consummation of the Plan, except where such claims or Rights of Action have been released in the Plan or other Final Order.

16. Freedland and the Reorganized Debtor, in their absolute and sole discretion, have the right to supplement at any time before or after the Effective Date, the reserved litigation to include actions, causes of action, claims, avoidance actions, declaratory relief actions and lawsuits, of any kind or nature, whether in law or in equity, that the Debtor may have against any Claimant or any other person or entity by filing with the Bankruptcy Court *Schedule I*; upon such filing, Schedule I shall be deemed to be incorporated as part of the Disclosure Statement, Plan and this Confirmation Order as of the Effective Date without further order of this Court; and, none of the Disclosure Statement, Plan and/or this Confirmation Order shall act as bar against the filing and/or prosecution of any such actions, causes of action, claims, avoidance actions, declaratory relief actions and lawsuits, and/or the enforcement of any judgment obtained with respect thereto.

17. On and after the Effective Date, with respect to any matter affecting any Assets, Freedland may take such actions in the name of the Debtor.

18. All settlements, compromises, discharges, injunctions, exculpations and releases

provided for in the Plan are approved and established as if fully set forth herein, including, without limitation, those specifically provided for Section IX of the Plan.

19.  This Confirmation Order operates as an injunction against the commencement or continuation of any act relating to the collection or enforcement of any Claim ("Enjoined Claim") against the Debtor and the Reorganized Debtor.  Except as otherwise provided in the Plan, all Persons who have held, hold or may hold Claims against or Interests in the Debtor are enjoined from and after the Effective Date in respect of the treatment of the Claims of Creditors under the Plan, from: (i) commencing or continuing in any manner any action or proceeding of any kind with respect to such Claim against the Debtor and/or the Reorganized Debtor, including, without limitation based upon any guaranty; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor and/or the Reorganized Debtor or the property of any such parties or property of their respective affiliates with respect to any such Claim; and (iii) creating, perfecting or enforcing any encumbrances of any kind against the Debtor and/or the Reorganized Debtor or against the property of any such parties, with respect to any such Claim or Interest.

20.  The Exculpated Parties (as defined in the Plan) shall neither have, nor incur, any liability to any entity or to any Holder of a Claim or Interest for any act taken or omitted to be taken on or after the Petition Date in connection with, related to, or arising out of the Case, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, or property to be distributed under the Plan, including, without limitation, formulating, negotiating, soliciting, preparing, disseminating, implementing, entering, effecting or consummating the Plan; the marketing, sale and/or liquidation of any Assets, personal property and/or collection of any accounts receivable; any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; provided that the foregoing "Exculpation" shall not include and shall not apply to the liability of any of the Exculpated Parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud, breach of fiduciary duty or intentional misrepresentation; provided,

further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

21.  All Persons voting in favor of the Plan or receiving and accepting any distribution pursuant thereto are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against the Exculpated Parties, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon the conduct of the Exculpated Parties set forth and/or included in any of the Exculpation provisions set forth in this Plan.  In the event the Exculpated Parties and/or any of them are injured by any willful violation of the injunctions provided in the Plan, such aggrieved party shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

22.  The Court retains and reserves jurisdiction to enter appropriate order(s) in aid of the Plan or implementation of the Plan pursuant to Bankruptcy Code § 1142 and to matters set forth in Section VIII of the Plan.  The Court may properly retain jurisdiction over the matters set forth in Section VIII of the Plan.

23.  The Bar Date for filing a POC based on a claim arising from the rejection of a lease or contract is thirty (30) days after the entry of this Confirmation Order.

24.  All Administrative Claims (excluding professional compensation for professionals employed pursuant to Bankruptcy Code § 327) are barred unless asserted by the filing of a POC (i) designated as a request for payment of Administrative Expenses, (ii) asserting that such claim is allowable pursuant to Bankruptcy Code § 503(b), (iii) stating the amount of such claim, (iv) stating the basis of such claim, and (v) attaching documentation in support of such claim.

25.  Any objection to any Administrative Claim (excluding those to professional compensation for professionals employed pursuant to Bankruptcy Code § 327) must be filed within one-hundred and twenty (120) days from the date such Administrative Claim is filed.

Holders of Administrative Claims (including, without limitation, professionals) requesting compensation or reimbursement of expenses that do not file such requests by the Administrative Claims Bar Date shall be forever barred from asserting such claims against the Debtor, the Debtor's estate, the Liquidating Debtor or property of the Estate, Debtor or Liquidating Debtor or Assets or proceeds held by the Liquidating Debtor.

26. Any party wishing to assert a Non-Ordinary Course Administrative Claim against the Estate (except Professional Fee Claims) must, on or before 90 days after the Effective Date, both file with the Court a final fee application or a motion requesting Allowance of the fees or claims and serve the application or motion on the Liquidating Debtor and the UST.

27. Any and all objections to the Plan or confirmation of the Plan are waived and/or overruled.

28. In accordance with Bankruptcy Code § 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, including the recording of any mortgage or liens or amendments thereto, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment. This Confirmation Order directs all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instrument or other documents without payment of such tax or other governmental assessment.

29. Freedland may file and serve the Effective Date Notice fixing the Effective Date consistent with the Plan, on a date set by the Debtor, which date is within sixty (60) days after this Confirmation Order becomes a Final Order (as defined in the Plan), or such later date which is approved by the Court.

30. In accordance with LBR 3020-1(b), on or before ***October 7, 2016*** (a date within 120 days of the entry of this Confirmation Order), Freedland shall file a status report explaining what progress has been made toward consummation of the confirmed Plan. Freedland shall

serve such report on the UST, the 20 largest unsecured creditors, and those parties who have requested special notice.

# # #

Date: June 27, 2016

Barry Russell
United States Bankruptcy Judge