ERVIN COHEN & JESSUP LLP

1  BYRON Z. MOLDO (SBN 109652)
   bmoldo@ecjlaw.com
2  KENNETH MILLER (SBN 126083)
   kmiller@ecjlaw.com
3  HOWARD I. CAMHI (SBN 149194)
   hcamhi@ecjlaw.com
4  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
5  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
6  Facsimile  (310) 859-2325

7  Attorneys for Secured Creditor
   W LINC BP, LLC, A
8  California limited liability company

9

10            **UNITED STATES BANKRUPTCY COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12                **LOS ANGELES DIVISION**

13  In re                              | Case No. 2:15-bk-26483-BR

14  315 ARDEN, LLC.,                   | Chapter 11

15        Debtor and Debtor in Possession. | **NOTICE OF MOTION AND MOTION TO
                                            CONVERT CHAPTER 11 CASE TO A**
16                                          **CASE UNDER CHAPTER 7;
                                            MEMORANDUM OF POINTS AND**
17                                          **AUTHORITIES IN SUPPORT THEREOF;
                                            [SUPPORTING DECLARATION OF**
18                                          **KENNETH MILLER FILED
                                            CONCURRENTLY HEREWITH]**
19
                                            Date:    May 16, 2017
20                                          Time:    2:00 p.m.
                                            Crtrm:   Courtroom 1668
21                                                   Edward R. Roybal Courthouse
                                                     255 E. Temple Street
22                                                   Los Angeles, CA  90012

23

24  **TO THE HONORABLE BARRY RUSSELL AND TO ALL PARTIES AND/OR THEIR**

25  **RESPECTIVE ATTORNEYS OF RECORD:**

26        Please take notice that on May 16, 2017, at 2:00 p.m. or as soon thereafter as this matter

27  may be heard, before the Honorable Barry Russell, United Stated Bankruptcy Judge, in Courtroom

28

1  "1668" of the above-entitled Court located at 255 East Temple Street, Los Angeles, California

2  90012, secured creditor W Linc BP, LLC ("W Linc") will move the above Court to convert this

3  case to Chapter 7.

4         The conversion of this Chapter 11 case to Chapter 7 is necessary because of Debtor 315

5  Arden, LLC's ("Debtor") dishonesty and failure to satisfy its fiduciary responsibilities owed to

6  this Court and the creditors.  Both Debtor's principal and its counsel have confirmed the Debtor

7  has committed a fraud on this Court by mispresenting the identity of its majority member

8  throughout its entire bankruptcy case in connection with prior financing and confirmation of its

9  plan of reorganization.  Instead, apparently believing it will now enhance its chances of prevailing

10  in litigation, Debtor has only recently chosen to change the stated identity of its majority member

11  more than two months following the discovery cut-off date.  Although both this Court and

12  creditors are currently unable to determine on which occasion Debtor was lying, one thing remains

13  patently clear: Debtor has lied to this court under penalty of perjury about the identity of its

14  members, post-petition financing and material portions of its plan of reorganization.

15

16

17         In addition, Tzepah Freedland has testified she is the holder of the minority membership

18  interest in the Debtor and its manager.  It has become apparent through written discovery and

19  deposition testimony that Ms. Freedland has neither the time nor ability to manage the real

20  property that is the Debtor's primary asset.  Ms. Freedland has failed to sell the property or lease

21  any space at the property since the Debtor filed for bankruptcy relief.  At present, the property is

22  not only completely vacant but is an eyesore littered with weeds and trash.  Notably, Debtor's plan

23  identified as its only sources of income proceeds from the sale or leasing of the property and

24  financing from the Debtor's majority member (whoever that may be).  Ms. Freedland's inability to

25  sell or lease the property coupled with Debtor's lies about its members confirm Debtor is unable to

26  fulfill its obligations to creditors and this Court.  Accordingly, the conversion of this case to

27

28

ERVIN COHEN & JESSUP LLP

1    Chapter 7 is critical to enable an independent, unbiased Chapter 7 trustee to be appointed to

2    correctly identify the majority member of the Debtor and determine what course of action is in the

3    best interests of creditors.

4        Pursuant to Local Bankruptcy Rule 9013-1(f), each interested party opposing or

5    responding to the Motion must file and serve its opposition or response on counsel for W Linc, at

6    the address indicated on the upper left hand corner of the first page of this Notice of Motion and

7    Motion, and on all other parties required under the Local Bankruptcy Rules and under applicable

8    law, not later than fourteen (14) days before the date designated for the hearing on the Motion.

9    The opposition or response must be a complete written statement of all reasons in opposition or

10   response to the Motion, and include declarations and copies of all evidence on which the opposing

11   or responding party intends to rely, and any other responding memorandum of points and

12   authorities.  Failure to file and serve timely opposition or response to the Motion may be deemed

13   by the Court to constitute the consent to the granting of the relief requested in the Motion.

14       This Motion is based upon this Notice of Motion and Motion, the attached Memorandum

15   of Points and Authorities in support thereof, the Declaration of Kenneth Miller ("Miller Decl.")

