B. The Managing Member shall not, without the Consent of the Members undertake any of the following (each, "Major Decision") on behalf of the Company, or on behalf of a Project Entity:

(1) Admit a Person as a Member, or permit any Person to withdraw as a Member, except with the Consent of all Members or as provided in this Agreement;

(2) Receive any fee or payment, or pay any fee or payment, to itself, except as authorized herein;

(3) Employ any Person as an employee of the Company;

(4) Execute or deliver any assignment for the benefit of creditors of the Company;

(5) Borrow from the Company and/or any Project Entity;

(6) Consent to the merger or reorganization of the Company;

(7) Enter into any transactions other than the Investment Transactions and/or acquire any Projects or any interests therein;

(8) Borrow money, issue evidences of indebtedness or grant any mortgages or other encumbrances on or security interests in the assets of the Company, or any Project Entity, including any financing or refinancing of any Project owned by a Project Entity or any portion thereof, or modify, amend, extend, renew, change or prepay in whole or in part any borrowing, financing or refinancing, including, granting any approvals or consents, or make any commitments to borrow funds or give any consideration to obtain a commitment for the loan of funds;

(9) Guaranty the payment of any money, or debt of another Person, or guaranty the performance of any other obligation of another Person;

(10) Sell, convey, exchange, mortgage, subdivide or otherwise transfer or encumber (including the granting of any easement or license) all of or any interest in any Project or any real or personal, tangible or intangible property, other than non material transfers of personal, tangible or intangible property in the ordinary course of business;

(11) Take any action that would violate an affirmative or negative covenant or other provision of any document evidencing or securing any financing, the regulatory agreements or other material agreement binding on the Company and/or any Project Entity or the Projects or materially modify or amend any such agreement;

(12) Take any action that would cause the guarantor or guarantors under any obligation of the Company, and/or any Project Entity to incur any liability thereunder;

(13) Institute legal action or proceedings (including any tax abatement proceeding but excluding evictions of residential tenants) or otherwise bring or prosecute any claim available to the Company and/or any Project Entity, or settle any claim against the Company, and/or any Project Entity or any other matter, in each case outside of the ordinary course of business of the Company and having at issue more than twenty thousand dollars ($20,000) for any single action or proceeding and fifty thousand dollars ($50,000) in the aggregate for all such legal actions and proceedings in any twelve (12) calendar month period; or confess any claim against the Company, and/or any Project Entity; or settle any tax abatement or eminent domain taking.

(14) Dissolve the Company, effect a merger, conversion, consolidation or other reorganization of the Company or modify or amend this Agreement;

(15) File any voluntary petition under Title 11 of the United States Code, the Bankruptcy Act, or seek the protection of any other Federal or State bankruptcy or insolvency law or debtor relief statute, or consent to the institution or continuation of any involuntary bankruptcy proceeding, or fail to contest the any involuntary bankruptcy proceeding within fifteen (15) days of its institution, or the admission in writing of the inability to pay debts generally as they become due; or the making of a general assignment for the benefit of creditors;

(16) Make any other decision or take any other action which by any provision of this Agreement is specifically required to be approved or as to which the Act specifically mandates that the vote or approval of the members is required (and such provision of the Act has not been superseded by this Agreement).

The Managing Member in proposing a Major Decision shall submit such Major Decision in writing for the Non-Managing Member's review and decision. Except as otherwise expressly set forth in this Agreement, the Non-Managing Member shall provide a decision in writing with respect to a Major Decision within five (5) business days' following the receipt of a complete submission with respect to such Major Decision request. In the event of a failure of the Non-Managing Member to respond to any such Major Decision request, the Managing Member shall resubmit the Major Decision request and all supporting documentation to such member. The failure of the Non-Managing Member to provide a decision in writing to the Managing Member within five (5) business days following such member's receipt of such resubmission shall be deemed approval of such Major Decision. If the Managing Member takes any action that is a Major Decision without first obtaining approval (or deemed approval) of the Members, the Non-Managing Member retains all rights and remedies hereunder and, in addition, all amounts spent by the Managing Member in taking such action shall not be

25

costs permitted to be expended hereunder and the Managing Member shall receive no credit or reimbursement for any such amounts spent.

