or conferences with the Service or any state or local taxing authority, and the other Member shall have the right to attend all such meetings or conferences and to participate directly in negotiations with the Service or such state or local taxing authority in an effort to resolve the dispute. The other Member shall have the right to require the Tax Matters Partner, at the expense of the Company, to commence a judicial action with respect to a federal income tax matter and to appeal any adverse determination of a judicial tribunal. Without the Consent of the Members, the Tax Matters Partner shall not (i) commence a judicial action (including filing a petition) as contemplated in Section 6226(a)(2) or 6228 of the Code with respect to a federal income tax matter or appeal any adverse determination of a judicial tribunal; (ii) enter into a settlement agreement with the Service which purports to bind the Members or any of them; (iii) intervene in any action as contemplated in Section 6226(b) of the Code; (iv) file any request contemplated in Section 6227 of the Code; (v) enter into an agreement extending the period of limitations as contemplated in Section 6229(b)(1)(B) of the Code; or (vi) take other action not expressly permitted by this Section 9.6 on behalf of the Members or the Company in connection with any administrative or judicial proceeding.

## ARTICLE 10.

## MEETINGS

At the request of any Member, the Members shall hold quarterly meetings to approve budgets, short, medium and long term goals of the Company and to approve advertising and other activities. In addition, any Member may, from time to time and at any other time, call meetings of the Company for any other matters. The Member calling the meeting shall give the other Members Notification of the meeting so called which shall be scheduled not less than fifteen (15) nor more than sixty (60) days from the date of Notification. All meetings shall be held at the principal office of the Company; provided that Members may attend such meeting by means of teleconferencing systems wherein each participant can hear and be heard by each other participant.

## ARTICLE 11.

## DEFAULT

11.1 <u>Events of Default</u>. There will be an "Event of Default" under this Agreement with respect to any Member if any event or circumstance shall transpire or exist with respect to such Member and such event or circumstance is expressly designated as an Event of Default under this Agreement or any one or more of the following events or circumstances shall transpire or exist with respect to that Member or an Affiliate of such Member, as applicable, and shall not be cured within any applicable period of notice and grace specified below:

(a) <u>Breach of Obligations</u>. If a Member is in breach of any obligation under this Agreement and such default or breach is not corrected within fifteen (15) days after written notice thereof if such default or breach is a monetary default or breach, or thirty (30) days after written notice thereof if such default or breach is a non-monetary default or breach, and in either case such written notice identifies the default with specificity; provided that if such default is non-monetary in nature and is not susceptible of cure within such thirty (30) day period, if the defaulting Member initiates such cure and diligently prosecutes such cure to completion, such grace period shall be extended for such time (not to exceed ninety (90) days) as is reasonably necessary to allow such defaulting Member to effect such cure; provided further that if such default or breach is willful, flagrant and material and not susceptible of cure, or if such default constitutes an act involving fraud, misappropriation of Company funds, willful misconduct, criminal conduct, material breach of fiduciary duty, material waste or gross negligence in connection with any of its obligations hereunder, then no notice or grace period shall be required and such breach or default shall immediately constitute an Event of Default.

(b) <u>Fraud, Negligence or Willful Misconduct</u>. If a Member or an Affiliate of such Member shall commit an act involving fraud, misappropriation of Company funds, willful misconduct, criminal conduct, material breach of fiduciary duty, material waste or gross negligence in connection with any of its obligations hereunder.

(c) <u>Prohibited Transfer</u>. Any Transfer by a Member or with respect to a Member in violation of the provisions of Article 7.

(d) <u>Bankruptcy</u>. If a Member shall (i) initiate proceedings of any nature under the federal Bankruptcy Code, or any amendment or successor thereto, (the "Bankruptcy Code") or any similar state or federal law for the relief of debtors, (ii) make a general assignment for the benefit of creditors, (iii) have initiated against it a proceeding under any section or chapter of the Bankruptcy Code, or any similar federal or state law for the relief of debtors, which proceeding is not dismissed or discharged within a period of ninety (90) days after the filing thereof, (iv) admit in writing its inability to pay its debts as they mature or to perform its obligations under this Agreement, (v) be the subject of an attachment or execution or other judicial seizure of all or any substantial part of said Member's assets or of its Interest or any part thereof, which remains undismissed or undischarged for a period of ninety (90) days after levy thereof, or (vi) consent to the appointment of a receiver or have a receiver appointed to manage it or any substantial part of its assets or of its Interest or any part thereof, which receivership remains in place for a period of at least ninety (90) days.

