1  Sandford L. Frey (SBN 117058)
   **LEECH TISHMAN FUSCALDO & LAMPL LLP**
2  200 South Los Robles Avenue, Suite 210
   Pasadena, California 91101
3  Telephone: 626.796.4000; Facsimile: 626.795.6321
   E-mail:sfrey@leechtishman.com

4

5

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10                        **[LOS ANGELES DIVISION]**

11  | In re | CASE NO.:  2:15-bk-26483-BR |

12  | **315 ARDEN, LLC,** | Chapter 11 |

13  |            Debtor and Debtor-in-Possession. | **REPLY TO OPPOSITION OF 315 ARDEN, LLC TO MOTION OF LEECH TISHMAN FUSCALDO & LAMPL INC, TO (1) COMPEL THE DISBURSING AGENT UNDER THE PLAN TO COMPLY WITH THE CONFIRMED PLAN OF REORGANIZATION, RECONGNIZE ATTORNEYS' LIEN; AND ORDER PAYMENT OF ATTORNEYS FEES AND COSTS PURSUANT TO THE TERMS OF THE PLAN; AND (2) PROVIDE FOR A FULL AND COMPLETE ACCOUNTING OF THE SALE PROCEEDS FOR THE SALE OF THE BUENA PARK PROPERTY** |

22  **SUPPLEMENTAL DECLARATION IN SUPPORT**

24  Date:  December 4, 2018
    Time:  2 p.m.
    Ctrm:  1668

27      Leech  Tishman  Fuscaldo  &  Lampl,  Inc  ("Leech Tishman")  files  this  Reply  to

Opposition of 315 Arden, LLC to Motion ("Motion") of Leech Tishman Fuscaldo & Lampl Inc,

to (1) Compel the Disbursing Agent under the Plan to Comply with Plan of Reorganization, (2)

Recognize Attorneys' Lien; and Order Payment of Attorneys Fees and Costs; and (3) Provide

an Accounting ("Objection").

**I.**

**INTRODUCTION TO REPLY**

Prior to the commencement of this Chapter 11 case, the Buena Park Property (the sole

asset of 315 Arden) was in jeopardy of foreclosure as the result of failure to pay a note taken

back by the seller, who in furtherance thereof recorded a Notice of Default against the Buena

Park Property on August 18, 2015.  At the time the case was filed, the foreclosure was well into

the 90-day publication period and the State Court Action had already been filed through separate

counsel (the firm of Timothy D. McGonigle Professional Corporation).

The Plan in this case was confirmed thereby avoiding the foreclosure and permitting the

State Court Action to proceed pursuant to the Plan for the benefit of creditors.  This has allowed

the Debtor and its creditors to reap the benefits of the settlement proceeds arising from the sale

of the property.   These results were achieved through the diligent efforts of predecessor

bankruptcy counsel, Creim Macias Koenig & Frey LLP, and thereafter Leech Tishman.  This

includes Leech Tishman's work on the Adversary Proceeding, successful defense, on behalf of

the Debtor and Reorganized Debtor, of a motion to appoint a trustee which was commenced

post-confirmation *[See, Docket Nos. 163, 164, 165, 166, 167, 169, 170, 171, 174, 175 and 176]*

and eventual work on the State Court Action.

Leech Tishman assisted 315 Arden in the negotiation and settlement of the avoidance

action, and after taking over as counsel, assisted in the settlement of the State Court Action

resulting in the sale of the Buena Park Property.  Prior to the settlement and sale of the Buena

Park Property, and in recognition of 315 Arden's financial condition, Leech Tishman agreed to a

voluntary reduction of its fees.  Sometime thereafter, Leech Tishman was informed by 315

Arden that 315 Arden (or Mrs. Zarmi) engaged attorney Aaron Swerdlow to assist Leech

Tishman in bringing the Settlement Agreement to final completion.  Later, Leech Tishman

2

learned, through an email sent by the senior lender's counsel, that the sale of the Buena Park Property opened and closed.  Subsequently, Leech Tishman also learned that the Settlement Agreement was consummated and signatures exchanged, again without Leech Tishman's knowledge.  In fact, Leech Tishman had never been provided a copy of the closing statement and had no knowledge of the actual sales price until the Opposition was filed.