16   served concurrently herewith, all pleadings and papers on file in this action and any oral or

17   documentary evidence as may be presented during or before the time of the hearing on this

18   Motion, along with any other evidence or argument as this Court may deem appropriate.

19   DATED:  April 14, 2017                     ERVIN COHEN & JESSUP LLP
20                                              Kenneth Miller
21
22
23                                      By:    _____
24                                             Kenneth Miller
25                                             Attorneys for Secured Creditor
                                               W Linc BP, LLC
26

27

28

ERVIN COHEN & JESSUP LLP

13332.23:2942651.3

3

1

## TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION.................................................................................................. 4

4          A.    Factual Background................................................................................... 4

5                1.    The Debtor Represented In Its Bankruptcy Schedules That The
                       Family Trust Is The Majority Interest Equity Holder In The Debtor............ 5
6

7                2.    The Debtor Represented In Its Debtor In Possession Financing
                       Motion That The Family Trust Is The Majority Equity Interest
8                      Holder In The Debtor. ....................................................................... 6

9                3.    The Debtor Represented In Its Disclosure Statement And Plan That
                       The Family Trust Is The Majority Equity Interest Holder In The
10                     Debtor................................................................................................. 7

11               4.    Plaintiff's Adversary Action And Its Recent Representation That
                       The 2014 Trust And Not The Family Trust Is The Majority Equity
12                     Holder In The Debtor. ......................................................................... 9

13   II.   CAUSE EXISTS TO CONVERT THIS CASE TO CHAPTER 7 ..................... 11

14         A.    The Debtor's Dishonesty During This Case Constitutes An Abuse Of The
                 Bankruptcy Reorganization Process Requiring Conversion To Chapter 7 ........... 11

15         B.    Cause Exists For The Conversion Of This Case To A Case Under Chapter 7
                 Due To The Uncertainty Surrounding The Existence Of Funds Necessary
16               To Finance The Debtor's Plan ................................................................. 16

17   III.  CONCLUSION .............................................................................................. 18

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

### CASES

*Credit Managers Ass'n of Southern California v. Federal Co.*,
  629 F Supp 175 (U.S.D.C. C.D. Cal 1985) ........................................................................ 14

*In re Bibo, Inc.*,
  76 F 3d 256 (Ninth Cir. 1996) ........................................................................................... 15

*In re Charfoos*,
  979 F.2d 390 (6th Cir. 1992) ............................................................................................. 15

*In re Greenfield Drive Storage Park*,
  207 B.R. 913 9th Cir. BAP 1997) ...................................................................................... 16

*In re Hampton Hotel Investors, L.P., supra*,
  270 B.R. at 358, citing *In re HBA East, Inc.,* 87 B.R. 248, 258
  (Bankr.E.D.N.Y.1988) ...................................................................................................... 11

*In re Roussos*,
  541 B.R. 721 (Bankr. C. D. California 2015) ............................................................... 11, 12

*Kupetz v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*,
  77 B.R. 754 (U.S.D.C. C.D. Cal. 1987) ............................................................................ 14

*Kupetz v. Wolf*,
  845 F 2d 842 (9th Cir. 1988) ............................................................................................. 14

*Matter of E. Kovacs and Co., Inc.*,
  16 B.R. 203 (Bankr. Conn. 1981) ...................................................................................... 15

### STATUTES

Bankruptcy Code § 101(32) ................................................................................................ 13

Bankruptcy Code § 1144 ..................................................................................................... 13

Bankruptcy Code § 364 (B) .................................................................................................. 6

Bankruptcy Code § 548(a)(1)(B) ........................................................................................ 13

Bankruptcy Code § 548(a)(1)(B)(ii)(II) .............................................................................. 14

### RULES

Rule 9024 of the Federal Rules of Bankruptcy Procedure .................................................. 13

13332.23:2942651.3                                    ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

In its original bankruptcy schedules, in various motions filed during the pendency of the case and in its Disclosure Statement and Plan, Debtor testified under penalty of perjury that the Daniel & Judith Arnall Family Trust (the "Family Trust") was its majority equity holder and both its pre- and post-petition lender. Approximately eighteen months after the filing of this case and nine months after plan confirmation, Debtor and its counsel have confirmed that these representations are, and were at the time they were made, underline false. Contrary to the sworn testimony of Debtor's principal, Debtor's counsel now takes the position that the holder of the eighty percent membership interest in the Debtor is and was Daniel Arnall 2014 Trust (the "2014 Trust") and not Family Trust. Due to the inconsistent representations made by the Debtor, neither this Court nor the creditors can be certain at this time who is the majority member of the Debtor. Given its timing, it would seem that the Debtor's latest representation that the 2014 Trust, and not the Family Trust, is Debtor's majority member is a litigation tactic attempting to enhance Debtor's litigation posture in its adversary action against W Linc. It is certain, however, that this case should be converted to Chapter 7 in order to enable this Court to finally understand not only who are the members of the Debtor but also the full nature and extent of the bankruptcy fraud committed by the Debtor.