C.  Additional Rights of the Non-Managing Member.

(a)  Additional Rights.  In addition to other rights reserved or granted to the Non-Managing Member, the Non-Managing Member and its agents and representatives shall have the right, at any time and from time to time, upon reasonable notice and during normal business hours to:

(i)  inspect any Project or other assets of the Company, and/or Project Entity in a manner which does not unduly interfere with the operation of thereof;

(ii)  review (i) the books and records required to be maintained under this Agreement, and (ii) any information and reports relating to the management, operations, policies or strategies of any Project or other assets of the Company, and/or any Project Entity;

(iii)  discuss, provide advice and consult with the Managing Member with respect to the business, financial and other operations of the Company, and/or any Project Entity and any other matters materially affecting the business and affairs of the Company, and/or any Project Entity and submit business proposals or suggestions to the Managing Member from time to time and one or more members of the management of Managing Member shall discuss such proposals or suggestions with Non-Managing Member within a reasonable period after such submission. Such proposals and suggestions shall not be binding on the Managing Member unless approved by the Members.

D.  Managing Member Cure Rights for Failure to Obtain Consent. If the Managing Member fails to obtain Consent under Sections 5.2 or 5.5 of this Agreement, the following shall apply:

(i)  The Members acknowledge and agree that such failure shall constitute a non-monetary default within the meaning of Section 11.1 of this Agreement allowing the Managing Member thirty (30) days within which to cure such failure (or such longer period of time as may be permitted pursuant to Section 11.1).

(ii)  Notwithstanding anything to the contrary in this Agreement, including, without limitation, Sections 11.2(a) and 11.3 below, if no material diminution has occurred with respect to the Non-Managing Member's Interests in the Company as a result of such failure to obtain Consent, (1) the Managing Member shall not be subject to removal as the managing member of the Company or, except as expressly set forth herein, any other remedy as a result of such failure to obtain Consent, (2) the sole remedy available to the Non-Managing Member shall be limited to damages, and (3) if

26

such damages are equal to or less than $100,000, the Managing Member may cure her failure by either paying such amount to the Persons suffering such damages or setting off such damages, within ninety (90) days of the date of such failure to obtain Consent hereunder, against amounts otherwise payable to the Managing Member under this Agreement.

5.6     Duties and Obligations of Managing Member.

(A)     The Managing Member shall devote to the affairs of the Company such time as may be necessary for the proper performance of her duties hereunder, but shall not be expected to devote her full time to the performance of such duties.

(B)     To the extent available from commercial insurance underwriters, the Managing Member shall cause the Company to obtain at the Company's expense a liability insurance policy (such as Managing Members' liability insurance, and director and officer-type of errors and omissions insurance, including by participating in "blanket" or other combined insurance programs covering the Company and other entities that are not Affiliates of the Company), which would insure the Managing Member for liabilities they may incur with respect to claims made against her for certain wrongful or allegedly wrongful acts, including certain errors, misstatements, misleading statements, omissions, neglect, or breaches of duty.  Such insurance shall provide the types and amounts of coverage as are customarily obtained for managing members of real estate operating entities with assets of similar size, type and kind to those of the Company and the Project Entities.

(C)     The Managing Member shall cause the Accountants to prepare and shall file on or before the due date (or any extension thereof) any federal, state, or local tax returns required to be filed by the Company.  The Managing Member shall cause the Company to pay any taxes payable by the Company from available funds of the Company.

5.7     Other Business of Members.  Any Member may engage independently or with others in other business ventures of every nature and description, including, without limitation, the acquisition, rehabilitation, construction, operation and sale of market rate residential apartment complexes and the rendering of advice or services of any kind to investors and the making, sponsoring, or managing of investments, including, without limitation, investments in apartment complexes, other residential properties or any other projects that compete with Projects owned by a Project Entity.