11.2 <u>Remedies</u>. Upon an Event of Default by any Member, the other Member shall have, in addition to any other rights set forth in this Agreement, all of their rights at law and in equity.

50102172.3

(a) <u>Managing Member Event of Default</u>.  Upon an Event of Default by Managing Member, in addition to all rights and remedies set forth in this Agreement or at law and equity, the following shall apply:

(i) The Non-Managing Member shall have the rights set forth in Section 11.3 hereinbelow;

(ii) In the event of any Event of Default by the Managing Member under this Agreement, the Non-Managing Member shall have the right to cause the Company to withhold and set-off the amount of damages relating to such default from the fees, distribution, and other amounts due the Managing Member under this Agreement, or withhold and set-off the amount of damages relating to such default from the amount otherwise due the Managing Member under this Agreement;

(iii) While any Event of Default is in effect and continuing with respect to the Managing Member, the Non-Managing Member shall at any time from and after such Event of Default have the right to cause the Company to sell its assets to a third party on commercially reasonable terms deemed acceptable by the Non-Managing Member in its sole, good faith discretion without being required to first give the Managing Member the right to Consent;

(iv) The Non-Managing Member, on behalf of the Company, shall have the right to terminate (or to cause Managing Member to terminate) upon three (3) business days notice any agreements between the then Managing Member and the Company or any Project Entity, excluding the operating agreements and/or partnership agreements, as applicable, of any such entities;

(v) From and after the occurrence of an Event of Default, the Managing Member shall have no right to receive any future allocations of Profits and Losses of the Company, any distributions from the Company or any other funds or assets of the Company, nor shall it be entitled to receive or to be paid by the Company any further payments of fees (excluding fees earned through the date of the applicable Event of Default but are unpaid made by it to the Company).  From and after the occurrence of an Event of Default, the rights of such defaulting Managing Member to receive or to be paid such allocations, distributions, funds, assets, fees or repayments shall be reallocated to the other Member or, if required by the Non-Managing Member, to any new Member admitted to the Company to undertake the responsibilities of the Managing Member hereunder.  From and after the occurrence of an Event of Default by the Managing Member and application of the remedy set forth in this subsection (v) against the Managing Member, the Managing Member may Voluntarily Withdraw from the Company.  Notwithstanding such loss of any right to receive such allocations, distributions, funds, assets, fees and repayments, such defaulting Managing Member shall remain liable to the Company and the Non-Managing Member for (a) all obligations theretofore incurred by it under this Agreement, (b) all obligations that may arise prior to (i) a Voluntary Withdrawal of the Managing Member as provided above in

38

this Section 11.2(a)(v), or (ii) if the Voluntary Withdrawal in the preceding clause (i) does not occur, following a Voluntary Withdrawal pursuant to subsection (vi) below, and (c) all obligations incurred following such Voluntary Withdrawal to the extent such obligations arise as a result of such defaulting Managing Member's breach of this Agreement. Notwithstanding anything herein to the contrary, the Non-Managing Member shall have all rights and remedies against such defaulting Managing Member as provided by law or in equity; and

(vi) From and after the occurrence of any Bad Act Default by the Managing Member under this Agreement, (A) the Managing Member shall no longer be entitled to participate in any deliberations, decisions or Consent made by the Members, and (B) the Interest of the Managing Member in the Company shall immediately and automatically terminate concurrent with the removal of the Managing Member as managing member of the Company in accordance with Section 11.3(a), and such Managing Member shall be deemed to have Voluntarily Withdrawn as a Member of the Company, and shall have no further right to participate in the management or operation of the Company, nor any further obligation under this Agreement arising from and after the date of the applicable Bad Act Default.

(b) <u>Non-Managing Member Event of Default</u>. Upon an Event of Default by the Non-Managing Member, in addition to all rights and remedies set forth in this Agreement or at law and equity, the following shall apply:

(i) In the event of any Event of Default by the Non-Managing Member under this Agreement, in addition to its other rights, the Managing Member shall have the right to cause the Company to withhold and set-off the amount of damages relating to such default from the fees, distribution, and other amounts due the Non-Managing Member under this Agreement, or withhold and set-off the amount of damages relating to such default from the amount otherwise due the Non-Managing Member under this Agreement;

(ii) While any Event of Default is in effect and continuing with respect to the Non-Managing Member, the Managing Member shall at any time from and after such Event of Default have the right to cause the Company to sell it assets to a third party on commercially reasonable terms deemed acceptable by Managing Member in its sole, good faith discretion without being required to first give the defaulting Non-Managing Member the right to acquire the assets of the Company;