If all creditors have indeed been paid as the Opposition now contends, those creditors were paid as a result of Leech Tishman's efforts in furtherance of the provisions of the Plan and settlement of the Adversary Proceeding and State Court Action.  Similarly, Leech Tishman is entitled to be paid pursuant to the same Plan provisions.  Although 315 Arden generally asserts that Leech Tishman's fees are purportedly disputed, the Opposition fails to articulate with any degree of specificity any particular time entries that are in dispute, or any specific act of malfeasance purportedly committed on the part of Leech Tishman.

## II.

## THIS COURT IS THE APPROPRIATE FORUM TO COMPEL PAYMENT OF LEECH TISHMAN'S FEES

Approximately eighteen months ago, Leech Tishman substituted back into this matter after the firm of Bienert, Miller, and Katzman, PLC ("Katzman Firm") replaced Leech Tishman. Within a few short months of representing 315 Arden, the Katzman Firm filed a motion seeking to withdraw, stating in support that the Katzman Firm had: "*certain irreconcilable differences have arisen between the [Katzman] Firm and Plaintiff, which the [Katzman] Firm has attempted to repeatedly and earnestly address. . . . The irreconcilable differences are related to the [Katzman] Firm's employment and render the [Katzman] Firm's ability to carry out its representation of Plaintiff effectively unreasonably difficult. . . .*"  *[Adv. Docket No. 129]*.  The Katzman Firm also sought to be relieved in the State Court Action.

Thereafter, 315 Arden approached Leech Tishman and requested that Leech Tishman agree to be reengaged by 315 Arden.  To that end, on March 14, 2017, Leech Tishman entered into an engagement agreement (which is attached to the Opposition) ("Engagement Agreement") and substituted back into the adversary action *[Adv. Docket No. 135]*, and also substituted into

3

the State Court Action in place of the Katzman Firm.

Leech Tishman agreed to its engagement in reliance upon, among other things, certain representations and based upon the express understanding that this Bankruptcy Court would retain exclusive jurisdiction over its fees so long as the Bankruptcy Case remained pending and open, which it relied upon pursuant to the express terms of the Plan, the Confirmation Order, the terms of the Engagement Agreement and the Barton Doctrine (as discussed below).    [See, Supplemental Declaration of Sandford L. Frey].

**A.    The Court has Exclusive Jurisdiction pursuant to the Confirmed Plan.**

The Opposition argues in footnote 1 (p. 6) that the jurisdiction of the Bankruptcy Court set forth in section IX.P of the Plan is not exclusive to the Bankruptcy Court.  This argument is contrary to the express language of that section, which provides that the Bankruptcy Court "**will** retain such jurisdiction as is legally permissible . . . [t]o determine the **extent, validity and priority** of any lien asserted against the property of the Reorganized Debtor."

In addition, Section IX. P of the Confirmed Plan unequivocally provides in pertinent part

> e.    To determine (to the extent necessary) any and all applications for allowance of **compensation and reimbursement of expenses of professionals** for the period before, on and **after the Effective Date**; . . .

Furthermore, Section V. C of the Confirmed Plan provides as follows:

> **Rights of Action**.  In addition, to the foregoing, the Holders of the Allowed General Unsecured Claims qualifying for treatment in Class 3 shall also be entitled to receive after the Effective Date, a Pro Rata share of the net recovery **or net settlement proceeds**, if any, received by the Reorganized Debtor after the Effective Date, **derived from any Rights of Action**, which remain **after payment of any and all attorney's fees and costs in connection with the prosecution of the same** provided that: (i) payments due to Class 2 after the Effective Date are current for the applicable calendar year; (ii) any and all approved and unpaid Professional Fees in connection with the chapter 11, Plan or any action in respect thereof have been paid in full; (iii) all property tax payments due after the Effective Date and/or pursuant to the Plan are paid when due and not in default; and (iv) all Plan payments are current and there are no Plan Defaults or event of default with respect to any obligations under the Plan.