**A.     Factual Background**

On October 27, 2015, the Debtor filed a voluntary Chapter 11 petition. The primary asset of the Debtor's bankruptcy case is commercial real property located at 7101 W. Lincoln Avenue, in Buena Park, California (the "Property"), which it purchased from W Linc BP, LLC ("W Linc") on February 24, 2015 for the approximate sum of $6,500,000.00 as part of a Section 1031 exchange following the sale of the real property located at 315 Arden, in Glendale, California (the

ERVIN COHEN & JESSUP LLP

"Glendale Property"). The Debtor financed a portion of the purchase price by obtaining from W

Linc a loan (the "Loan") evidenced promissory note (the "Note") in the original principal amount

of $1,507,000 secured a deed of trust encumbering the Property. Due to the inexperience of the

Debtor's principal concerning commercial real property matters, Debtor defaulted after the Loan

matured prepetition, and W Linc proceeded with foreclosure of the Deed of Trust. W Linc is a

creditor of the Debtor holding a disputed secured claim in the amount of $1,606,522.09, plus

accrued interest and fees and costs, including attorneys' fees and costs. (See Proof of Claim

Register, Claim 5).

On August 21, 2015, the Debtor filed a complaint in the Orange County Superior Court

(the "State Court Action") against W Linc and various individuals involved in the Debtor's

purchase of the Property, alleging fraud and negligent misrepresentation, among other causes of

action. The State Court Action is still pending.

1.    **The Debtor Represented In Its Bankruptcy Schedules That The Family Trust Is The Majority Interest Equity Holder In The Debtor.**

On November 10, 2015, Debtor filed with this Court its Action By Written Consent of the

Manager and Voting Membership Interests ("Written Consent") dated October 26, 2015. The

Debtor represented in the Written Consent that Tzepah Freedland in her personal capacity is the

managing member of the Debtor and she, together with the Daniel & Judith Arnall Family Trust

(the "Family Trust") in which Freedland was the trustee, were the sole unanimous voting members

of the Debtor. (See Dkt. No. 12). There is no mention of Daniel Arnall 2014 Trust (the "2014

Trust") in the Written Consent. (Miller Decl., ¶2).

The Debtor also filed its List of Equity Security Holders on November 10, 2015. In its List

of Equity Security Holders, Freedland, on behalf of the Debtor, testified under penalty of perjury

that the Debtor consisted of two members – Freedland, who held a twenty percent membership

ERVIN COHEN & JESSUP LLP

1   interest in the Debtor and the Family Trust, which held an eighty percent membership in the

2   Debtor. (See Dkt. No. 12).  The Family Trust is also listed in Schedule F as holding an unsecured

3   claim in the amount of $137,260.00 for a "Loan" as well as a second unsecured claim in the

4   amount of $2,500.00 for a different "Loan."  There is no mention of the 2014 Trust in the List of

5   Equity Security Holders or in any of the Debtor's bankruptcy schedules.  (Miller Decl., ¶3).

6

7         2.      **The Debtor Represented In Its Debtor In Possession Financing Motion That**

8                 **The Family Trust Is The Majority Equity Interest Holder In The Debtor.**

9         The Debtor also fails to mention the 2014 Trust in any motion filed in this bankruptcy case

10  or in its Disclosure Statement or Chapter 11 plan of reorganization.  Instead, in all of its motions

11  filed in this case as well as in its Disclosure Statement and Chapter 11 plan, the Debtor

12  consistently under penalty of perjury identified the Family Trust, and not the 2014 Trust, as its

13  majority member.  For example, the Debtor identified the Family Trust, not the 2014 Trust, as the

14  majority equity holder and lender in its motion for post-petition financing, specifically named,

15  "Motion Of Debtor And Debtor In Possession For Order Authorizing Final Post-Petition

16  Financing By *Debtor's Majority Equity Holder* Pursuant To Bankruptcy Code §364(B), On An

17  Unsecured Basis, Allowable Under Bankruptcy Code §503(B)(1) As An Administrative Expense

18  (emphasis added) [Dkt 14] (hereinafter the "Financing Motion").  (Miller Decl., ¶4)

19

20        In fact, on page 11 of the Financing Motion, the Debtor argues the fact that the proposed

21  financing was more favorable than the Debtor could otherwise obtain due to the fact that the

22  Debtor's insider, its Debtor's majority equity holder, is the source of the financing.  Further in

23  Paragraph 4 of her declaration accompanying the Financing Motion, Freedland testifies under

24  penalty of perjury that the Family Trust is the 80% equity interest holder in the Debtor and as

25  trustee of the Family Trust, Freedland was authorized to enter into the proposed financing.  Just as

26  with the Debtor's schedules, there is no mention of the 2014 Trust in the Financing Motion.

27

28

13332.23:2942651.3

6

**NOTICE OF MOTION AND MOTION TO CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7**

ERVIN COHEN & JESSUP LLP

1 (Miller Decl., ¶5).