5.8     Limitation on Liability of Managing Member; Indemnification.  Neither the Managing Member nor its Affiliates shall have any personal liability under this Agreement for the repayment of any Capital Contribution, and none of the foregoing Persons shall have any liability to the Company or the other Members under this Agreement with respect to any act or failure to act so long as such Person's conduct did not constitute fraud, bad faith, willful misconduct, a breach of the Managing Member's

27

50102172.3

fiduciary duty to the other Member or as Tax Matters Partner, gross negligence, breach of this Agreement or the Act, or a violation of state or federal securities laws. To the maximum extent permitted by law, the Company, its receiver, or its trustee shall indemnify, save harmless, and pay all judgments and claims against the Managing Member arising from any liability, loss, or damage incurred by her or by the Company by reason of any act performed or omitted to be performed by her in good faith on behalf of the Company and while acting within the scope of her authority, including costs and reasonable attorneys' fees and any amount expended in the settlement of any claim of liability, loss, or damage; provided that such course of conduct did not constitute fraud, willful misconduct, a breach of the Managing Member's fiduciary duty to the other Member or as Tax Matters Partner, gross negligence, a breach of this Agreement or the Act, a violation of state or federal securities laws. Notwithstanding the foregoing, the Managing Member shall not be excused from bearing that portion of any indemnification payment by the Company as she would bear of any other obligation of the Company. Any such indemnification shall be recoverable only from the assets of the Company and not from the assets of the Members.

5.9    Annual Management Fee. For services rendered by Tzepah as the Managing Member of the Company, the Company shall pay Tzepah an annual management fee in the amount of $40,000 at such times as determined by Tzepah. If the Company has insufficient revenues to pay the annual management fee when requested by Tzepah, the Trust shall make a Support Loan to the Company in the amount of the fee due.

5.10   Managing Member Advances. The Managing Member may make advances to the Company to pay Company Costs and Expenses as the Managing Member determines such advances are needed by the Company. The Company shall repay Managing Member advances as promptly as practicable as determined by the Managing Member.

ARTICLE 6.

SUCCESSOR AND ADDITIONAL MANAGING MEMBER

6.1    Admission of Successor and Additional Managing Member.

(A)    Except with the prior written Consent of the Members and as provided in this Article 6 and in Section 8.1(A) hereof, the Managing Member shall not retire or voluntarily dissolve or withdraw voluntarily from the Company, or transfer, pledge or hypothecate all or any part of the Managing Member's Interest in the Company.

(B)    Upon timely Notification, and with the Consent of the Members which may be granted or withheld in such Members' sole discretion, the Managing Member may at any time designate one or more Persons to be successors to the

50102172.3

Managing Member or to be an additional Managing Member, in each case with such participation in the Managing Member's Interest as the Managing Member and such successor or additional Managing Member may agree upon. Any such successor shall have the same rights as the Managing Member under this Subsection and shall be admitted as a Managing Member of the Company upon its execution of an agreement to be bound by the terms hereof.

(C)    In any circumstance where an additional or successor Managing Member is admitted to the Company as provided in this Agreement, the additional or successor Managing Member, together with all the remaining Managing Members, shall continue the business of the Company without dissolution (and if a successor Managing Member is to be admitted at a time when the withdrawing Managing Member is the sole remaining Managing Member, such successor shall be admitted as a Managing Member immediately prior to the effective date of withdrawal of the withdrawing Managing Member, and such successor Managing Member shall continue the business of the Company without dissolution).

(D)    Notwithstanding the foregoing, if Tzepah is determined to have a Disability or is deceased, then Tzepah's interest as Managing Member shall be transferred to David Zarmi (if living and not considered to have a Disability) and David Zarmi shall serve as Managing Member.

6.2    Consent of Members to Admission of Successor or Additional Managing Member. Except as provided Section 6.1(D), the Consent of the Members shall be required for the admission of any additional or successor Managing Member. Such Consent may be granted or withheld by the Members in the exercise of their sole and absolute discretion.

6.3    Valuation and Sale of Interest of Former Managing Member.

(A)    If the business of the Company is continued after the Bankruptcy of the Managing Member, the Company shall purchase such Managing Member's Interest, as contemplated in Section 6.3(B) below, for a price equal to the present fair market value thereof. Such present fair market value shall be determined by a qualified, independent appraiser selected by the Consent of the Members. The cost of the appraisal shall be borne by the Company.

(B)    The purchase price under 6.3(A) shall be paid in cash.

ARTICLE 7.