(iii) The Managing Member, on behalf of the Company, shall have the right to terminate (or to cause the defaulting Non-Managing Member to terminate) upon three (3) business days' notice any agreements between the Non-Managing Member and the Company or any Project Entity, excluding the operating agreements and/or partnership agreements, as applicable, of any such entities;

Case 2:15-bk-26483-BR    Doc 167-7    Filed 05/02/17    Entered 05/02/17 21:48:37    Desc
Exhibit Ex 2-4    Page 5 of 10

(iv)  From and after the occurrence of a Bad Act Default by the Non-Managing Member under this Agreement, the Non-Managing Member shall have no right to receive any future allocations of Profits and Losses of the Company, any distributions from the Company, or any other funds or assets of the Company, nor shall it be entitled to receive or to be paid by the Company any further payments of fees (excluding fees which have been earned though the date of the applicable Event of Default but are unpaid) made by it to the Company. From and after the occurrence of a Bad Act Default by the Non-Managing Member, the rights of such defaulting Non-Managing Member to receive or to be paid such allocations, distributions, funds, assets, fees or repayments shall be reallocated to the other Members or, if required by the Managing Member, any new Member admitted to the Company to undertake the responsibilities of the Non-Managing Member hereunder. Notwithstanding such loss of any right to receive such allocations, distributions, funds, assets, fees and repayments, such defaulting Non-Managing Member shall remain liable to the Company for all obligations theretofore incurred by it under this Agreement. Notwithstanding anything herein to the contrary, the Managing Member shall have all rights and remedies against such defaulting Non-Managing Member as provided by law or in equity

11.3  Change of Control.

(a)  Replacement of the Managing Member.  Notwithstanding anything in this Agreement to the contrary, if the Managing Member commits an Event of Default, (i) in addition to the other rights and remedies provided in this Agreement, the Non-Managing Member shall have the unilateral right, upon five (5) business days' prior written notice to defaulting Managing Member given at any time thereafter (such notice, the "Removal Notice"), to take over the responsibilities of the defaulting Managing Member under this Agreement, and (ii) the Managing Member can Voluntarily Withdraw from the Company.  Once a Removal Notice has been issued or the Managing Member Voluntarily Withdraws from the Company, the new Managing Member (or new Managing Members) (hereinafter, the "Replacement Managing Member") shall have the unilateral decision-making authority to take all actions or authorize on behalf of and at the Company's expense permitted or required of a managing member of a California limited liability company, including all actions previously within the authority of defaulting Managing Member under this Agreement, without the necessity for obtaining any consent or approval of the defaulting Managing Member; provided, however, (A) if the defaulting Managing Member did not commit a Bad Act Default, then it may not be removed and, in circumstances where the Consent of the Members is required under this Agreement, including, without limitation, Consent for Major Decisions, the approval of the defaulting Managing Member shall continue to be required, and (B) if the defaulting Managing Member committed a Bad Act Default, neither the Consent of the defaulting Managing Member, nor the Consent of the Members, shall be required hereunder.  Upon the exercise of such right, or the Voluntary Withdrawal of the Managing Member from the Company, (i) the powers and authorities granted to defaulting Managing Member as a managing member under this Agreement shall terminate and be of no force or effect, (ii) subject to Section 11.2(a)(ii)

40

50102172.3

above, the defaulting Managing Member's Interests shall convert to Interests of a Non-Managing Member with only those rights of a non-managing member set forth in the Act and, subject to subsections (A) and (B) of this Section 11.3(a), under this Agreement, (iii) subject to the terms of Section 11.2(a)(v), the defaulting Managing Member shall remain liable for all obligations and liabilities incurred prior to the exercise of such right, and (iv) the Replacement Managing Member shall have the power and authority to propose all actions requiring Consent, but such actions shall require the Consent of the Replacement Managing Member and, subject to subsections (A) and (B) of this Section 11.3(a), the defaulting Managing Member. The foregoing notwithstanding, subject to Section 11.2(a) above, the defaulting Managing Member shall continue to have all other rights and obligations of a Member hereunder and such replacement shall not relieve the defaulting Managing Member of any liability for any Event of Default hereunder or a default of any other agreement entered into by the defaulting Managing Member or any Affiliate thereof; provided, however, that notwithstanding the foregoing or any other provision to the contrary, upon the earlier to occur of the date (1) that the Managing Member commits an Event of Default and loses any rights under this Agreement as specified under Section 11.2(a)(v) above, or (2) on which it is removed, or Voluntarily Withdraws as the managing member of the Company in accordance with this Agreement.