> (Emphasis added)

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED DEBTOR

1  Leech Tishman was compelled to essentially finance this matter for the benefit of

2  creditors under the Plan to its conclusion for over eighteen months.  In accepting its engagement

3  for the Reorganized Debtor, Leech Tishman relied upon the confirmed Plan.  Moreover, the

4  terms of the confirmed Plan are unambiguous that creditors were to receive the proceeds

5  resulting from the settlement "which remain after payment of any and all attorney's fees and

6  costs in connection with the prosecution of the same. . ."

7  The terms of the Plan are clear and unambiguous.  As stated in the Motion, this Court has

8  jurisdiction to enforce the terms of the Plan, and there is no more appropriate forum to enforce

9  the terms of a Plan which it confirmed.  [See Plan, Section IX.P].  It is axiomatic that this Court

10  could and would exercise jurisdiction to enforce distribution under the Plan to any other claimant

11  had 315 Arden refused to pay creditors pursuant to the Plan to the determent of such claimant.

12  Similarly, this Court has jurisdiction to hear and determine claims.  There is no rational or

13  meritorious justification to support 315 Arden's assertion that a bankruptcy court should refuse

14  to enforce the express terms of the Plan simply because it involves attorneys' fees mandated to

15  be paid under the Plan, especially those fees incurred in furtherance of actions under the Plan

16  which clearly inure to the benefit of creditors.

17  **B.     It is Clear that this Court has Jurisdiction under the Engagement**

18  **Agreement.**

19  Page 8, Paragraph P of the engagement agreement[1] between Leech Tishman, the Debtor

20  and Reorganized Debtor provides in applicable part as follows:

21  Client and Attorney agree that disputes respecting or related to Post-Petition Services will
   be resolved **<u>exclusively</u>** by the Bankruptcy Court having jurisdiction over Client, so long
22  as the bankruptcy case is pending and open.

23  (Emphasis added)

24  This language in the engagement agreement supersedes the more general arbitration

25  language in the agreement, which was intended to cover instances in which there was no longer a

26  pending bankruptcy case or the fees were outside the scope of the services performed pursuant to

27

28  [1]  The executed engagement agreement is attached as Exhibit 2 to the Opposition.

1  the confirmed Plan, such as where Plan confirmation was revoked or the bankruptcy case was

2  subsequently dismissed.  The engagement agreement clearly and explicitly provides for the

3  exclusive jurisdiction of this Court over disputes relating to post-petition services while the

4  bankruptcy case is pending.

5  **C.    The Bankruptcy Court also has Exclusive Jurisdiction over these Disputes**

6  **under the Barton Doctrine**.

7  The Barton Doctrine was established in 1881 by the Supreme Court of the United States

8  in *Barton v. Barbour*, 104 U.S. 126 (1881).  Under the *Barton Doctrine*, the Bankruptcy Court

9  has initial exclusive jurisdiction over a claim against the debtor's attorney in which such a

10  professional is potentially entitled to a fee.

11  The *Barton Doctrine* applies to attorneys representing trustees, debtors and debtors-in-

12  possession, and is meant to protect attorneys from being sued in a non-bankruptcy forum without

13  leave of the bankruptcy court that appointed them.  *In re W.B. Care Center, LLC* 497 B.R. 604,

14  610 (Bankr. S.D. Fla. 2013) (the doctrine protects those who are in effect working for the

15  Bankruptcy Court to administer the property of the estate under the Bankruptcy Code and not

16  force such individual to defend against litigations upset about the work on the court's behalf).  *In

17  re Balboa Improvements. Ltd.* 99 B.R. 966, 970 (9th Cir. 1989) (the claims against the debtor's

18  attorney included interference with prospective economic advantage, fraud, interference with

19  contract, negligence, detriment to the estate, and malpractice).  There is no distinction in whether

20  the Barton Doctrine applies to court "appointed" officers or court "approved" officers as such

21  distinction is irrelevant because court approved officers' function as the equivalent of court

22  appointed officers for purposes of the doctrine.  *Blixseth v. Brown* 470 B.R. 562,567 (D. Mont.