2     3. **The Debtor Represented In Its Disclosure Statement And Plan That The**

3        **Family Trust Is The Majority Equity Interest Holder In The Debtor.**

4        The Debtor also identified the Family Trust (as opposed to the 2014 Trust) as its

5 majority equity holder in both its disclosure statement and reorganization plan [See Dkt Nos. 91

6 and 92]. This distinction is particularly important as the financial strength of the Debtor's

7 majority equity holder is essential to the successful reorganization of the Debtor.  In is Disclosure

8 Statement, the Debtor identifies the following five sources of income for the success of its plan:

9

10     • The New Value Contribution which was defined in the disclosure statement as a

11       financial contribution by the Family Trust, the holder of the majority equity

12       interest in the Debtor;

13     • Exit financing from the Family Trust, the holder of the majority equity interest in

14       the Debtor;

15

16     • Payment, if necessary, by or an unsecured loan to Family Trust, the holder of the

17       majority equity interest in the Debtor, after the Effective Date, so that the loan to

18       value ratio for the Property to be determined within 24 months after the Effective

19       Date is seventy five percent (75%) or less;

20     • Rental income from the Property; and

21

22     • Any refinance, pay-off or sale of the Property.  (See Pages 75-76 of the Disclosure

23       Statement, Dkt No. 41) (See Miller Decl., ¶¶6-8).

24     Thus, three of the five income sources for the Debtor's reorganization plan relate to

25 contributions from the majority equity holder of the Debtor which is identified as the Family

26 Trust.  Due to the Debtor's recent inconsistent position, it is unclear who is or was the majority

27 equity holder of the Debtor.  This Court entered orders approving the Debtor's disclosure

28

ERVIN COHEN & JESSUP LLP

1   statement on April 8, 2016 (Dkt No. 98) and confirming the Debtor's plan of reorganization on

2   June 27, 2016 (Dkt 128).  Neither the orders approving the disclosure statement and confirming

3   the plan of reorganization nor any subsequent pleading filed in the main bankruptcy case

4   recognize that the Debtor's majority equity holder may actually have been the 2014 Trust, not the

5   Family Trust (Miller Decl., ¶9).

6

7       Freedland's lack of experience and inability to operate the Debtor's property has become

8   abundantly clear through discovery in the Adversary Action.  Due to Freedland's lack of

9   experience and inability to operate the Property, Debtor has neither sold nor leased any portion of

10  the Property.  In fact, Debtor refused to accept rent under the sole lease agreement concerning the

11  Property and chose to terminate both the lease agreement and guaranty of the lease agreement

12  without receiving any rent from the tenants.  Specifically, and as set forth in the Disclosure

13  Statement, the existing tenants at the time that Plaintiff purchased the Property were Luviland

14  LLC and Luviland Corp.  According to the Disclosure Statement, Bill Ha was the President of

15  Luviland Corp (Miller Decl., ¶13).

16

17      Mr. Ha has testified at deposition that at a meeting with Freedland and Debtor's state court

18  counsel in May 2015, Mr. Ha tendered $30,000.00 to pay back rent.  Mr. Ha further testified that

19  Freedland refused to accept this payment and offered to terminate the lease agreement and the

20  guaranty agreement if the tenant vacated the Property, in order that the Debtor could complete a

21  sale of the Property (presumably reflecting Debtor's intention as to how to perform under its

22  Plan).  (Miller Decl., ¶5). The Tenant vacated the Property without paying any rent and, to date,

23  the Debtor failed to close any sale of the Property or procure any replacement tenants.  (See Miller

24  Decl., ¶¶ 24, 28).  According to the specific provisions of its Disclosure Statement, then, Debtor

25  must look to its majority equity holder to consummate its Plan.  Of course, neither this Court nor

26  the creditors know who is the majority equity holder and an independent party must be appointed

27

28

ERVIN COHEN & JESSUP LLP

1    to resolve this conflict and ensure maximum return to creditors of this estate.

2    4.    **Plaintiff's Adversary Action And Its Recent Representation That The 2014**

3    **Trust And Not The Family Trust Is The Majority Equity Holder In The**

4    **Debtor.**

5    On February 19, 2016 Debtor filed its adversary action (the "Adversary Action") against

6    W Linc and Defendants Red Mountain Group, Inc. ("Defendant RMG") and Red Mountain Retail

7    Group, Inc. ("Defendant RMRG" and together with Defendant RMG and W Linc, the

8    "Defendants") for constructive fraudulent conveyance.  The following discovery propounded in

9    the Adversary Action by Defendants remains outstanding:

10

11    • Defendants' Subpoena to Testify At A Deposition in a Bankruptcy Case (Or

12    Adversary Proceeding) ("Subpoena") issued on October 31, 2016 and served on

13    Freedland in her capacity as trustee of the Family Trust, scheduling her deposition

14    for December 7, 2016 and requiring production of the documents set forth in the

15    Subpoena;

16

17    • Defendant RMG's first set of requests for production of documents ("RMG

18    Request For Production") served on Plaintiff on October 31, 2016;

19    • Defendant RMG's first set of interrogatories served on Plaintiff on October 5,

20    2016; and

21    • Defendant RMRG's first set of interrogatories served on Plaintiff on October 31,

22    2016.  (See Miller Decl. ¶20).

23

24    On December 9, 2016, Plaintiff filed its Motion For Continuance of Pre-Trial Conference,

25    Discovery Cut-Off Date and Pending Discovery Deadlines (Adv. Dkt No. 103) (the "Continuance

26    Motion") seeking to extend the deadlines for Plaintiff to respond to the outstanding discovery due

27    to Freedland's pregnancy and a car accident occurring shortly before Thanksgiving.  (Miller Decl.