TRANSFERABILITY OF MEMBER INTERESTS

7.1    Restrictions of Transfers of Member Interests.

29

No Member may Transfer, nor permit an indirect Transfer, of all or any part of its Interest or otherwise withdraw from the Company, except as provided in this Article 7, or as set forth in Section 6.1(D), without the unanimous approval of the Members, which approval may be granted or withheld in the sole discretion of each such Member.  Except as expressly provided in this Agreement, upon the withdrawal of a Member from the Company, the withdrawing Member shall not have the right to require the Company to pay such withdrawing Member any amount (including, without limitation, the return of its Capital Contributions or the fair market value of its Interest (or any other compensation, for that matter)) whether or not such ability exists as a matter of statute or otherwise.  In the event of a Transfer hereunder permitted in accordance with the terms hereof, the non-transferring Member shall reasonably cooperate (at the transferring Member's cost and expense) with the transferring Member in connection therewith, and the Managing Member shall reasonably cooperate (at the transferring Member's sole cost and expense) in facilitating such Transfer (including, without limitation, providing estoppel certificates concerning the transferring Member's compliance or non-compliance with its obligations under this Agreement).  If the Managing Member is the transferring Member, then the Non-Managing Member shall deliver estoppel certificates of the Managing Member's compliance or non-compliance with her obligations hereunder.

7.2   Rules Applicable to All Transfers.

(a)   Every Transfer of an interest as a Member shall be subject to the following:

(i)   No Transfer of any interest in the Company may be made if such Transfer would cause or result in a breach of any provision of any loan documents or any other material agreement binding upon the Company or any Project Entity, or of then applicable rules and regulations of any governmental or quasi-governmental authority having jurisdiction over such Transfer.  A non-transferring Member may require, as a condition of any Transfer, that the transferor furnish an opinion of counsel, reasonably satisfactory to such Member, both as to counsel and opinion, that the proposed Transfer complies with applicable law, including, without limitation, federal and state securities law.  The transferring Member shall be responsible for all costs and expenses of the Company and the non-transferring Members in connection with such Transfer, including, if the same are charged in connection with such Transfer, transfer taxes.

(ii)   Except for permitted Transfers pursuant to Sections 7.3 and 7.4 hereof, no Interest shall be transferred if, solely by reason of such Transfer, the classification of the Company as a partnership other than a publicly traded partnership for federal income tax purposes would be adversely affected or jeopardized (unless same arises out of a change in law from and after the date of

30

this Agreement), or if such Transfer would have any other substantial adverse effect on the Company for federal income tax purposes.

(iii) In the event of any direct Transfer of Interests pursuant to the provisions of this Agreement, there shall be filed with the Company a duly executed and acknowledged counterpart of the instrument effecting such Transfer. The transferee, if any, shall execute such additional instruments as shall be reasonably required by the non-transferring Member, and upon the execution thereof the transferee will become a Member of the Company. If and for so long as such instruments are not so executed and filed, the Company need not recognize any such Transfer for any purpose, and the transferee shall be entitled only to the rights which are required under the Act to be afforded to a transferee who does not become a Member.

(iv) Upon the admission or withdrawal of a Member, this Agreement shall be amended appropriately to reflect the then existing names of the Members and their respective Interests.

(v) Any party admitted as a transferee of a Member hereunder shall thereafter be deemed to be a "Substituted Member" hereunder.

(b) Subject to Section 11.2 below, a transferor of an interest as a Member shall, if the transferee is a Member hereunder or if the transferee becomes a Member pursuant to the provisions of this Agreement, be relieved of liability under this Agreement with respect to the transferred interest arising or accruing on or after the effective date of the Transfer.

(c) Any Person who acquires in any manner whatsoever an interest (or any part thereof) in the Company, whether or not such Person has accepted and assumed in writing the terms and provisions of this Agreement or been admitted into the Company as a Member, shall be deemed, by acceptance of the acquisition thereof, to have agreed to be subject to and bound by all of the obligations of this Agreement with respect to such interest and shall be subject to the provisions of this Agreement with respect to any subsequent Transfer of such interest.

(d) Any Transfer in contravention of any of the provisions of this Agreement shall be null and void and ineffective to transfer any interest in the Company, and shall not bind, or be recognized by, or on the books of, the Company, and any transferee or assignee in such transaction shall not be or be treated as or deemed to be a Member for any purpose. In the event any Member shall at any time Transfer an interest in the Company in contravention of any of the provisions of this Agreement, then each other Member shall, in addition to all rights and remedies at law and equity, be entitled to a decree or order restraining and enjoining such transaction, and the offending Member shall not plead in defense thereto that there would be an adequate remedy at law; it being expressly hereby acknowledged and agreed that

50102172.3

damages at law would be an inadequate remedy for a breach or threatened breach or the violation of the provisions concerning such transactions set forth in this Agreement.