(b)  Costs of Change of Administration. The costs of implementing a change of administration under this Section 11.3 (including without limitation the legal fees of Non-Managing Member and any Replacement Managing Member) shall be borne by the Company.

(c)  Transition of Management. If the defaulting Managing Member commits an Event of Default and is removed in accordance with this Section 11.3, then the defaulting Managing Member shall perform all obligations under this Agreement relating to the cessation and quitting of activities; entry upon any Projects; and turnover of all documents and other materials relating to the activities of the Company or any Project Entity. Without limiting the generality of the foregoing, upon any such termination, such defaulting Managing Member shall fully cooperate with the Non-Managing Member and any Replacement Managing Member in transitioning the management, renovation and operation of the Company and any Project Entity, which cooperation shall include, without limitation, delivering originals and copies of all files, materials, records, reports, studies, warranties, documents, maps, surveys plans, specifications, policies, agreements, escrows, instruments, accounts, contracts and computer files, and records pertaining or in any way relating to such activities in the possession or control of such defaulting Managing Member.

ARTICLE 12.

MISCELLANEOUS PROVISIONS

12.1  Signatures; Amendments.

50102172.3

(A)  The Members and any Substituted Member shall become a signatory hereto by signing this Agreement and such other instrument or instruments, and in such manner and at such time, as the Managing Member shall determine. By so signing, each Member and Substituted Member, as the case may be, shall have adopted, and shall have agreed to be bound by, all the provisions of this Agreement, as amended from time to time.

(B)  In making any amendment, the Managing Member shall prepare and file for recording such documents and certificates as shall be required to be prepared and filed under the Act and under the laws of the other jurisdictions in which the Company is then formed or qualified.

12.2  Binding Provisions.  The covenants and agreements contained herein shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors, and assigns of the respective parties hereto.

12.3  Applicable Law.  This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California.

12.4  Counterparts.  This Agreement may be executed in several counterparts, all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties have not signed the same counterpart. For all purposes of this agreement, facsimile signatures shall be binding upon the parties hereto.

12.5  Severability of Provisions.  Each provision of this Agreement shall be considered separable, and if, for any reason, any provision or provisions hereof are determined to be invalid, unenforceable, or contrary to any existing or future law, such invalidity, unenforceability, or illegality shall not impair the operation of, or the remaining provisions of, this Agreement which shall remain in full force and effect.

12.6  Captions.  Article and section titles and any table of contents are for convenience of reference only and shall not control or alter the meaning of this Agreement as set forth in this text.

12.7  Further Assurances.  Each of the parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things, reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the parties hereto.

12.8  Disputes.  Any dispute between the Members, the Company or any Affiliate of any Member or the Company which is not resolved informally by negotiations between the relevant parties shall be resolved in an action or proceeding instituted in a state court located in Los Angeles County, California or a federal court for the Central District of the State of California, sitting in Los Angeles County. Each Member, on

50102172.3

behalf of itself and the Company, hereby irrevocably waives any objection which such Person may have or hereafter have to the venue of any such action or proceeding, and irrevocably submits to the jurisdiction of such court in such action or proceeding.

12.9 Non-Waiver; Consents. No waiver by any party hereto of any breach of this Agreement or any provision shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other provision. Any consent of a Member which is required under this Agreement shall only be effective if given in writing by the Member.

12.10 Notices. All Notifications provided for hereunder shall be in writing and shall be delivered to the parties in the manner set forth in the definition of "Notification" to the parties at the following addresses:

If to the Trust: 8950 Olympic Blvd #650, Beverly Hills, CA 90211

If to Tzepah: 9018 David Avenue, Los Angeles, CA 90034

or to such other address as shall be designated either party for receipt of notices so given. All such notices shall be deemed served upon receipt thereof.

43

50102172.3

IN WITNESS WHEREOF, the undersigned declare that they are the Persons who have executed this Agreement as of the date first above written, which execution is their act and deed.

Trust:

By: _____
Tzepah Freedland, Trustee of the Daniel Arnall 2014 Trust

By: _____
David Zarmi, Trustee of the Daniel Arnall 2014 Trust

Tzepah:

By: _____
Tzepah Freedland

S-1

50102172.3

## SCHEDULE A

### INVESTMENT TRANSACTIONS

1.   A tenants-in-common interest in certain real property located in the City of Los Angeles, County of Los Angeles, State of California, located at 421 E. Sixth Street Los Angeles, CA 90014

1

50102172.3