23  2012).  The Barton Doctrine even applies in an action by the debtor against the debtor's

24  bankruptcy counsel for alleged malpractice committed in the official capacity as the debtor's

25  bankruptcy counsel.  *In re Sedgwick* 560 B.R. 786, 793(C.D. Cal. 2016).  Courts of appeals have

26  held that the Barton doctrine applies to lawsuits against bankruptcy trustees and court-appointed

27  "functional equivalents of a trustee" which administer or protect the bankruptcy estate's assets,

28  such as a trustee's counsel and an auctioneer selling the debtor's assets. See, e.g., *Carter v.*

1   *Rogers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000); *In re DeLorean Motor Co.*, 991 F.2d 1236,

2   1241 (6th Cir. 1993).

3       In *Coen v. Stutz (In re CDC Corporation)*, 610 Fed. App'x. 918, WL 3619606 (11th Cir.

4   June 11, 2015), the Eleventh Circuit held that the Barton Doctrine applied to a suit against a

5   debtor's general counsel.  On appeal to the Eleventh Circuit, the plaintiff argued that the Barton

6   Doctrine did not apply to his suit against the debtor's general counsel, arguing that the general

7   counsel was not a court-approved officer and because his suit was not related to the bankruptcy

8   estate.  The Eleventh Circuit, however, had previously applied the Barton Doctrine to attorneys

9   and investigators hired by a trustee, holding that those actors similarly cannot be sued without

10  the plaintiff first obtaining leave from the bankruptcy court.  The court also stated that Barton

11  applies **whenever a plaintiff's suit is "related to" the bankruptcy proceeding using the**

12  **"conceivable effect" test**.  The court concluded that the plaintiff's suit fell within the bounds of

13  Barton, because (1) the bankruptcy court approved the executive service agreement confirming

14  the general counsel's position with the debtor, making him at least as connected to the estate as

15  attorneys or investigators hired by a trustee, and (2) the plaintiff's suit was "related to" the

16  bankruptcy proceeding, as the general counsel's actions were in furtherance of the administration

17  of the debtor's bankruptcy estate.  Therefore, the plaintiff was required to obtain permission from

18  the bankruptcy court before bringing his suit against the debtor's general counsel in district

19  court.  Similarly, this case concerns the attorney retained to pursue Rights of Actions under the

20  Plan confirmed by the estate representative, and the actions of Leech Tishman were in

21  furtherance of the Plan and administration of the Plan.

22      In *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090 (9th Cir. 2016), the Ninth

23  Circuit Court of Appeals considered whether the Barton Doctrine applied to committee

24  members, and concluded that it did.  It found that, like receivers and bankruptcy trustees—the

25  actions of whom are protected by the Barton Doctrine—committee members have an interest in

26  maximizing the value of the bankruptcy estate.  In addition, committee members are obligated to

27  perform tasks related to the estate's administration.

28

1    The *Yellowstone Mountain Club* decision shores up the bankruptcy court's jurisdiction by

2  clarifying that plaintiffs cannot circumvent the bankruptcy court's authority simply by

3  commencing a lawsuit in another forum.  A lawsuit outside of the bankruptcy court—in a court

4  unfamiliar with the proceedings of the bankruptcy case—challenging official actions could

5  seriously interfere with the bankruptcy case.  Moreover, the Court recognized that the fear of

6  such a lawsuit may cause committee members to act timidly in performing their obligations in

7  order to avoid potential lawsuits.  Therefore, the Court held that the Barton Doctrine applied to

8  committee members' actions performed in their official capacities.  In reaching this conclusion,

9  the Ninth Circuit noted and cited to a report by the ABI Commission to Study the Reform of

10 Chapter 11, which recommended extending the Barton Doctrine to "estate neutrals, and statutory

11 committees and their members, as well as professionals retained to represent any of the