28

13332.23:2942651.3

9

ERVIN COHEN & JESSUP LLP

¶21).  This Court granted the Continuance Motion in part, and ordered that Plaintiff provide

Defendants with responses to the outstanding discovery and the RMG Request For Production,

and that the Family Trust produce all documents responsive to the Subpoena by January 20, 2017.

(Miller Decl. ¶21).

This Court set January 10, 2017 as the discovery cut-off date in the adversary action.

Notwithstanding this Court's order granting the Continuance Motion, to date, Plaintiff has not

provided responses to the two sets of outstanding interrogatories that Defendants propounded and

the Family Trust has refused to produce any documents requested in the Subpoena, although it

provided written objections to the document requests.  Plaintiff has also refused to produce

documents requested in numerous documents requests found in the RMG Request For Production.

(Miller Decl. ¶24).

On or about March 24, 2017 counsel participated in a "meet and confer" prior to the April

4, 2017 status conference regarding Debtor's failure to fully and adequately respond to discovery.

During that "meet and confer", approximately one and one-half years after the filing of its

bankruptcy schedules, Plaintiff's counsel, for the first time, asserted that the holder of the majority

equity interest holder of the Debtor is not the Family Trust, but is the 2014 Trust.  (Miller Decl.

¶23). Plaintiff's counsel repeated this position in the Stipulation of Plaintiff and Defendants

Regarding Outstanding Discovery Pursuant to Local Bankruptcy Rule 7026-1 (Adv. Dkt  139) and

at the April 4, 2017 status conference, despite the fact that at her deposition, Freedland has

consistently testified under penalty of perjury in this case that she and the Family Trust, not the

2014 Trust, are the members of the Debtor.  (Miller Decl. ¶10).  At the April 4, 2017 status

conference, this Court granted another extension to Debtor to respond to the outstanding

discovery, based in part, on the representation of Debtor's counsel that Freedland's newborn child

was very ill and additional time was required.  (Miller Decl. ¶27).

ERVIN COHEN & JESSUP LLP

II.

## CAUSE EXISTS TO CONVERT THIS CASE TO CHAPTER 7

A.    **The Debtor's Dishonesty During This Case Constitutes An Abuse Of The Bankruptcy Reorganization Process Requiring Conversion To Chapter 7.**

Bankruptcy Code Section 1112(b) requires that this Court convert this case to Chapter 7 and provides in relevant part as follows:

> "[T]he court may convert a case under this chapter to a case under chapter 7 ... or may dismiss a case ..., whichever is in the best interests of creditors and the estate, for cause...."

Although Bankruptcy Code Section 1112(b)(4) enumerates several examples of "cause" sufficient to warrant the conversion of a bankruptcy case, it is well settled that a bankruptcy court is not limited by these enumerated factors and may consider other factors to use its equitable powers and reach an appropriate result in individual cases.  As noted by the Bankruptcy Court in the case of *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346 (Bankr. S.D. 2001):

> "[t]he precise perimeters of 'cause' are intentionally omitted from the statute so as to afford maximum flexibility and, among other things, to enable a bankruptcy court to dismiss a Chapter 11 case for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process." *In re Hampton Hotel Investors, L.P., supra*, 270 B.R. at 358, citing *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr.E.D.N.Y.1988).

Debtor's persistent lies under penalty of perjury throughout this case must constitute fraud upon creditors and this Court and require conversion of this case.  Fraud upon the Court has been defined as perjury or non-disclosure so fundamental that it harms the integrity of the judicial process.  See *In re Roussos*, 541 B.R. 721, 729 (Bankr. C. D. California 2015).  As noted by the *Roussos* Court:

> '[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the

ERVIN COHEN & JESSUP LLP

1   institutions set up to protect and safeguard the public,
2   institutions in which fraud cannot complacently be
    tolerated consistently with the good order of society. Surely
3   it cannot be that preservation of the integrity of the judicial
    process must always wait upon the diligence of litigants.
4   The public welfare demands that the agencies of public
    justice be not so impotent that they must always be mute
5   and helpless victims of deception and fraud. *Id.* citing
    *Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.),* 926
6   F.2d 912, 916 -917 (9th Cir. 1991).

7   The *Roussos* case involved the application of Rule 60 of the Federal Rules of Civil

8   Procedure to set aside an order entered twenty one years prior approving the sale of real property,

9   based on a fraud on the court.  W Linc is seeking to have this Chapter 11 case converted to Chapter

10  7 due to the Debtor's fraud that prevents this Court from performing "in the usual manner its

11  impartial task of adjudging cases that are presented for adjudication." See *In re Roussos*, *supra*,

12  541 B.R. 725.  Throughout its entire bankruptcy case, the Debtor has consistently represented to

13  this Court that the Family Trust was the majority member of Debtor and that the Family Trust, as

14  the majority equity holder, provided to the Debtor both its pre-petition and post-petition financing.