7.3     Permitted Transfers. Notwithstanding anything to the contrary contained in this Agreement, including, without limitation, under Section 7.1 above, Permitted Transfers (as hereinafter defined) shall be permitted without the approval of the other Members, but such Transfers shall in any event be subject to the applicable provisions of Section 7.2 above. For purposes hereof, "Permitted Transfers" shall mean and refer to the following:

(a)     Any Transfer by a Member of its Interests to a trust for estate planning purposes of which such transferor is the sole trustee and his or her grandparents, parents, siblings, children, and/or grandchildren (including children and grandchildren by legally valid adoption and stepchildren and step-grandchildren) are the sole beneficiaries, so long as such transferor at all times remains the trustee, and such immediate family members remain the sole beneficiaries, of such trust, and the Member which is the subject of such Transfer notifies the non-transferring Members in writing at least thirty (30) days in advance of such Transfer.

(c)     Any Member, or any holder of direct or indirect interests in such Member, may transfer its Interests in the Company to an entity in which the Transferor, immediately after the applicable Transfer, (a) maintains management control of the operations, management, and policy of the transferee, and (b) owns more than fifty percent (50%) of the outstanding beneficial ownership interests (directly or through trusts of which such Transferor is the sole trustee, and immediate family members are the sole beneficiaries) in the applicable transferee, and the Member which is the subject of such Transfer notifies the non-transferring Membes in writing at least thirty (30) days in advance of such Transfer.

ARTICLE 8.

DISSOLUTION AND LIQUIDATION OF THE COMPANY

8.1     Events Causing Dissolution.

(A)     The Company shall dissolve upon the occurrence of any of the following events: (i) the passage of 150 days after the sale or other disposition of all assets of the Company; (ii) the election by the Members to dissolve the Company; (iii) the expiration of the term of the Company specified in Section 2.5 hereof; (iv) at any time there are no remaining Members of the Company, or (v) upon a decree of judicial dissolution under the Act.

(B)     Dissolution of the Company shall be effective on the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until the Certificate shall have been canceled and the assets of the Company shall have

been distributed as provided in Section 8.2 hereof. Notwithstanding the dissolution of the Company and prior to the termination of the Company, the business of the Company and the affairs of the Members shall continue to be governed by this Agreement.

 8.2 Liquidation.

  (A) Upon dissolution of the Company, the Managing Member shall liquidate the assets of the Company, apply and distribute the proceeds thereof as contemplated by this Section 8.2. The Company's assets shall be sold in a manner that will maximize the proceeds available for distribution. If the Managing Member, in its reasonable discretion, determines that in connection with the dissolution of the Company any of its assets cannot be sold immediately in an orderly manner, the Managing Member may distribute those assets in kind to a liquidation trust or similar vehicle created for the purpose of the prompt and orderly liquidation of those assets for the benefit of the Members. In such event, those assets shall be valued at their fair market value and treated for all purposes under this Agreement as though the property had been sold for that amount.

  (B) After payment of liabilities owing to creditors of the Company, the Managing Member shall set aside as reserves such amounts as it deems reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company. The reserves may be paid over by the Managing Member to a bank, trust company, or other financial institution to be held in escrow for the purpose of paying any such contingent or unforeseen liabilities or obligations and, at the expiration of such period as the Managing Member may deem advisable, the amount in such reserves shall be distributed in the manner set forth in Section 8.2(C) below.

  (C) Upon the occurrence of an event of dissolution, the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and Members. No Member shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Company's business and affairs. The Managing Member (or, in the event there is no remaining Managing Member, any Person elected by all Members), shall be responsible for overseeing the winding up of the Company and shall take full account of the Company's liabilities and property, and the Company property shall be liquidated as promptly as is consistent with obtaining the fair value thereof. The proceeds therefrom, together with assets distributed in kind to a liquidation trust, if any, to the extent sufficient therefor, shall be applied and distributed in the following order:

   (1) First, to the satisfaction (whether by payment or the establishment of reserves) of all of the Company's debts and liabilities to creditors and the expenses of liquidation, all in accordance with the Act; and

(2) The balance, if any, shall be distributed to the Members in accordance with Section 4.2(B). No Managing Member shall receive any additional compensation for any services performed pursuant to this Section 8.2.