12 foregoing parties in their fiduciary capacity."  Am. Bankr. Inst., Comm'n to Study the Reform of

13 Chapter 11, 2012–2014 Final Report and Recommendations 43 (2014), available

14    Courts have articulated several rationales for this doctrine.  First, the bankruptcy court

15 has a strong interest in protecting those it appointed from unjustified liability for acts within the

16 scope of such appointment. See, *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

17 Second, the bankruptcy court has exclusive jurisdiction over administration of the bankruptcy

18 estate and a judgment against those appointed may affect the estate's administration. See, *In re*

19 *VistaCare Grp., LLC*, 678 F.3d 218, 228 (explaining that "the requirement of uniform

20 application of bankruptcy law dictates that all legal proceedings that affect the administration of

21 the bankruptcy estate be either brought in the bankruptcy court or with the permission of the

22 bankruptcy court.").  Third, a lawsuit in another forum challenging actions in furtherance of

23 administration will impede the work and interfere with the bankruptcy case.  See *Matter of*

24 *Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

25    In *Yellowstone*, the Ninth Circuit explained that bankruptcy courts should apply a five

26 factor test in determining whether to grant such a motion: (1) whether the acts complained of

27 relate to the carrying on of the business connected with the property of the bankruptcy estate, (2)

28 whether the claims concern the actions of the officer while administering the estate, (3) whether

1    the officer is entitled to quasi-judicial or derived judicial immunity, (4) whether the plaintiff

2    seeks a personal judgment against the officer, and (5) whether the claims seek relief for breach of

3    fiduciary duty, through either negligent or willful conduct.  Moreover, the Ninth Circuit also

4    rejected the argument that the bankruptcy court lacked authority under *Stern v. Marshall*, 564

5    U.S. 462 (2011) to adjudicate the claims in question.  The Ninth Circuit explained that while

6    *Stern v. Marshall* precludes bankruptcy courts from deciding common law claims with no

7    connection to the bankruptcy estate except for the fact that the claims happen to be assets of the

8    estate, Barton claims concern actions undertaken within the official capacity and, therefore,

9    necessarily stem from the bankruptcy case itself and could not exist independently of the

10    bankruptcy case.  Thus, the Ninth Circuit held that *Stern v. Marshall* does not preclude

11    bankruptcy courts from deciding Barton claims.

12         The Plan was confirmed by the Bankruptcy Court.  The Plan provides for the attorney's

13    fees to be paid pursuant to the Plan.  The bankruptcy court is best suited to enforce the provisions

14    of a Chapter 11 Plan, not a state court arbitrator.  In the case, inasmuch as the services were

15    performed by the Debtor's counsel and in furtherance of the confirmed Plan and in pursuit of

16    Rights of Action reserved under the confirmed Plan for the benefit of creditors, there is no

17    exception simply because the provision of the Plan involves the payment of counsel.

18         In this case, the Reorganized Debtor as the Disbursing Agent appointed under the Plan

19    acts as a fiduciary to creditors under the Plan in the same manner as the Debtor in Possession or

20    trustee.  It is often incumbent upon counsel for Debtors in Possession, Reorganized Debtor's and

21    Disbursing Agents to remind the representatives that they owe a duty to act in the best interest of

22    creditors.  This case was no different.  For the Bankruptcy Court to refuse to enforce the

23    provision of the Plan will undermine the bankruptcy system and the role of counsel for the agent

24    that is supposed to act in furtherance of the Plan.

25

26

27

28

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED
DEBTOR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.

## LEECH TISHMAN HAS AN ATTORNEY'S LIEN

Section I of the Engagement Agreement provides that Leech Tishman has a lien that attaches to "any recovery Client may obtain, whether by judgment, arbitration award, **settlement, or other disposition**." The Opposition readily admits that pursuant to the Engagement Agreement, Leech Tishman has a lien in any settlement proceeds received from the adversary proceeding and the State Court Action [Opposition, p. 5; Zarmi Declaration, ¶¶13 & 15]. However, the Opposition attempts to obfuscate the Leech Tishman's right by attempting to label the proceeds from the sale of the Buena Park Property as sale proceeds rather than settlement proceeds. In doing so, the Opposition intentionally ignores the "other disposition" language in Section I of the engagement agreement and mischaracterizes the Settlement Agreement.[2] The Opposition's argument that these are sale proceeds and not settlement proceeds carried to its logical conclusion may similarly deprive the unsecured creditors of a right to the proceeds as well.