15  After allowing its subterfuge to run its course, Debtor now, nine months after the confirmation of

16  its plan, has changed its tune and asserts that the 2014 Trust and not the Family Trust, is the

17  majority member of the Debtor.  Even if this Court and creditors accept this change, it gives rise to

18  many questions throwing the entirety of the Debtor's bankruptcy case into question, including but

19  not limited to the following:

20

21

22  • Did the Debtor actually know the identity of its two members prior to

23      confirmation of its Chapter 11 plan and, if not, why not?

24

25  • Why did the Debtor affirmatively misrepresent the identity of its majority

26      equity holder throughout its entire bankruptcy case beginning with its

27      bankruptcy schedules and Financing Motion and continuing its

28      misrepresentations in its disclosure statement and plan?

ERVIN COHEN & JESSUP LLP

13332.23:2942651.3

12

- What entity actually provided the pre and post-petition financing to the Debtor? If, in fact, the 2014 Trust is the majority equity holder in the Debtor and provided the financing, what is the 2014 Trust's financial ability to provide such financing and why was there not full disclosure to the Court? If instead the Family Trust provided the financing and is not a member of the Debtor, why did it do so, what was the consideration for it doing so and what arrangements were made between the Family Trust and the Debtor?

It cannot be ignored that the timing of Debtor's recent change regarding the identity of its majority equity holder/lender is quite convenient for the Debtor to now assert in the Adversary Action. Since its reorganization plan was confirmed more than 180 days before Debtor's first (mis?)representation that the 2014 Trust, and not the Family Trust, is the majority member of the Debtor, a motion to revoke the confirmation order would be untimely. See Bankruptcy Code §1144 and Rule 9024 of the Federal Rules of Bankruptcy Procedure.

The Debtor's recent claim that the 2014 Trust, and not the Family Trust, is its majority member is also now being raised in attempts to gain an unfair advantage in the Adversary Action. Specifically, Bankruptcy Code Section 548(a)(1)(B) requires the Debtor to demonstrate, in addition to establishing it did not receive reasonably equivalent value in exchange for the subject transfer, that it was also insolvent or rendered insolvent as a result of the transfer. Debtor cannot establish that it was insolvent or rendered insolvent as a result of its purchase of the Property because the definition of the term "insolvent" found in Bankruptcy Code §101(32) requires that the amount of the Debtor's debts exceeded the value of its assets at the time it purchased the Property. Consequently, Debtor was not insolvent in light of its equity interest in the Property at the time of purchase, even assuming the Court uses the Debtor's valuation of the Property.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  Because the Debtor was not insolvent at the time of the transfer of the Property, it is

2  anticipated that the Debtor will attempt to base its fraudulent conveyance claim on a contention

3  that its remaining capital was unreasonably small following its purchase of the Property, pursuant

4  to Bankruptcy Code §548(a)(1)(B)(ii)(II).  The Debtor's representation that the 2014 Trust, and not

5  the Family Trust, is the majority member of the Debtor, made in the Adversary Action more than

6  60 days following the discovery cut-off date, is a transparent ploy by the Debtor to enhance its

7

8  ability to assert its remaining capital following purchase of the Property was unreasonably small.

9  It is well settled that courts have defined the term "capital" as found in Bankruptcy Code

10  Section 548(a)(1)(B)(ii)(II) very broadly to include all cash resources available to the debtor at the

11  relevant time.  See, for example, *Kupetz v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*,

12  77 B.R. 754, 762 (U.S.D.C. C.D. Cal. 1987) wherein the District Court found that the plaintiff

13

14  failed to satisfy its burden of proof on a constructive fraudulent conveyance claim based, in part,

15  on the failure of Plaintiff's expert witness to consider the Debtor's ability to refinance or obtain

16  new loans in determining whether the Debtor had unreasonably small capital, aff'd sub nom.

17  *Kupetz v. Wolf*, 845 F 2d 842 (9th Cir. 1988).  See also *Credit Managers Ass'n of Southern*

18  *California v. Federal Co.*, 629 F Supp 175 (U.S.D.C. C.D. Cal 1985).  In this case, the Debtor's

19

20  operating agreement provides that upon the consent of the members of the Debtor, the majority

21  equity interest holder is obligated to make loans to the Debtor "if and to the extent that [the

22  Debtor] does not have funds to pay any of the costs, expenses or obligations of [the Debtor]."  (See

23  Miller Decl., ¶29).

24  According to the Declaration of Tzepah Freedland In Support Of Motion And

25  Memorandum Filed In Support Of Confirmation Of Plan Of Reorganization Proposed By Debtor,

26  315 Arden, LLC (Dkt 113), as of May 11, 2016, the Family Trust had approximately $18 million

27  available to fund the Debtor's reorganization plan.  Consequently, it is impossible for this Court to

28

1    find that at the time of its purchase of the Property, Debtor had an unreasonably small amount of

2    capital, provided that the Family Trust was the Debtor's majority member.  One could assume the

3    amount of capital from the Debtor's majority equity holder would be much less if its majority

4    equity holder was the 2014 Trust, and not the Family Trust.  Therefore, it would come as no

5    surprise that the Debtor changed the identity of its majority equity holder to the 2014 Trust

6    because to do so likely benefits the Debtor's position in its constructive fraudulent conveyance

7    claim in the Adversary Action.  The Debtor's litigation tactic, however, constitutes fraud upon this