(D) if the Managing Member shall determine that an immediate sale of part or all of the Company's assets would cause undue loss to the Members, the Managing Member may, after having given Notification to the other Members and to the extent not then prohibited by any applicable law of any jurisdiction in which the Company is then formed or qualified, defer liquidation of and withhold from distribution for a reasonable time any assets of the Company except those necessary to satisfy the Company's debts and obligations.

(E) The Members shall look solely to the assets of the Company for all distributions with respect to the Company and its Capital Contribution thereto and its share of Cash Flow, Sale or Refinancing Proceeds, tax credits, and Profits and Losses, and, except as otherwise provided in this Agreement, shall have no recourse therefor, upon dissolution, or otherwise, against any Managing Member or any other Member. In furtherance of the foregoing, notwithstanding any provision to the contrary in this Agreement, regardless of whether a Member has a negative balance in its Capital Account upon liquidation of the Company (or upon liquidation of its interest in the Company), no Member shall be obligated to contribute the amount of such negative balance in cash to the Company for distribution to those Members with positive Capital Account balances and/or creditors of the Company.

(F) The distribution and allocation provisions of Article 4 should result in distributions to each Member upon liquidation of the Company being in accordance with each such Member's positive Capital Accounts, as provided by the United States Treasury Regulations under Code Section 704(b). However, if upon liquidation of the Company, the Capital Accounts of the Members are in such ratios or balances that distributions under Section 4.2(B) would not be in accordance with the positive Capital Accounts of the Members as required by the Regulations under Code Section 704(b), such failure shall not affect or alter the distributions required under Section 4.2(B).

ARTICLE 9.

BOOKS AND RECORDS, ACCOUNTING; REPORTS; TAX ELECTIONS

9.1 Books and Records. The books and records of the Company shall be maintained, at the election of the Managing Member which shall be communicated in writing to the Non-Managing Member from time to time, at the principal office of the Company or each of the Project Entities, or in digital format on a website connected to the internet and maintained and updated by the Company or the applicable Project Entities, and shall be available for examination by any Member or its duly authorized representatives at any and all reasonable times. Each Member shall be entitled to a

50102172.3

copy of the list of the names and addresses of the Members, including the Interest owned by each Member.

9.2   Accounting Basis and Fiscal Year. The books of the Company shall be kept on a cash basis and the Company shall use the Fiscal Year for both income tax and financial reporting purposes.

9.3   Bank Accounts. The bank accounts of the Company shall be maintained in such banking institutions as the Managing Member shall determine. All deposits and other funds not needed in the operation of the business may be invested in interim investments as determined by the Managing Member.

9.4   Reports. Within 115 days after the end of each Fiscal Year, the Managing Member shall cause all information concerning the Company which is necessary for the preparation of the Members' federal and state income tax returns to be delivered to the Members.

9.5   Required Annual Reports. Within 90 days of the end of each calendar year, the Managing Member shall, at the expense of a Project Entity for the Project owned by such Project Entity, deliver to the Non-Managing Member the following reports with respect to each Project, certified by the Managing Member for the calendar year then ended:

(a)   A financial statement of the Project Entity in the form as the Non-Managing Member may reasonably require including an accrual balance sheet, an income statement, a statement of cash flow and a statement of the balance of each Member's Capital Account, all unaudited but prepared according to generally accepted accounting principles consistently applied (to the extent applicable);

(b)   A leasing activity report together with a certified rent roll; and

(c)   Any other information with respect to each Project Entity and each Project, reasonably requested by the Non-Managing Member.

In addition, within 90 days of the end of each calendar year, the Managing Member shall, at the Partnership's expense, deliver to the Non-Managing Member, as support for calendar year distributions of Cash Flow as described in Section 4.2(A), a reconciliation of cash available for distribution.

9.6   Tax Matters Partner. The Managing Member is designated as the Tax Matters Partner. If the Tax Matters Partner resigns as Tax Matters Partner, or is otherwise disqualified by, e.g., Bankruptcy or insolvency, the Trust shall thereafter be and become the Tax Matters Partner. The Tax Matters Partner shall promptly, after receipt thereof, provide to the other Members all notices and other communications received from or sent to the Service or any state or local taxing authority. The Tax Matters Partner shall provide the other Member with reasonable notice of all meetings