In addition, the Opposition similarly overlooks the fact that the Settlement Agreement paved the way for, and mandated, the sale of the Buena Park Property. The Settlement Agreement states that the parties are settling the Dispute, which is defined as including, *inter alia*, the State Court Action and the adversary proceeding. The Settlement Agreement provides that the sale of the Buena Park Property is part of the settlement and is in consideration of the releases and other consideration set forth in the agreement. Accordingly, the proceeds of the sale of the Buena Park Property were the result of a settlement or "other disposition" of the State Court Action/adversary proceeding and Leech Tishman's lien attached to those proceeds.

---

[2] The Opposition attaches select pages from the Settlement Agreement. The entire Settlement Agreement is not attached here due to the confidentiality provision in that agreement.

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED DEBTOR

**IV.**

**CONCLUSION**

The terms of the Plan mandate that Leech Tishman be promptly paid for its services from the proceeds of the settlement.  This Court is the appropriate forum in which to determine the amount of those fees.

Assuming *arguendo* that 315 Arden can articulate a bona fide claim (which Leech Tishman is confident will be refuted once the correspondence between counsel and client may be proffered into evidence by virtue of the alleged fee dispute), it can assert such claim at the appropriate time.  In the meantime, it is manifestly unfair to permit 315 Arden to remain in control of the sale proceeds and hold them hostage for an indefinite period.  This Court should order the fees that Leech Tishman earned be paid over to Leech Tishman.

In the event the Court is not inclined to order such payment, it is respectfully requested that the Court set an evidentiary hearing, discovery schedule and briefing schedule to determine the fees and costs, and pending such hearing order that the amount of $510,000 ($410,000 due Leech Tishman, plus reasonable attorney's fees) be paid to the Court or deposited into an independent escrow in order to avoid irreparable harm to Leech Tishman.  It would be unfair and unjust to permit unfettered misuse of Leech Tishman's money to finance an unwarranted attack upon Leech Tishman.

As stated in the Motion, Bankruptcy Code § 1142 provides as follows:

> (a)    Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan **shall carry out the plan and shall comply with any orders of the court**.

> (b)   The court may **direct the debtor and any other necessary party** to execute or deliver or to join in the execution or delivery of any instrument required to **effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan**.

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED DEBTOR

1    In addition to Section 1142, Bankruptcy Code § 105 permits this Court to issue any order

2    that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

3    Accordingly, this Court has authority to order the Disbursing Agent to turn over the proceeds to

4    satisfy Leech Tishman's outstanding fees and expenses pursuant to Bankruptcy Code §§ 1142

5    and 105 and Rule 3021 of the Federal Rules of Bankruptcy Procedure.

6

7    Dated:  November 27, 2018          LEECH TISHMAN FUSCALDO & LAMPL LLP

8

9                                       By:  */s/ Sandford L. Frey*_____
                                            SANDFORD L. FREY
10                                          Attorneys for 315 Arden, LLC, Reorganized Debtor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED
DEBTOR

## SUPPLEMENTAL DECLARATION OF SANDFORD L. FREY

I, Sandford L. Frey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and in the Central District of California.  I am member of Leech Tishman[3], reorganization counsel to the Reorganized Debtor.  I submit this declaration in support of the Reply.  I have personal knowledge of the facts stated below and, if called upon as a witness, I could and would competently testify thereto.