8    Court and its creditors.

9    

10        Cause exists to convert this case to Chapter 7 to prevent the Debtor from abusing the

11    bankruptcy process by misrepresenting for its own personal gain either that the Family Trust was

12    the majority member of the Debtor throughout the Debtor's main bankruptcy case or by

13    misrepresenting now that the 2014 Trust is the majority member.  See, for example, *Matter of E.*

14    *Kovacs and Co., Inc.*, 16 B.R. 203 (Bankr. Conn. 1981) wherein the Bankruptcy Court converted

15    the Chapter 11 bankruptcy case to a case under Chapter 7 where the chapter 11 debtor was

16    determined to be "oblivious to its fiduciary duties" owed to its creditors and the court questioned

17    the motivation of the Chapter 11 debtor to place the interests of its creditors above its own

18    interests.  See also *In re Charfoos*, 979 F.2d 390 (6th Cir. 1992) wherein the Sixth Circuit Court of

19    Appeals dismissed the debtor's Chapter 11 case based in large part on the debtor's

20    misrepresentations and omissions in its bankruptcy schedules.  Conversion of this case to Chapter

21    7 and the appointment of a Chapter 7 trustee represent the only way for this Court to determine the

22    identity of members of the Debtor and the true facts surrounding any debtor in possession or post-

23    confirmation financing.[1]

24

25

26    _____

27    [1] Appointment of a Chapter 11 trustee under Bankruptcy Code Section 1104 is not a remedy available to W Linc by way of this Motion due to the confirmation of the Debtor's reorganization plan, although this Court is authorized to appoint a Chapter 11 trustee sua sponte.  *In re Bibo, Inc.*, 76 F 3d 256 (Ninth Cir. 1996).

28

ERVIN COHEN & JESSUP LLP

**B.**     **Cause Exists For The Conversion Of This Case To A Case Under Chapter 7 Due To The Uncertainty Surrounding The Existence Of Funds Necessary To Finance The Debtor's Plan**

Conversion of a Chapter 11 case to Chapter 7 is also appropriate following the confirmation of a Chapter 11 debtor's plan where the continued existence of the revenue generating activity of the debtor comes into question. *In re Greenfield Drive Storage Park*, 207 B.R. 913 9th Cir. BAP 1997). As discussed above, the only income available to finance the Debtor's plan comes from financing from the Debtor's majority equity holder and from the lease, refinancing or sale of the Property. Based on the Debtor's inconsistent positions concerning its ownership, the identity of the Debtor's majority equity holder is at best unclear and cannot be found as a basis upon which to fund further revenue. Further, because the Debtor has not generated any revenue from the leasing sale or refinance of the Property for the entire period that it has been in bankruptcy (Miller Decl., ¶24), the Debtor is without any reliable or specific ability to operate the Property and the case should be converted.

It is also unlikely that, absent conversion of this case, the Debtor will be able to sell or lease the Property at any time in the near future. At her deposition, Freedland, the managing member of the Debtor, testified that she has no experience in buying commercial properties prior to the purchase of the Property in February 2015 and although she worked for the Debtor when it sold the Glendale Property, her only involvement in this sale was performing administrative duties for the previous managing member of the Debtor. (Miller Decl., ¶11). She also admitted at deposition that besides putting up "For Lease" signs for the previous managing member of the Debtor, she has no experience locating tenants for commercial real property. (Miller Decl., ¶12).

This Court may find hope in the fact that Debtor retained CBRE, Inc. ("CBRE") to assist it lease the Property (See Dkt. No. 116). Unfortunately, such hope is not warranted. Maurice Nieman ("Nieman"), a CBRE broker also testified at deposition that Freedland had no experience

ERVIN COHEN & JESSUP LLP

whatsoever in the real estate industry.  (Miller Decl., ¶19).  He also testified that although the application to retain CBRE was granted on May 18, 2016, CBRE terminated its relationship with the Debtor on May 24, 2017 because Freedland was "out of control" based on the following:

- Not only did Freedland not know the customary procedures for obtaining tenants, she demand that CBRE do the opposite.  In particular, although the normal procedure was that the landlord would make the initial offer to a prospective tenant, Freedland demand that the tenant make the initial offer;

- Freedland, though her attorneys put a competing listing with the multiple listing service Loop Net for the same Property,  circumventing the listing of Debtor's own broke;

- Freedland was erratic in marketing the Property and changed her mind about the marketing materials by approving and later disapproving the same  materials and placing the Property on the multiple listing service and later taking the Property off the multiple listing service; and

- Freedland dealt with Nieman in a very unprofessional manner making personal attacks on CBRE, wrongfully accusing Nieman of not doing his job despite the fact that Nieman had worked as a real estate broker for the previous ten years. (See Miller Decl., ¶18).

Making things worse, Debtor has confirmed Freedland needs more time to respond to discovery propounded five (5) months ago due to issues concerning her health and the health of her children.  Understandably, then, Freedland's personal situation prevents her from devoting the time and effort required to operate the Debtor and to lease or sell the Property.  This lack attention to the Property has resulted in the fact that the Property is currently littered by trash and weeds making it highly unattractive to a prospective tenant or buyer.  (Miller Decl., ¶28).