2.      Prior to the commencement of this Chapter 11 case, the Buena Park Property (the sole asset of 315 Arden) was in jeopardy of foreclosure as the result of failure to pay a note taken back by the seller, who in furtherance thereof recorded a Notice of Default against the Buena Park Property on August 18, 2015.  At the time the case was filed, the foreclosure was well into the 90-day publication period and the State Court Action had already been filed through separate counsel (the firm of Timothy D. McGonigle Professional Corporation).

3.      The Plan in this case was confirmed thereby avoiding the foreclosure and permitting the State Court Action to proceed pursuant to the Plan for the benefit of creditors.

4.      Leech Tishman accepted its engagement in reliance upon the Plan, the Confirmation Order and the terms engagement agreement, all of which provide for the Bankruptcy Court to retain jurisdiction over its fees.

5.      I drafted the engagement agreement, including Page 8, Paragraph P.  The language in the engagement agreement regarding the exclusive jurisdiction of the Bankruptcy Court was intended to supersede the more general arbitration language contained in the agreement.  I intended the general arbitration language to cover instances in which there was no longer a pending bankruptcy case or where the fees were beyond the scope of the services performed pursuant to the confirmed Plan, such as where Plan confirmation was revoked or the bankruptcy case was subsequently dismissed.

I declare under penalty of perjury under the laws of the United States of America, that the

---

[3] Capitalized terms shall have the meaning ascribed to them in the Reply.

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED DEBTOR

1 | foregoing is true and correct, and that this Declaration was executed on November 27, 2018, in

2 | Pasadena, California.

3

4 |                                           */s/ Sandford L. Frey*
                                          SANDFORD L. FREY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY RE MOTION OF COUNSEL OF RECORD TO WITHDRAW AS COUNSEL FOR REORGANIZED
DEBTOR

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
LEECH TISHMAN FUSCALDO & LAMPL, INC., 200 South Los Robles Avenue, Suite 210, Pasadena, California 91101

A true and correct copy of the foregoing document entitled (*specify*): **REPLY TO OPPOSITION OF 315 ARDEN, LLC TO MOTION OF LEECH TISHMAN FUSCALDO & LAMPL INC, TO (1) COMPEL THE DISBURSING AGENT UNDER THE PLAN TO COMPLY WITH THE CONFIRMED PLAN OF REORGANIZATION, RECONGNIZE ATTORNEYS' LIEN; AND ORDER PAYMENT OF ATTORNEYS FEES AND COSTS PURSUANT TO THE TERMS OF THE PLAN; AND (2) PROVIDE FOR A FULL AND COMPLETE ACCOUNTING OF THE SALE PROCEEDS FOR THE SALE OF THE BUENA PARK PROPERTY, SUPPLEMENTAL DECLARATION IN SUPPORT**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 27, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date), I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 27, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell (Via Overnight Mail)
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA  90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| November 27, 2018    Lydia Moya | | /s/ Lydia Moya |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                **F 9013-3.1.PROOF.SERVICE**

1. __TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)__:

- **Joseph E. Caceres** jec@locs.com, generalbox@locs.com
- **Howard Camhi** hcamhi@ecjlaw.com, tcastelli@ecjlaw.com;amatsuoka@ecjlaw.com
- **Sandford L. Frey** sfrey@leechtishman.com, jabrams@leechtishman.com;dmulvaney@leechtishman.com
- **Daniel J Kessler** dkessler@bkcglaw.com,
- jwaldman@bkcglaw.com;spettit@bkcglaw.com;ajurgewicz@bkcglaw.com;asanchez@bkcglaw.com
- **Stuart I Koenig** Skoenig@leechtishman.com, sfrey@leechtishman.com;jabrams@leechtishman.com
- **Ron Maroko** ron.maroko@usdoj.gov
- **Kenneth Miller** kmiller@pmcos.com, kanthony@ecjlaw.com
- **Byron Z Moldo** bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com
- **Susan I Montgomery** susan@simontgomerylaw.com,
- assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr71631@notify.bestcase.com
- **Tomas A Ortiz** tortiz@garrett-tully.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Michael D Vanlochem** janguiano@vandc.net
- **Marta C Wade** mwade@mcwadelaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**