**NOTICE OF MOTION AND MOTION TO CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7**

1    W Linc, however, has attempted but to date has been unable to verify whether this

2    inattention to the Property has resulted in the failure of the Debtor to generate sufficient revenue to

3    pay its creditors under its reorganization plan.  The Debtor has refused to provide W Linc with

4    written confirmation that the payments required under the plan regarding the W Linc Loan and to

5    the creditors have been paid, and if so, in what amount, despite repeated requests from W Linc's

6    counsel. (Miller Decl., ¶29).   Debtor's failures in this regard, in and of themselves, constitute

7    cause to convert this case to Chapter 7 to ensure that the Debtor is fulfilling its obligations under

8    its plan.

9

10                                                  **III.**

11                                            **CONCLUSION**

12    Bankruptcy law provides a wide array of benefits for a Chapter 11 debtor, not least of which is

13    the ability of the debtor to operate its business while enjoying the protections of the automatic stay

14    thereby shielding the bankruptcy debtor from the lawful claims of its creditors.  In exchange for

15    these benefits, the bankruptcy process requires the honesty and integrity of the bankruptcy debtor.

16    In this case, the Debtor has taken full advantage of the bankruptcy system, while, by its own

17    admission, lying to the Court on multiple occasions about the identity of its majority member.  The

18    significance of these misrepresentations should not be trivialized.  Based on the representations of

19    the Debtor concerning the identity of its majority member, this Court permitted the Debtor to

20    obtain post-petition financing from its majority member necessary for the Debtor's survival.  Now,

21    neither this Court nor the creditors know who provided this financing, what arrangements were

22    made for the financing or what consideration was given for the financing.

23

24

25

26

27

28

**ERVIN COHEN & JESSUP** LLP

1    Based on the representations of the Debtor concerning the identity of its majority member, this

2    Court confirmed the Debtor's reorganization plan.  However, the success of the plan is predicated

3    on the majority member.  In light of the inability of the Debtor's managing member to manage the

4    Property, the financial viability of the Debtor's majority member is critical to the success of the

5

6    plan.  Now, nine months following confirmation, the Debtor has rendered it impossible for this

7    Court and the creditors to know who is responsible for providing this post-petition financing, or its

8    ability and willingness to do so.

9    The appointment of a Chapter 7 trustee is critical for this Court and the creditors to know who

10   is the Debtor's majority member, for what purpose (if any exists) the Debtor made these

11   inconsistent representations about the identity of the majority member to the Court and the

12   creditors and the extent of the harm suffered to date as a result of these inconsistent

13   representations.  Therefore, for all of the foregoing reasons, W Linc respectfully requests that this

14

15   case be converted to a case under Chapter 7.

16   DATED:  April 14, 2017                    ERVIN COHEN & JESSUP LLP
                                               Kenneth Miller

17

18

19                                            By: _____

20                                               Kenneth Miller
                                                 Attorneys for Secured Creditor
21                                               W Linc BP, LLC

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

13332.23:2942651.3

19

NOTICE OF MOTION AND MOTION TO CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9401 Wilshire Blvd. 9th Floor, Beverly Hills, CA 90212.

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND MOTION TO CONVERT
CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF; [SUPPORTING DECLARATION OF KENNETH MILLER FILED CONCURRENTLY HEREWITH]
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 14,
2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Sandford Frey    sfrey@leechtishman.com, fscardino@leechtishman.com
- Daniel J Kessler
  lwell@bkcglaw.com;moberbeck@bkcglaw.com;cvasquez@bkcglaw.com;spettit@bkcglaw.com;litclerk
  1@bkcglaw.com
- Stuart I Koenig    Skoenig@leechtishman.com, fscardino@leechtishman.com
- Ron Maroko    ron.maroko@usdoj.gov
- Tomas A Ortiz    tortiz@garrett-tully.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Michael D Vanlochem    janguiano@vandc.net
- Marta C Wade    mwade@mcwadelaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **April 14, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 14 2017**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

***United States Bankruptcy Judge (by Overnight Mail)***
Hon. Barry Russell
U.S. Bankruptcy Court
255 E. Temple St., Ste. 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 14, 2017 | Kimberly Anthony | /s/Kimberly Anthony |
|---|---|---|
| Date | Printed Name | Signature |

13332.23:2577816.1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**

**2. SERVED BY UNITED STATES MAIL:**

DEBTOR:

315 Arden, LLC
8950 W. Olympic Blvd. #650
Beverly Hills, CA 902113561

20 LARGEST UNSECURED CREDITORS:

Luviland Corporation
319 Collard Way
Placentia, CA 92870

Luviland LLC
9761 Calendula Ave.
Westminster, CA 92683

Orange County Treasurer
Bankruptcy Unit
PO Box 4515
Santa Ana, CA 92702-4515

Plumbquest
5062 Landersheim Blvd. #15
North Hollywood, CA 91601

Rodriguez Hori Choi & Cafferata LLP
777 S. Figueroa St., #2150
Los Angeles, CA 90017

Seth I. Weissman, Esq.
Jeffer Mangels, Butler Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

13332.23:2577816.1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          **F 9013-3.1.PROOF.SERVICE**